**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| STATE OF WASHINGTON, et al., | NO. |
| Plaintiffs, | DECLARATION OF C.K. |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States of America, et al., | |
| Defendants. | |

DECLARATION OF C.K.

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

I, C.K., declare as follows:

1.  I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2.  I live in Washington with my partner and my five-year-old daughter. I am a professor at a university and my spouse is a software engineer.

3.  I chose to use initials for our names in this declaration because I am fearful for my family's safety and privacy in the current political climate. My daughter, D.K, is transgender. When she was born, she was designated male on her birth certificate, but her gender identity is female. I am also transgender.

4.  When D.K. was three years old, she started saying that she was a girl and not a boy as we were treating her. We were open and respectful with her statement, but we also didn't make final determinations about her name or gender right away. She was still little, and we were waiting to see if it was a phase that she would outgrow, like many phases kids go through as they are developing.

5.  However, a couple of years have now passed and D.K. continues to affirm that she is a girl. One night, during family dinner, she told us that when we called her by her boy's name given to her at birth, it made her sad. We gave her the option to choose a new name, and she chose a typically female name. She also asked that we use she/her pronouns to refer to her from now on.

6.  She currently goes to kindergarten at a public school. She hasn't come out as transgender to her classroom. Only one of the support staff knows about her identity since she's the person that usually accompanies her to the bathroom. Fortunately, they were very supportive and have been a wonderful resource for us and our daughter.

7.  My spouse and I did a lot of research to educate ourselves on how to parent a transgender kid. Even though I am transgender, I did not come out until I was in my 30s. I do

not inherently know how to support a transgender kid and help her navigate the challenges that it brings.

8. As she grows older, we know we will have to rely on medical providers and therapists to give D.K the gender-affirming care she will need to thrive as a person. The prospect that this care might not be a possibility for D.K. after the current Federal Government's Executive Order was issued, terrifies us. It brings instability to any future plans we have as a family. We are not sure if we can invest in this country and make our lives here, if D.K won't have access to gender-affirming care when she needs it. We would have to move out of the country, a decision that we wouldn't make if it wasn't for this executive order and the actions taken by the Federal Government against transgender related medical care. Moving out of the country would impact us financially and emotionally.

9. We are trying to shield our daughter from our fears, but it is becoming harder. She can sense we are anxious and worried and has already asked us if there is something bad going on. If we ever had to explain to her that her government has decided that she cannot be accepted for who she is, it would break our hearts and emotionally hurt her.

10. I know we are still years away from D.K needing any type of gender affirming care, but as any medical science, the providers need practice, research and motivation to specialize themselves in this area. Even if the Federal Government is changed in five years and policies related to transgender care are reversed, the quality of transgender care for minors will be negatively impacted.

I declare under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct.

DATED this _____ day of February 2025 at _____, Washington.

_____
C.K.
Parent to D.K.

1. not inherently know how to support a transgender kid and help her navigate the challenges that it brings.

8. As she grows older, we know we will have to rely on medical providers and therapists to give D.K the gender-affirming care she will need to thrive as a person. The prospect that this care might not be a possibility for D.K. after the current Federal Government's Executive Order was issued, terrifies us. It brings instability to any future plans we have as a family. We are not sure if we can invest in this country and make our lives here, if D.K won't have access to gender-affirming care when she needs it. We would have to move out of the country, a decision that we wouldn't make if it wasn't for this executive order and the actions taken by the Federal Government against transgender related medical care. Moving out of the country would impact us financially and emotionally.

9. We are trying to shield our daughter from our fears, but it is becoming harder. She can sense we are anxious and worried and has already asked us if there is something bad going on. If we ever had to explain to her that her government has decided that she cannot be accepted for who she is, it would break our hearts and emotionally hurt her.

10. I know we are still years away from D.K needing any type of gender affirming care, but as any medical science, the providers need practice, research and motivation to specialize themselves in this area. Even if the Federal Government is changed in five years and policies related to transgender care are reversed, the quality of transgender care for minors will be negatively impacted.

I declare under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct.

DATED this 3rd day of February 2025 at ____N/A____, Washington.

C. K.
_____
C.K.
Parent to D.K.