|   |   |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | **UNITED STATES DISTRICT COURT** |
|   | **WESTERN DISTRICT OF WASHINGTON** |
| 8 | **AT SEATTLE** |

| | |
|---|---|
| STATE OF WASHINGTON, et al., | NO. |
| Plaintiffs, | DECLARATION OF D.C. |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States of America, et al., | |
| Defendants. | |

DECLARATION OF D.C.

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

I, D.C. declare as follows:

1. I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2. I am the parent of Minor R.C.P. I live in Seattle, Washington with my spouse and child.

3. I am a Director within the early care and learning community in Washington State.

4. My child is transgender. I have chosen to refer to her in this declaration a "Minor R.C.P." because I am afraid for her and our family's safety and privacy in the current political climate. We adopted Minor R.C.P. from foster care at three years old.

5. The first time my child brought up her gender was when she was three years old. She was very insistent that she was a girl and would get very upset if anyone misgendered her or in any way did not see her accurately. She would correct us if we did not refer to her as a girl. Sometimes she would get angry and act out behaviorally because she did not have the language to share what her frustration was. Her outbursts included self-harming behavior. It was very difficult seeing a child so young hate themselves and the way they looked so much.

6. My spouse and I are supportive of our daughter's identity. Once she told us she was a girl, we talked about gender constantly, but the social transition was gradual. Minor R.C.P. often complained about her short hair and said she hated her body. She started changing the way she dressed, preferring to be in pastel colors and she grew her hair out.

7. During this time our daughter was in childcare and because she had previously been in the foster care system, we had access to mental health services. It took a while, but we were able to find a mental health provider with skills in gender identity. She started getting mental health care at 3 years old. At that time, she was getting weekly play therapy. Once the therapy started and we started seeing, and treating Minor R.C.P. as a girl, she was a happier and more content child. As a transgender girl, her gender dysphoria continued, but with continued

support and mental health services, her self-hating behavior and actions lessoned. When she went to pre-school, she used she/her pronouns.

8. Minor R.C.P. is seven years old now and has consistently had mental health services since she informed us she was a girl. There have been times over the years when we had trouble finding providers who were skilled in working with transgender youth, and that has been difficult. Therapy has been extremely helpful. It has helped normalize her experience and sense of who she is. It has allowed for a more typical childhood development and has allowed her to participate in her life more fully.

9. Once Minor R.C.P entered school, we have been fortunate to have the support of school staff and the school counse.lor. That has also helped when we have had gaps in providers. There have been times when she is not seen accurately at school, and when that happens, she does not want to go to school. If school were to become a less supportive place, we would have a very difficult time getting her to go or stay.

10. Minor R.C.P.'s distress lessened when we started seeing her accurately and she started social transitioning. A lot of the anxiety and outbursts went away, and her self-hating talk and behavior lessened.

11. An important part of gender-affirming care is that the person gets to live authentically as themselves, everywhere they are. Minor R.C.P. is very connected and comfortable with that. It is very obvious and distressing to her when that is not the case. We recently changed doctors for her because we needed to find one that is skilled and comfortable providing care to transgender youth. Because the new doctor saw our daughter accurately for who she is, Minor R.C.P. was more comfortable allowing the doctor to examine her and provide the routine care children need.

12. As a family we have also worked to create a social network where Minor R.C.P. can play with kids who are like her and support her. It has helped normalize her experience and allows for a healthy and typical childhood development.

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

13. Concerning the recent Executive Order restricting gender-affirming care for transgender youth, it is upsetting, and I am terrified to think about the possibility of having to tell our daughter that she can't have gender-affirming care. At seven years old I understand that my daughter is years out from any medical procedures, but if she does not have access to the care she needs, when she needs it, it will be very detrimental to her and our family.

14. None of this is fast. This is a very slow, deliberate process. The narrative that these decisions are made quickly without careful consideration or consultation with mental and physical health providers is false. Minor R.C.P. has gender dysphoria and denial of access to the care she will need as she grows older will be harmful.

15. My fears for our daughter if this Executive Order isn't stopped is for her mental and physical health. I fear that she will become suicidal. If we could not find gender-affirming care for our daughter in the United States, we would have to consider moving to another country in order for her to get the care she needs. Washington is our home. Both me and my spouse work here and have communities that we are part of and that mean a great deal to us. We do not otherwise want to leave the United States.

I declare under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct.

DATED and SIGNED this ___ day of February 2025 at _____, Washington.

_____
D.C.
Parent of Minor R.C.P.

13. Concerning the recent Executive Order restricting gender-affirming care for transgender youth, it is upsetting, and I am terrified to think about the possibility of having to tell our daughter that she can't have gender-affirming care. At seven years old I understand that my daughter is years out from any medical procedures, but if she does not have access to the care she needs, when she needs it, it will be very detrimental to her and our family.

14. None of this is fast. This is a very slow, deliberate process. The narrative that these decisions are made quickly without careful consideration or consultation with mental and physical health providers is false. Minor R.C.P. has gender dysphoria and denial of access to the care she will need as she grows older will be harmful.

15. My fears for our daughter if this Executive Order isn't stopped is for her mental and physical health. I fear that she will become suicidal. If we could not find gender-affirming care for our daughter in the United States, we would have to consider moving to another country in order for her to get the care she needs. Washington is our home. Both me and my spouse work here and have communities that we are part of and that mean a great deal to us. We do not otherwise want to leave the United States.

I declare under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct.

DATED and SIGNED this 4th day of February 2025 at Seattle, Washington.

_____
D.C.
Parent of Minor R.C.P.