1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable Lauren King

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

STATE OF WASHINGTON, et al.,

                 Plaintiffs,

   v.

DONALD J. TRUMP, in his official capacity
as President of the United States, et al.;

              Defendants.

NO. 2:25-CV-00244-LK

PLAINTIFFS' MOTION FOR LEAVE
TO PROCEED UNDER PSEUDONYMS

NOTE ON MOTION CALENDAR:
FEBRUARY 28, 2025

# I.    INTRODUCTION

Three individual Plaintiffs in this action (Physician Plaintiffs) are board-certified physicians who provide necessary, evidence-based, gender-affirming medical care to adolescent patients in Washington State. They bring this suit, along with the States of Washington, Minnesota, and Oregon (Plaintiff States), to challenge the constitutionality and legality of an executive action that baselessly denigrates the medical treatment they provide as "chemical and surgical mutilation," threatens them with bad-faith criminal investigation and prosecution, and upends their patients' ability to receive gender-affirming care. Together, the Plaintiff States and Physician Plaintiffs submitted dozens of sworn declarations from transgender young people—and the parents and health care providers who care for them—in support of their motion for a temporary restraining order enjoining enforcement of the Executive Order.

In a political environment where these Physician Plaintiffs and the individual witnesses are already subject to frequent threats to their physical and professional safety, the Physician Plaintiffs and many of the Plaintiff States' witnesses are rightly concerned that revealing their identities as part of the plaintiff group challenging this executive action would be fraught with even more risks, and needlessly so. While this case concerns gender-affirming medical care, which the Physician Plaintiffs provide, no issue in this case will turn on the specific identities of these doctors or other providers, patients, or patients' family members who submitted testimony under pseudonym.

Accordingly, there is good cause for the Court to allow Physician Plaintiffs to proceed under pseudonyms in this action. Courts routinely permit this in cases involving the rights of transgender and gender-diverse individuals and threats to livelihoods, and the same concerns exist here, given the highly sensitive nature of Physician Plaintiffs' work and seriousness of the threats they would almost certainly receive if their identities are publicly broadcasted. Exposing Physician Plaintiffs to the inevitable harassment, threats, and harm that would come with their public association with this lawsuit does not serve any legitimate purpose. The same is true of

PLAINTIFFS' MOTION FOR LEAVE TO
PROCEED UNDER PSEUDONYMS                1                ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1    the declarant witnesses whose testimony the Plaintiff States offered pseudonymously because

2    the witnesses reasonably fear for their safety or livelihoods, or those of their patients. The focus

3    in this case is the unconstitutional and cruel assault by the federal government on people seeking

4    gender-affirming care, their families, and their medical providers—not the identities of the

5    Physician Plaintiffs or other individuals being targeted.

## II.    STATEMENT OF FACTS

7    Physician Plaintiffs 1, 2, and 3 are Seattle-based physicians who treat transgender and

8    gender-diverse adolescent patients. Decl. Physician Plaintiff 1 ¶ 2; Decl. Physician Plaintiff 2

9    ¶¶ 4–5; Decl. Physician Plaintiff 3 ¶¶ 3, 6. Where medically indicated, these physicians provide

10   gender-affirming medical care to their patients. Decl. Physician Plaintiff 1 ¶ 4; Decl. Physician

11   Plaintiff 2 ¶ 8; Decl. Physician Plaintiff 3 ¶ 7.

12   On January 28, 2025, President Donald Trump issued an Executive Order to defund and

13   purportedly criminalize gender-affirming care for patients younger than nineteen years old.

14   Exec. Order 14,187, Protecting Children from Chemical and Surgical Mutilation, 90 Fed. Reg.

15   8,771 (Jan. 28, 2025) (the "Order").

16   On February 7, 2025, this lawsuit followed. Plaintiffs are the States of Washington,

17   Minnesota, and Oregon, and the three Physician Plaintiffs. Dkt. # 1. The Plaintiff States and

18   Physician Plaintiffs contemporaneously sought a temporary restraining order, and many of the

19   declarations filed in support of that motion were submitted under pseudonym for reasons given

20   in each declaration by the witness. *See* Dkt. ## 11-117. The Physician Plaintiffs attested to fear

21   for their personal safety, fear of prosecution, and fear for their minor patients. Decl. Physician

22   Plaintiff 1 ¶¶ 28–30; Decl. Physician Plaintiff 2 ¶¶ 33–34; Decl. Physician Plaintiff 3 ¶¶ 32, 38.

23   Many witnesses cited fear of retaliation or baseless prosecution by the federal government as

24   well as harassment or violence as reasons for seeking to use a pseudonym. *See, e.g.*, Decl.

25   A.M.M. ¶ 3; Decl. R.R. ¶¶ 17, 19; Decl. W.J. ¶ 14; Decl. C.L. ¶ 16; Decl. Drs. Doe ¶ 38.

26

### III.    ARGUMENT

In the Ninth Circuit, "[w]here it is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment, courts have permitted the use of pseudonyms." *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1980). This is so that "a party may preserve his or her anonymity . . . when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity. " *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). The factors to be balanced are " '(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, . . . (3) the anonymous party's vulnerability to such retaliation, (4) the prejudice to the opposing party, and (5) the public interest." *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042–45 (9th Cir. 2010) (quoting *Does I thru XXIII*, 214 F.3d at 1068). Here, all five factors strongly support permitting Physician Plaintiffs to file under pseudonyms.

*First*, the severity of harm is high. This Court (and others) have repeatedly granted anonymity to plaintiffs in cases where there are concerns that the public revelation of the plaintiffs' identities would lead to severe professional repercussions and risk their physical safety, particularly in cases affecting the rights of transgender people. *See, e.g.*, *Karnoski v. Trump*, No. 2:17-cv-01297-MJP, 2017 WL 11431253, at *1 (W.D. Wash. Oct. 10, 2017) (granting transgender military member's request to proceed under pseudonym because "[g]iven Defendants' decision to ban transgender people from military service, requiring Jane Doe to disclose her identity could lead to her separation from the military; the loss of her military career would also mean the loss of her career benefits"); *Jane Does 1-2 v. Office of Personnel Mgmt.*, No. 1:25-cv-00234-RDM, 2025 WL 384577, at *2 (D.D.C. Feb. 4, 2025) (granting federal employees' motion to proceed under pseudonyms in challenge against federal agency based on fears of retaliation and termination); *see also, e.g.*, *Poe v. Labrador*, No. 1:23-cv-00269-BLW, 2023 WL 8935065, at *19 (D. Idaho Dec. 26, 2023) (permitting plaintiffs, transgender adolescents and their parents, to proceed under pseudonyms in challenge to ban on

PLAINTIFFS' MOTION FOR LEAVE TO
PROCEED UNDER PSEUDONYMS                    3                    ATTORNEY GENERAL OF WASHINGTON
                                                                Complex Litigation Division
                                                                800 Fifth Avenue, Suite 2000
                                                                Seattle, WA 98104
                                                                (206) 464-7744

gender-affirming medical care); *Doe v. Pa. Dep't of Corr.*, 585 F. Supp. 3d 797, 808-09 (W.D. Pa. 2022) (granting anonymity to transgender inmate); *Doe v. Pence*, No. 1:16-cv-02431-JMS-DML, 2016 WL 11578507, at *1 (S.D. Ind. Nov. 22, 2016) (granting anonymity to transgender plaintiff seeking asylum); *cf. Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) ("Courts have permitted Plaintiffs to proceed anonymously in cases involving. . . transsexuality"); *Int'l Partners for Ethical Care Inc. v. Inslee*, No. 3:23-cv-05736- DGE, 2023 WL 7017765, at *2 (W.D. Wash. Oct. 25, 2023) (granting the parents of transgender and cisgender children leave to proceed under pseudonyms).

Providers of gender-affirming care are often subject to threats. For years, gender-affirming care providers have been the targets of violent threats and relentless online harassment. *See, e.g.*, Katie O'Connor, *Gender-Affirming Clinics Subject to Onslaught of Threats, Harassment*, Psychiatry Online (Jan. 27, 2023), https://psychiatryonline.org/doi/10.1176/appi.pn.2023.03.2.5; Shannon Bond, *Children's hospitals are the latest target of anti-LGBTQ harassment*, NPR (Aug. 26, 2022), https://www.npr.org/2022/08/26/1119634878/childrens-hospitals-are-the-latest-target-of-anti-lgbtq-harassment; *Boston Children's Hospital receives bomb threat following harassment over transgender care*, ABC News (Aug. 31, 2022), https://www.nbcnews.com/tech/internet/far-right-influencers-are-targeting-individual-doctors-rcna49701.

As medical professionals providing gender-affirming care, providers like Physician Plaintiffs are frequently in a position where they and their peers are targets of death threats and online harassment. *See, e.g.*, Emma Davis, *Death threats, legal risk and backlogs weigh on clinicians treating trans minors*, NBC News (Aug. 28, 2024), https://www.nbcnews.com/nbc-out/out-news/trans-minors-treatment-clinicians-laws-bans-rcna164515; Human Rights Campaign Foundation, *Online Harassment, Offline Violence*, (2022), https://hrc-prod-requests.s3-us-west-2.amazonaws.com/HRCF-OnlineHarassmentOfflineViolence.pdf (detailing intensifying harassment and threats to gender-affirming care providers); Brandy Zadrozny and

1    Ben Collins, *Doctors providing trans care are under increasing threat from far-right harassment*

2    *campaigns*, NBC News (Oct. 7, 2022), https://www.nbcnews.com/tech/internet/far-right-

3    influencers-are-targeting-individual-doctors-rcna49701.

4          Physician Plaintiffs are no exception to this troubling trend, as threats of physical harm

5    have already arrived at their doorsteps. The harassment that Physician Plaintiffs currently face

6    for providing gender-affirming medical care include protestors with violent messages at their

7    workplaces and targeted threats on social media. Decl. Physician Plaintiff 1 ¶ 28; Decl. Physician

8    Plaintiff 2 ¶ 34; Decl. Physician Plaintiff 3 ¶ 38. At least one clinic at which a Physician Plaintiff

9    works has needed to hire additional security, installed panic buttons, and conducted drills for

10   active threats. Decl. Physician Plaintiff 1 ¶ 28. That Physician Plaintiff also attested to having

11   an armed individual come to her workplace and threaten medical staff with a weapon. *Id.*

12   Broadcasting the Physician Plaintiffs' identities through this litigation could materially

13   exacerbate these risks, and needlessly risks exposing these providers and their colleagues to an

14   onslaught of threats, doxxing, and politically-motivated violence.

15         In addition to increased risk of harm and harassment from non-parties, the public

16   revelation of the Physician Plaintiffs' specific identities risks harm from the federal agencies

17   themselves. As providers of gender-affirming care who are taking part in a lawsuit against the

18   federal government, Physician Plaintiffs could experience retaliation by federal actors, including

19   baseless criminal investigation under a bad-faith application of criminal law, or loss of federal

20   research grants. Decl. Physician Plaintiff 1 ¶¶ 30–31. Physician Plaintiffs specifically attest to

21   their fears of being federally investigated or prosecuted for providing evidence-based medical

22   that is protected in Washington—fear that is grounded in the language of the Order and

23   statements from the White House. *Id.* ¶¶ 28–29; Decl. Physician Plaintiff 2 ¶ 27; Decl. Physician

24   Plaintiff 3 ¶ 32. Given the prospect of harassing criminal investigation and prosecution if

25   Physician Plaintiffs' identities are revealed, they stand to risk much more than "employment

26   opportunities" or their "freedom to pursue the occupation of [their] choice"—concerns that other

PLAINTIFFS' MOTION FOR LEAVE TO
PROCEED UNDER PSEUDONYMS

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1    courts have found justified other physicians' requests to proceed under pseudonym—although

2    those concerns loom large as well. *Doe v. Lieberman*, No. 1:20-cv-02148, 2020 WL 13260569,

3    at *3 (D.D.C. Aug. 5, 2020) (granting plaintiff physician's request to proceed under pseudonym

4    with suit against federal government due to concerns about professional repercussions including

5    being "unable to practice medicine").

6         And the Physician Plaintiffs are not only worried for themselves. Revealing Physician

7    Plaintiffs' identities in this lawsuit also puts at risk their minor patients. If the Physician

8    Plaintiffs' identities were released, it would lead to the disclosure of the specific facilities at

9    which they practice. This, in turn would undoubtedly lead to increased protests at their

10   institutions, impacting not only themselves and their colleagues, but their minor patients who

11   must visit those facilities in order to obtain medical care. The transgender and gender-diverse

12   adolescents that Physician Plaintiffs treat are themselves members of a group subject to

13   discrimination, harassment, and violence because of their transgender status. As explained in

14   their declarations (and as discussed below) the patients of Physician Plaintiffs are already fearful

15   and distraught following issuance of the Order. Revealing the Physician Plaintiffs' identities

16   would have ripple effects on their minor patients, by requiring their minor patients to contend

17   with scarier and angrier protest lines just to obtain the medical care they need. Harm to innocent

18   non-parties that could be exacerbated by the revelation of Physician Plaintiffs' identities weighs

19   heavily in favor of anonymity. *See Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 71 (1st Cir. 2022)

20   ("[P]arty anonymity ordinarily will be warranted" where "identifying the would-be Doe would

21   harm innocent non-parties.") (internal quotation marks omitted); *accord James v. Jacobson*,

22   6 F.3d 233, 238 (4th Cir. 1993) ("[F]actors that should be considered by courts considering

23   anonymity requests . . .  [include] innocent non-parties; [and] the ages of the persons whose

24   privacy interests are sought to be protected").

25        *Second*, on the reasonable risk of harm, Plaintiffs' fears of professional and physical

26   repercussions for revealing their identities are not merely speculative, as illustrated by the current

PLAINTIFFS' MOTION FOR LEAVE TO
PROCEED UNDER PSEUDONYMS                     6          ATTORNEY GENERAL OF WASHINGTON
                                                              Complex Litigation Division
                                                              800 Fifth Avenue, Suite 2000
                                                                  Seattle, WA 98104
                                                                  (206) 464-7744

level of politically-motivated threats lobbied at them and their staff that promises to be supercharged following the Executive Order. Decl. Physician Plaintiff 1 ¶ 28; *see also* Decl. Physician Plaintiff 2 ¶ 34; Decl. Physician Plaintiff 3 ¶ 38. Even before the Executive Order, providers of gender-affirming care to adolescents have widely experienced threats of violence, doxxing, and bomb threats. *See* Landon D. Hughes, et al., *Adolescent Providers' Experiences of Harassment Related to Delivering Gender-Affirming Care*, 73 J. of Adolescent Health 672–78 (2023), DOI: 10.1016/j.jadohealth.2023.06.024 (70% of providers surveyed reported they, their practices, or their institutions had received threats specific to delivering gender-affirming care). And, already, harassment at one Plaintiff Physician's workplace has "drastically worsened" since the Executive Order was issued. Decl. Physician Plaintiff 1 ¶ 28. And this is not surprising, given that the Order decrees, in inflammatory and baseless terms, that providing gender-affirming care to people under nineteen is tantamount to "chemical and genital mutilation," that "maim[s] and sterilize[es] impressionable children." E.O. 14,187. In addition to directing various agencies to limit or eliminate the viability of gender-affirming care by immediately defunding the medical institutions that provide that care, the Order also explicitly directs prioritizing criminal prosecutions and investigations against those it deems participate in "female genital mutilation," even for medication prescription and other care having nothing to do with surgery. *Id.* It also orders the persecution of providers who "mislead[] the public about long-term side effects of chemical and surgical mutilation." *Id.* Physician Plaintiffs' fears of criminal investigation, federal retaliation, and physical harm are eminently understandable, when rhetoric from the White House irresponsibly paints them as dangerous or criminal.

*Third*, regarding vulnerability, should their identities be revealed, Physician Plaintiffs are particularly vulnerable as medical professionals providing gender-affirming care because the scope of the Order squarely targets the provision of that care with financial and criminal consequences. That worry is even more prescient if their identities become more heavily scrutinized because of their status as plaintiffs in this case, given that the Executive Order

appears designed to cloak their medical practice with the false, but ominous, specter of criminality. *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) ("Although they do not confess either illegal acts or purposes, the Does have, by filing suit, made revelations about their personal beliefs and practices that are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior.").

*Fourth*, the federal defendants suffer no prejudice by allowing Physician Plaintiffs to proceed under pseudonyms. Nothing about this case turns on the identity of Physician Plaintiffs, and their names are not relevant to resolving the core legal issues addressing the constitutionality of the federal defendants' actions. Courts within the Ninth Circuit have held that the public interest in open records is more limited when, like here, plaintiffs allege "widespread" harm and "the plaintiff's identity" is of limited relevance. *Ocean S. v. Los Angeles County*, No. 2:23-cv-06921-JAK-E, 2023 WL 8191123, at *3 (C.D. Cal. Nov. 20, 2023) (citing *Kamehameha*, 596 F.3d at 1042). It is hard to fathom why federal defendants would have any legitimate need to publicly release the specific identities of individual physicians impacted by a nationwide ban on transgender care in order to defend the fundamental constitutionality of their actions.

*Fifth*, the public interest greatly favors anonymity for Physician Plaintiffs. Generally, courts are more willing to permit plaintiffs "to proceed anonymously" when, like here, they are "challenging the constitutional, statutory or regulatory validity of government activity." *Coe v. U.S. Dist. Ct. for Dist. of Colo.*, 676 F.2d 411, 416 (10th Cir. 1982) (citation omitted). That is because lawsuits against the government "involve no injury to the Government's 'reputation,'" whereas "the mere filing of a civil action against other private parties may cause damage to their good names and reputation and may also result in economic harm." *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979); *see also Doe v. Megless*, 654 F.3d 404, 409 (3d Cir. 2011) ("[B]ecause of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities[.]").

PLAINTIFFS' MOTION FOR LEAVE TO
PROCEED UNDER PSEUDONYMS

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1  That holds true here, for all the reasons outlined above, as anonymity for Physician Plaintiffs
2  "will not obstruct public scrutiny of the important issues in this case." *A.M.W. v. Mayorkas*,
3  No. 2:24-cv-01970-JHC, 2024 WL 5119780, at *1 (W.D. Wash. Dec. 16, 2024). The public
4  certainly has an interest in resolving the constitutionality and legality of the federal defendants'
5  actions. The public has no interest in the continued or increased harassment and endangerment
6  of physicians providing needed medical care to their patients.
7      *Finally*, the Court should fully consider all witness declarations submitted under
8  pseudonym in support of the motion for temporary restraining order. "Whether the circumstances
9  warrant anonymity in particular cases is committed in the first instance to trial court discretion,
10 which is then subject to appellate review only for '"abuse."' *James v. Jacobson*, 6 F.3d at 242
11 (observing that "[f]ederal courts traditionally have recognized that in some
12 cases . . . identification of parties and witnesses by name should yield in deference to sufficiently
13 pressing needs for party or witness anonymity") (citation omitted). *See also United States v.
14 Ramos-Cruz*, 667 F.3d 487, 501 (4th Cir. 2012) (witness pseudonyms appropriate where
15 witnesses explained heightened danger in testifying against MS-13); *United States v. Doe*,
16 655 F.2d at 922 n.1 ("Where it is necessary . . . to protect a person from harassment, injury,
17 ridicule or personal embarrassment, courts have permitted the use of pseudonyms."); *Todd v.
18 Lovecruft*, No. 19-cv-01751-DMR, 2020 WL 60199, at *9-10 (N.D. Cal. Jan. 6, 2020) ("The
19 privacy and safety interests of [a witness who was a sexual assault victim] are substantial and
20 weigh in favor of permitting consideration of the [witness's] declaration without requiring [her]
21 to publicly testify.").
22     Declarant testimony through pseudonym is more than appropriate here, given the
23 sensitive nature of their testimony and the fear they express about being publicly identified.
24 Families describe harassment they have suffered for being part of the transgender and gender-
25 diverse community. Decl. J.M. ¶¶ 4–10; Decl. T.O. ¶ 3; Decl. K.W. ¶ 10; Decl. K.G. ¶¶ 7–8;
26 Decl. M.B. ¶ 14; Decl. R.T. ¶ 10; Decl. A.F. ¶ 7. They describe extremely personal episodes of

1  self-harm, suicidal thinking, or suicide attempts. Decl. G.T. ¶ 10; Decl. E.C. ¶ 15; Decl. T.O.

2  ¶ 8; Decl. K.G. ¶¶ 5, 13; Decl. M.B. ¶ 5; Decl. R.T. ¶¶ 10, 18, Decl. S.B. ¶ 7; Decl. S.N. ¶ 4;

3  Decl. D.C. ¶ 5. Providers and parents describe fear of misuse of the criminal law and U.S.

4  Department of Justice to investigate or prosecute them. Decl. G.T. ¶ 27; Decl. S.B. ¶ 15; Decl.

5  E.K. ¶ 26; Decl. C.L. ¶ 16; Decl. Marie Doe ¶ 4; Decl. W.J. ¶ 14; Decl. G.M. ¶ 23; Decl. Drs.

6  Doe ¶ 38. And overwhelmingly, these witnesses cite fear of retaliation by the federal government

7  itself as their reason for providing their testimony pseudonymously. Decl. A.M. ¶ 17; Decl. L.L.

8  ¶ 13; Decl. A.M.M. ¶ 3; Decl. S.O. ¶ 3; Decl. R.R. ¶¶ 17, 19; Decl. V.S. ¶¶ 2, 12; Decl. J.W.

9  ¶ 20; Decl. K.M. ¶ 16; Decl. E.C. ¶ 4; Decl. H.M ¶ 4; Decl. H.R. ¶¶ 3–4; Decl. H.U. ¶ 4; Decl.

10  J.H. ¶¶ 4, 8-9, 12; Decl. J.M. ¶ 3; Decl. J.T. ¶ 3; Decl. K.S. ¶ 2; Decl. K.W. ¶ 18; Decl. K.G. ¶ 3;

11  Decl. K.H. ¶¶ 4, 16, 17; Decl. M.T. and T.T. ¶ 3; Decl. M.F. ¶¶ 44–45; Decl. M.B. ¶ 2; Decl.

12  N.M. ¶¶ 10, 13–14; Decl. R.T. ¶¶ 4, 19; Decl. S.B. ¶ 16; Decl. S.N. ¶ 2; Decl. A.F. ¶ 3; Decl.

13  B.M. ¶¶ 4, 11; Decl. C.K. ¶ 3; Decl. D.C. ¶ 4. Under the circumstances, the witnesses have shown

14  good cause for proceedings via pseudonym and the Court should consider their testimony in full.

## IV.    CONCLUSION

16  The Physician Plaintiffs respectfully request the Court grant their request to proceed

17  under pseudonyms, and all plaintiffs ask the Court to consider in full all declarations submitted

18  in support of their request for a temporary restraining order.

19  DATED this 7th day of February 2025.

20  I certify that this memorandum contains 3,311
21  words, in compliance with the Local Civil Rules.

22  NICHOLAS W. BROWN
   Attorney General of Washington

23  */s/ William McGinty*
24  WILLIAM MCGINTY, WSBA #41868
   CYNTHIA ALEXANDER, WSBA #46019
   TERA HEINTZ, WSBA #54921
25  ANDREW R.W. HUGHES, WSBA #49515
   NEAL LUNA, WSBA #34085
26  CRISTINA SEPE, WSBA #53609

| | |
|---|---|
| 1 | LUCY WOLF, WSBA #59028 |
| | Assistant Attorneys General |
| 2 | 800 Fifth Avenue, Suite 2000 |
| | Seattle, WA 98104-3188 |
| 3 | (360) 709-6470 |
| | William.McGinty@atg.wa.gov |
| 4 | Cynthia.Alexander@atg.wa.gov |
| | Tera.Heintz@atg.wa.gov |
| 5 | Andrew.Hughes@atg.wa.gov |
| | Neal.Luna@atg.wa.gov |
| 6 | Cristina.Sepe@atg.wa.gov |
| | Lucy.Wolf@atg.wa.gov |
| 7 | *Attorneys for Plaintiff State of Washington* |
| 8 | |
| | */s/ Lauryn K. Fraas* |
| 9 | LAURYN K. FRAAS, WSBA #53238 |
| | COLLEEN MELODY, WSBA #42275 |
| 10 | Assistant Attorneys General |
| | 800 Fifth Avenue, Suite 2000 |
| 11 | Seattle, WA 98104-3188 |
| | (360) 709-6470 |
| 12 | Lauryn.Fraas@atg.wa.gov |
| | Colleen.Melody@atg.wa.gov |
| 13 | *Attorneys for Physicians Plaintiffs 1-3* |
| 14 | |
| | KEITH ELLISON |
| 15 | Attorney General of Minnesota |
| 16 | */s/ James W. Canaday* |
| | JAMES W. CANADAY, MSBA #030234X* |
| 17 | Deputy Attorney General |
| | 445 Minnesota St., Ste. 600 |
| 18 | St. Paul, Minnesota 55101-2130 |
| | (651) 757-1421 |
| 19 | james.canaday@ag.state.mn.us |
| | *Attorneys for Plaintiff State of Minnesota* |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |

PLAINTIFFS' MOTION FOR LEAVE TO
PROCEED UNDER PSEUDONYMS

11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DAN RAYFIELD
Attorney General of Oregon

*/s/ Allie M. Boyd*
ALLIE M. BOYD, WSBA #56444
Senior Assistant Attorney General
Trial Attorney
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700
allie.m.boyd@doj.oregon.gov
*Attorneys for Plaintiff State of Oregon*

*pro hac vice application forthcoming

PLAINTIFFS' MOTION FOR LEAVE TO
PROCEED UNDER PSEUDONYMS                12        ATTORNEY GENERAL OF WASHINGTON
                                                  Complex Litigation Division
                                                  800 Fifth Avenue, Suite 2000
                                                  Seattle, WA 98104
                                                  (206) 464-7744