1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Honorable Lauren J. King

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

STATE OF WASHINGTON, et al.,

                      Plaintiffs,

        v.

DONALD TRUMP, in his official capacity as
President of the United States, et al.,

                    Defendants.

No. 2:25-cv-00244-LJK

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING
ORDER**

Noted For Consideration:
February 14, 2025

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 3

    I.      Executive Order 14,187 ................................................................................... 3

    II.     This Lawsuit ................................................................................................. 5

STANDARD OF REVIEW ................................................................................................ 6

ARGUMENT ..................................................................................................................... 6

    I.      Plaintiffs Do Not Demonstrate Likelihood Of Success on the Merits ..................... 6

        A.     Plaintiffs' claims fail at the threshold.......................................................... 6

        B.     The EO does not violate the separation of powers. ............................................ 10

        C.     Plaintiffs are unlikely to succeed on their Equal Protection claim.................... 13

        D.     Plaintiffs are unlikely to succeed on their Tenth Amendment claim. ............... 20

    II.     The Remaining Factors Weigh Against Plaintiffs' Requested Relief...................... 25

    III.    Any TRO should be limited to the Plaintiffs........................................................... 26

CONCLUSION ................................................................................................................ 27

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

## **INTRODUCTION**

President Trump issued an Executive Order (EO) directing agencies to take steps, as permitted by law, to condition certain federal grant funding on his policy preferences. Executive Order 14,187, *Protecting Children from Chemical and Surgical Mutilation* (Protecting Children EO), sets forth a policy that the federal government will not "fund, sponsor, promote, assist, or support the so-called 'transition' of a child from one sex to another." EO 14,187 § 1, 90 Fed. Reg. 8615 (Jan. 20, 2025). It directs the heads of agencies that provide research or educational grants to medical institutions to, "consistent with applicable law and in coordination with the Director of the Office of Management and Budget, immediately take appropriate steps to ensure that institutions receiving Federal research or education grants end the chemical and surgical mutilation of children." *Id.* § 4.

The EO also instructs the Attorney General to "review Department of Justice enforcement of section 116 of title 18, United States Code, and prioritize enforcement of protections against female genital mutilation." *Id.* § 8(a). Section 116 criminalizes the knowing performance or facilitation of female genital mutilation on another person who is under 18 years of age. 18 U.S.C. § 116(a).

The EO makes clear that it "shall be implemented consistent with applicable law," EO 14,187 § 11(b), and "shall not be construed to . . . affect . . . the authority granted by law to an executive department or agency, or the head thereof," *id.* § 11(a)(i).

Plaintiffs, three states and three individual physician plaintiffs, claim the EO violates the separation of powers, the Fifth Amendment's equal protection guarantee, and the Tenth Amendment. Plaintiffs seek the extraordinary relief of a temporary restraining order (TRO) enjoining the agency defendants from implementing the EO against all healthcare providers in

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

the three states. Pls.' Proposed Order at 4–5, ECF No. 11-1. But Plaintiffs fail to satisfy any of the requirements for the broad relief they seek.

To begin, Plaintiffs' claims fail at the threshold for multiple reasons. They identify no cause of action against the agencies, they cannot enjoin the President, and their claims run headlong into Article II's plain authority for the President to use his Executive Authority to direct his subordinates to take appropriate steps in furtherance of policy preferences. Moreover, their claims are unripe. The defendant agencies have not threatened to revoke or revoked any particular grants relied upon by the individual Plaintiffs' providers or association GLMA's members as a result of the EO. Which grants the agency can condition consistent with applicable law as directed by the EO is currently uncertain, and there is no final agency action for the Court to evaluate.

On the merits, Plaintiffs are unlikely to succeed on any of their claims. First, the EO does not violate the separation of powers. The President's authority to direct subordinate agencies to implement his agenda, subject to those agencies' own statutory authorities, is well-established. *See Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 32 (D.C. Cir. 2002). By its terms, the EO requires any funding conditions to be implemented consistent with applicable law, a requirement that encompasses the robust and comprehensive body of federal grants and contracts law as well as the Constitution.

Second, the EO does not violate the Fifth Amendment's guarantee of equal protection. The framework for scrutinizing governmental action under equal protection doctrine has little application here, where there is no agency action to scrutinize. To the extent the Ninth Circuit's precedents require this Court to find that the EO classifies based on sex and transgender status, the government's position is that those determinations were incorrect and should be overruled.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

1    And Plaintiffs' equal protection claim fails regardless because the EO substantially relates to

2    the important governmental interest of safeguarding children from potentially dangerous,

3    ineffective, and unproven treatments. As a result, the EO satisfies both intermediate and

4    rational basis scrutiny.

5        Finally, Plaintiffs cannot succeed on their Tenth Amendment claim. To obtain a

6    conviction under 18 U.S.C. § 116, the government must prove one of the jurisdictional

7    elements in the statute to establish that the charged conduct has a sufficient nexus to interstate

8    or foreign commerce. This jurisdictional element places the statute squarely within Congress'

9    Commerce Clause power—and removes it from the powers reserved to the states under the

10   Tenth Amendment.

11        Plaintiffs also fail to satisfy the remaining elements for a temporary restraining order.

12   For these reasons, as explained more fully below, Plaintiffs' motion should be denied.

13                                    **<u>BACKGROUND</u>**

14   **I.    EXECUTIVE ORDER 14,187**

15        On January 28, 2025, President Trump signed the Protecting Children EO. In relevant

16   part, it directs the heads of departments and agencies "that provide[] research or educational

17   grants to medical institutions" to, "consistent with applicable law and in coordination with the

18   Director of the Office of Management and Budget, immediately take appropriate steps to

19   ensure that institutions receiving Federal research or educations grants end the chemical and

20   surgical mutilation of children.[1]" EO 14,187 § 4. The EO does not restrict care but rather

---

[1] The EO defines ''chemical and surgical mutilation'' to mean "the use of puberty blockers . . to delay the onset or progression of normally timed puberty in an individual who does not identify as his or her sex; the use of sex hormones . . .  to align an individual's physical appearance with an identity that differs from his or her sex; and" certain "surgical procedures."

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

announces a policy on what sorts of grants the Executive Branch has chosen to provide. The EO does not address medical institutions or practices that do not receive federal research or educational grants, like many private, physician-owned practices, even if they receive other federal funding.

A majority of states have enacted laws and policies to restrict gender-affirming care for minors. *See* KFF, *Policy Tracker: Youth Access to Gender Affirming Care and State Policy Restrictions*, https://perma.cc/M9Y3-D4M2 (last accessed Feb. 6, 2025). Other countries have also recently adopted similar restrictions. Joshua P. Cohen, *Increasing Number Of European Nations Adopt A More Cautious Approach To Gender-Affirming Care Among Minors*, Forbes, June 14, 2023, https://perma.cc/9VM9-W4S4 (last accessed Feb. 6, 2025).

Section 8 of the EO separately instructs the Attorney General to "review Department of Justice enforcement of section 116 of title 18, United States Code, and prioritize enforcement of protections against female genital mutilation." *Id.* § 8(a). Section 116 criminalizes the knowing performance or facilitation of female genital mutilation on another person who is under 18 years of age. 18 U.S.C. § 116(a). The statute defines "female genital mutilation" as "any procedure performed for non-medical reasons that involves partial or total removal of, or other injury to, the external female genitalia" and provides examples, such as "a clitoridectomy," and "the partial or total removal . . . of the labia minora or the labia majora." *Id.* § 116(e). To be actionable, the statute explicitly requires that the conduct have a nexus to interstate or foreign commerce. *Id.* § 116(d). The statute excludes liability for "[a] surgical operation" that is "necessary to the health of the person on whom it is performed, and is

---

EO 14,187 § 2(c).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

performed by a person licensed in the place of its performance as a medical practitioner." *Id.*

§ 116(b)(1).

The EO also states that "[n]othing in this order shall be construed to impair or otherwise

affect . . . the authority granted by law to an executive department or agency," *id.* § 11(a), and

"[t]his order shall be implemented consistent with applicable law," *id.* § 11(b).

## II.    THIS LAWSUIT

On February 4, 2025, Plaintiffs filed this lawsuit. Compl., ECF No. 1. Plaintiffs consist

of three states—Washington, Oregon, and Minnesota—and three physicians. Compl. ¶¶ 19–25.

They sued President Trump, eleven federal agencies, and the heads of those agencies. Compl.

¶¶ 30–50.

That same day, Plaintiffs moved for a TRO. Pls.' Mot. TRO, ECF No. 11 (Pls.' Mem.).

Plaintiffs seek to temporarily restrain "the implementation and enforcement of Sections 4 and

8(a) of the Executive Order" against "the Plaintiff States or against health care providers for

care provided in Plaintiff States." Pls.' Proposed Order at 4–5. Plaintiffs also ask the court to

enjoin Defendants from "[e]nforcing 18 U.S.C. § 116 against health care providers for care

provided in Plaintiff States or against families receiving health care provided in Plaintiff

States." *Id.* at 5.

Plaintiffs raise three claims in their motion: (1) the EO violates the separation of

powers, Pls.' Mem. at 15–17; (2) the EO violates the equal protection component of the Fifth

Amendment, *id.* at 9–15; and (3) the EO violates the Tenth Amendment because it purportedly

"usurps the State's reserved powers to regulate the practice of medicine," *id.* at 18; *see also id.*

at 18–20.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

1

2

## STANDARD OF REVIEW

A TRO is "an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008). A party seeking such relief "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that [a temporary restraining order] is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

Plaintiffs raise only facial challenges to the Executive Order, which are "the most difficult challenge[s] to mount successfully." *United States v. Salerno,* 481 U.S. 739, 745 (1987). To demonstrate that it is likely to prevail on the merits, Plaintiffs must show more than that the Executive Order "might operate unconstitutionally under some conceivable set of circumstances." *Id*. Instead, Plaintiffs bear the "heavy burden" of "establish[ing] that no set of circumstances exist under which the [Executive Order] would be valid." *Id*.

## ARGUMENT

I.    **PLAINTIFFS DO NOT DEMONSTRATE LIKELIHOOD OF SUCCESS ON THE MERITS**

A.    **Plaintiffs' claims fail at the threshold.**

Multiple threshold defects plague Plaintiffs' claims. They identify no cause of action or final agency action that allows them to proceed against the agency defendants. Similarly, their claims are unripe because the agency defendants have not taken action to revoke, or threaten to revoke, any funding at issue in the EO, leaving material questions unanswered about the statutory and regulatory requirements for any grant funding at issue and the scope of funding potentially at stake. Finally, their claims run headlong into Article II's authority to use his Executive Authority to direct his subordinates to take appropriate steps in furtherance of policy.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

***No cause of action against agencies.*** First, Plaintiffs cannot bring claims against the agency defendants.[2] Plaintiffs do not invoke the Administrative Procedure Act (APA) or any other statute providing for a cause of action against an agency. *See, e.g.*, 5 U.S.C. § 706(2)(A)–(C) (permitting courts to "set aside agency action . . . otherwise not in accordance with law; contrary to constitutional right. . . [or] in excess of statutory jurisdiction"). In any event, invoking the APA would be futile. The APA authorizes challenges to only final agency action, which "marks the consummation of the agency's decisionmaking process" and "from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 156 (1997). Plaintiffs have not pointed to any action taken by the agency defendants that determined any rights or obligations or otherwise caused legal consequences. Indeed, Plaintiffs' claimed harm is not based on any action taken by the agency defendant, but on Plaintiffs' fear that the agency defendants might take some action in the future to revoke their funding. *See* Pls.' Mem. at 6–7.

***Plaintiffs' claims are unripe.*** For similar reasons, any claims against the agency defendants are not ripe. The ripeness doctrine "require[s] courts to avoid taking premature judicial action, thereby preventing them from becoming entangled in 'abstract disagreements.'" *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). "A claim is not ripe for

---

[2] Plaintiffs also cannot obtain relief against the President for issuing the EO. Courts have no authority to second-guess "discretion[ary]" acts taken by the President "in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. 475, 501 (1866); *see also Franklin v. Massachusetts*, 505 U.S. 788, 827 (1992) (Scalia, J., concurring in part). The courts' refusal to police the President's discretionary acts is "a functionally mandated incident of the President's unique office, rooted in the constitutional tradition of the separation of powers and supported by our history." *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982); *see also Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010) ("With regard to the President, courts do not have jurisdiction to enjoin him, and have never submitted the President to declaratory relief." (citation omitted)).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

1    adjudication if it rests upon contingent future events that may not occur as anticipated, or

2    indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation

3    omitted).

4

5        Here, no agency defendant has revoked, or initiated proceedings to revoke, any

6    particular grants as a result of the EO. Assuming an agency can do so for a particular grant, it

7    must generally follow certain procedures. *See, e.g.*, 2 CFR § 200.340 (setting forth procedures

8    for terminating federal awards). Moreover, when an agency takes steps to implement the EO's

9    contemplated grant conditions, it must only take appropriate actions as permitted by law. EO

10   14,187 § 4 (requiring agencies to act "consistent with applicable law and in coordination with

11   the Director of the Office of Management and Budget" and "take appropriate steps" to ensure

12   that medical institutions receiving federal research or education grants refrain providing the

13   treatment defined in Section 2(c)).

14

15       Because the agency defendants have not fully implemented the EO and have not

16   revoked any grant funding as a result of the EO, it is not clear what law the Court would need

17   to apply or what funding would be at stake. The Court cannot determine in the abstract whether

18   the statutory and regulatory requirements for any particular grant program provide the agency

19   with discretion to condition funding on these terms. Absent this essential context, it would be

20   premature to decide the issues now. *See Amalgamated Transit Union Int'l v. U.S. Dep't of Lab.*,

21   2024 WL 3565264, at *1 (9th Cir. July 29, 2024) (where all the agency does is "'announce the

22   position' the Department will take with respect to future grant applications from transit

23   agencies, 'judicial resolution of the question presented here should await a concrete dispute

24   about a particular' denial of a grant application") (quoting *Nat'l Park Hosp. Ass'n v. Dep't of

25   Interior*, 538 U.S. 803, 810, 812 (2003)); *Donovan v. Vance*, 576 F. Supp. 3d 816, 824 (E.D.

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

Wash. 2021), *aff'd in part, appeal dismissed in part and remanded,* 70 F.4th 1167 (9th Cir.

2023) ("It is simply too early to know with any degree of certainty whether Plaintiffs' fears of

termination will come into fruition."). If and when an agency takes final agency action against

a medical institution under the EO, an injured party may bring suit then, and the court can

decide the matter on the facts presented.

> ***Plaintiffs' claims cannot overcome Article II.*** As explained, the EO charges certain

components of the Executive Branch with taking appropriate steps to implement a policy

directive by the President, in a manner consistent with all applicable law. Plaintiffs' TRO seeks

to pretermit that process entirely, barring any defendant from "implementing and enforcing"

the directive in any manner. Pls.' Proposed Order at 4. That sort of order—cutting off at the

jump the ability of the Executive Branch to even pursue a general course of action—would be a

remarkable intrusion on a separate branch of government, in conflict with Article II.

> The President has the constitutional authority to direct his subordinates to pursue a

general policy goal, consistent with all applicable law. *See* Art. II § 1 ("The executive Power

shall be vested in a President of the United States of America."); *id.* § 2 ("[h]e may require the

Opinion . . . of the principal Officer in each of the executive Departments, upon any Subject

relating to the Duties of their respective Offices."). Federal courts cannot superintend—let

alone proscribe—that policy direction. *See Trump v. United States*, 603 U.S. 593, 608–09

(2024).

> ***Plaintiffs lack an equitable cause of action.*** All of Plaintiffs' claims—statutory and

constitutional—depend on this Court's inherent equitable powers to provide a cause of action,

remedying what they see as *ultra vires* executive conduct in violation of some binding source

of law. But the *ultra vires* doctrine is "extremely limited" in "scope." *Griffith v. Fed. Labor*

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

*Rel. Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988). *Ultra vires* relief must run against a particular governmental action that "violates some specific command of a statute" or other source of binding law. *Fed. Express Corp. v. U.S. Dep't of Commerce*, 39 F.4th 756, 764 (D.C. Cir. 2022). But again, Plaintiffs have not identified any specific source of authority that prevents a presidential order directing subordinates to consider and pursue as appropriate (and as consistent with law) a given policy. All of Plaintiffs' arguments concern hypothetical downstream actions that may or may not result from the EO; but *ultra vires* relief is about stopping actual concrete action, not pretermitting hypothetical future harm.

**B.     The EO does not violate the separation of powers.**

Plaintiffs' separation-of-powers claim is unlikely to succeed because Plaintiffs rely on characterizations of the EO that are simply inconsistent with its terms. The EO does not purport to withhold all federal funding if an institution provides the treatments referenced in the EO. Instead, the EO instructs agencies to implement the President's policy preference to the extent permitted by applicable law. The Executive often has discretion to impose other conditions or allocate fixed grants based on priorities. As discussed above, courts have long upheld these types of Presidential directives to agencies.

The EO likewise requires agencies to act "consistent with applicable law and in coordination with the Director of the Office of Management and Budget" to take appropriate steps to ensure institutions receiving federal research and educational grants end treatments referenced in the EO. EO 14,187 § 4. Further, the EO includes a "General Provision[]," stating that "[n]othing in this order shall be construed to impair or otherwise affect . . . the authority granted by law to an executive department or agency" and that "[t]his order shall be implemented consistent with applicable law." EO 14,187 § 11(a), (b).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

Definitionally, directing executive agencies to take action *to the extent consistent with applicable law* cannot be interpreted as an order to violate the law. It is plainly lawful for the President to instruct agencies to act within their own statutory authorities to implement the President's priorities consistent with applicable law. *See, e.g.*, *Sherley v. Sebelius*, 689 F.3d 776, 784 (D.C. Cir. 2012) ("[A]s an agency under the direction of the executive branch, it must implement the President's policy directives to the extent permitted by law."); *Sierra Club v. Costle*, 657 F.2d 298, 406 (D.C. Cir. 1981). Indeed, on his first day in office, President Biden issued an analogous executive order, requiring agencies to take action, consistent with applicable law, "to fully enforce . . . laws that prohibit discrimination on the basis of gender identity or sexual orientation. EO 13,988, §§ 1–2, 86 Fed. Reg. 7023, 7023 (Jan. 20, 2021).[3]

The D.C. Circuit's decision in *Building & Construction Trades Department, AFL-CIO v. Allbaugh*, 295 F.3d 28 (D.C. Cir. 2002) is instructive. There, Plaintiffs challenged an executive order that provided that "to the extent permitted by law," no federal agency and no entity that receives federal assistance for a construction product could require or prohibit bidders or contractors from entering into a project labor agreement. *Id.* at 29. Plaintiffs sued,

---

[3] Presidents regularly exercise their supervisory authority over how executive officers carry out their statutory responsibilities. *See, e.g.*, Exec. Order No. 12,866, 58 Fed. Reg. 51,735, § 1(b), (Sept. 30, 1993) (directing agencies on how to exercise regulatory authority, "to the extent permitted by law and where applicable"); Exec. Order No. 13,563, 76 Fed. Reg. 3821, § 1(b) (Jan. 18, 2011) (similar); Exec. Order No. 13,279, 67 Fed. Reg. 77,141, § 2 (Dec. 12, 2002) (directing agencies, "to the extent permitted by law," to be guided by certain principles when "formulating and implementing policies that have implications for faith-based and community organizations"); Exec. Order No. 13,765, 82 Fed. Reg. 8351, § 2 (Jan. 20, 2017) (directing agencies to "exercise all authority and discretion available to them" to waive certain requirements "[t]o the maximum extent permitted by law"); Exec. Order. No. 14,004, 86 FR 7475 § 1 (Jan. 25, 2021) (directing the Executive Branch to "consistent with applicable law, use terms and conditions of Federal financial assistance awards and Federal procurements to maximize the use of goods, products, and materials produced in, and services offered in, the United States").

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

claiming that the executive order exceeded the President's constitutional authority. *See id.* at 31–32. The D.C. Circuit rejected this argument, pointing out that the executive order "directs [agencies] how to proceed in administering federally funded projects, but only '[t]o the extent permitted by law.'" *Id.* at 33. "Thus, if an executive agency, such as the FEMA, may lawfully implement the Executive Order, then it must do so; if the agency is prohibited, by statute or other law, from implementing the Executive Order, then the Executive Order itself instructs the agency to follow the law." *Id.* The court concluded that "[t]he mere possibility that some agency might make a legally suspect decision" in the future is not a ground for an injunction. *Id.* (citing *Reno v. Flores*, 507 U.S. 292, 301 (1993)); *see also Common Cause v. Trump*, 506 F. Supp. 3d 39, 47 (D.D.C. 2020) (Katsas, J.) ("We cannot ignore these repeated and unambiguous qualifiers imposing lawfulness and feasibility constraints on implementing the memorandum.").

The Ninth Circuit's decision in *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1239 (9th Cir. 2018), is not to the contrary. There, the court considered more stringent language that "unambiguously command[ed] action" to ensure that certain jurisdictions would be ineligible for funding, which created "more than a 'mere possibility that some agency might make a legally suspect decision.'" *City & Cnty. of San Francisco*, 897 F.3d at 1240 (quoting *Allbaugh*, 295 F.3d at 33.

The Protecting Children EO's operational language is closer to *Allbaugh* than to *City & County of San Francisco*. It does not "unambiguously command[] action" by ordering Executive Branch officials to ensure that noncompliant jurisdictions are ineligible for federal grants, *City & County of San Francisco*, 897 F.3d at 1240; rather, it merely instructs agencies to coordinate with OMB and to "take appropriate steps" to further the goal that grantees

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

comply with a policy preference, consistent with law. EO 14,187 § 4. Agencies should be accorded the presumption of regularity that in taking appropriate steps they will act consistent with applicable law, including abiding by any governing statutory or constitutional restrictions.[4]

The Protecting Children EO does not "preclude[] a court from examining whether [it is] consistent with law," rendering "judicial review . . . a meaningless exercise." *City & County of San Francisco*, 897 F.3d at 1240. As the D.C. Circuit noted, "[i]n the event that an agency does contravene the law in a particular instance, an aggrieved party may seek redress through any of the procedures ordinarily available to it: a bid protest, a motion for administrative reconsideration, or an action in the district court challenging that specific decision." *Allbaugh*, 295 F.3d at 33; *see also* 5 U.S.C § 702.

### C.    Plaintiffs are unlikely to succeed on their Equal Protection claim.

"[T]he Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976). This guarantee "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). To analyze governmental action under the equal protection guarantee, courts "apply different levels of scrutiny to different types of

---

[4] To the extent this court disagrees and concludes that *City & County of San Francisco* requires this Court to find that the EO violates the separation of powers, the government's position is that *City and County of San Francisco* was wrongly decided and should be overruled. *City & Cnty. of San Francisco*, 897 F.3d at 1249 (Fernandez, J., dissenting) (Section 9 of EO 13,768 "directed that any actions taken by the Attorney General or the Secretary were to be taken 'to the extent consistent with law' and not otherwise. To brush those words aside as implausible, or boilerplate, or even as words that would render the Executive Order meaningless" is "an attempt to rewrite the Executive Order itself and then to enjoin use of the newly written version.").

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

classifications." *Clark v. Jeter*, 486 U.S. 456, 461 (1988). Typically, governmental classifications must be merely "rationally related to a legitimate governmental purpose." *Id.* "Classifications based on race or national origin," on the other hand, are suspect and receive "the most exacting scrutiny." *Id.* "Between these extremes of rational basis review and strict scrutiny lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex or illegitimacy." *Id.*

As an initial matter, application of any of these tiers of scrutiny is inappropriate here, where there is no agency action to scrutinize. Moreover, the Ninth Circuit precedents Plaintiffs rely on in arguing that the EO is subject to intermediate scrutiny were wrongly decided and should be overruled. But even applying intermediate scrutiny, the EO satisfies that standard because it is substantially related to the important governmental purpose of safeguarding children's physical and mental health. Plaintiffs therefore have not shown a sufficient likelihood of success on their equal protection claim.

> i.    *An EO directing agencies to explore future options is not amenable to constitutional scrutiny.*

At the threshold, there is a doctrinal mismatch between the EO—which directs agencies to explore a policy option—and any form of heightened scrutiny. As discussed in Part I.B., *supra*, the EO only directs agencies to gather information and take "appropriate" steps, based on what the facts and law allow. Plaintiffs seek to pretermit that process, forcing the government to justify policies that it has not even adopted. But there is no evidentiary hurdle for the contemplation of future action. Plaintiffs do not cite analogous authority subjecting an EO like this to the sort of searching review they propose. They therefore have not met their

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

1    heavy burden to show entitlement to the extraordinary relief of a TRO.

2                    *ii.    The EO does not warrant intermediate scrutiny.*

3         Plaintiffs wrongly argue that the EO is subject to intermediate scrutiny because it

4    "discriminates based on transgender status and sex." Pls.' Mem. at 10.

5         The EO targets only specified treatments for minors, and is best read as classifying

6    based on the medical use of the treatments at issue, not transgender status. But even if the EO

7    classifies based on transgender status, transgender status is not a quasi-suspect classification

8    and thus does not warrant intermediate scrutiny. The government recognizes that the Ninth

9    Circuit has held that "heightened scrutiny applies to laws that discriminate based on

10   transgender status," *Doe v. Horne*, 115 F.4th 1083, 1102 (9th Cir. 2024). The government's

11   position is nevertheless that the Ninth Circuit's conclusion is incorrect and should be overruled.

12        Applying the factors the Supreme Court has looked to in determining whether a quasi-

13   suspect class exists, transgender persons do not "exhibit obvious, immutable, or distinguishing

14   characteristics that define them as a discrete group." *Bowen v. Gilliard*, 483 U.S. 587, 602

15   (1987). Transgender status is not "necessarily immutable, as the stories of 'detransitioners'

16   indicate." *L.W. ex rel. Williams v. Skrmetti*, 83 F.4th 460, 487 (6th Cir. 2023). Transgender

17   status further is not characterized by a specific defining feature, but instead may be said to

18   include "a huge variety of gender identities and expressions." *Id*. It cannot be said that

19   transgender persons are a "political[ly] powerless[]" group either. *San Antonio Indep. Sch. Dist.*

20   *v. Rodriguez*, 411 U.S. 1, 28 (1973). "A national anti-discrimination law, Title VII, protects

21   transgender individuals in the employment setting," and many "States have passed laws

22   specifically allowing some of the treatments sought here." *Skrmetti*, 83 F.4th at 487. As a

23   result, transgender status should not qualify as a quasi-suspect class.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

1     The EO moreover does not classify on the basis of sex. In addressing treatments that

2 seek to delay "normally timed puberty in an individual who does not identify as his or her sex,"

3 or "to align an individual's physical appearance with an identity that differs from his or her

4 sex," the EO applies evenhandedly to males and females. EO 14,187 § 2(c). It directs agencies

5 to take appropriate steps, consistent with applicable law, to ensure that grant recipients do not

6 provide the referenced treatments to members of either sex who are less than 19 years of age.

7 *Id.* §§ 2, 4. That a "key distinction in the [EO] turns on age" is "eminently reasonable and does

8 not trigger heightened review." *Skrmetti*, 83 F.4th at 480.

9     Such a policy does not privilege or burden one sex over the other, nor apply one regime

10 to men and another to women, making it wholly unlike the classifications the Supreme Court

11 has found to be sex-based. *See Miss. Univ. for Women v. Hogan*, 458 U.S. 718 (1982)

12 (university's policy of admitting women, but not men, was sex classification). It is no surprise,

13 then, that several circuits have concluded that state restrictions on similar treatments did not

14 establish a sex classification. *See Skrmetti*, 83 F.4th at 480; *Eknes-Tucker v. Governor of Ala.*

15 ("*Eknes-Tucker I*"), 80 F.4th 1205, 1228 (11th Cir. 2023).

16     Plaintiffs cite the Supreme Court's decision in *Bostock v. Clayton Cnty.*, 590 U.S. 644,

17 660 (2020) for the proposition that a classification based on transgender status is necessarily a

18 sex classification. Pls.' Mem. at 11. The government recognizes that the Ninth Circuit has so

19 held. *See Hecox v. Little*, 104 F.4th 1061, 1080 (9th Cir. 2024). The government's position is

20 that the Ninth Circuit incorrectly imported the Supreme Court's Title VII-specific conclusion in

21 *Bostock* into the distinct equal protection context. In *Bostock*, the Supreme Court reasoned that

22 Title VII's prohibition on sex discrimination incorporated a but-for causation standard, and

23 held that when an employer fires an employee because that employee is gay or transgender, sex

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

is necessarily a but-for cause. *Bostock*, 590 U.S. at 656, 668–69, 683. *Bostock* addressed the text of Title VII," *id.* at 676, which prohibits employment "discriminat[ion] … because of [an] individual's … sex," 42 U.S.C. § 2000e-2(a)(1). The text of the Equal Protection Clause is different. The Clause does not mention "sex" or "discriminat[ion]," but rather says that a State may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. Consistent with this textual distinction, courts have recognized that Title VII and the Equal Protection Clause have different purposes and different functions. *See, e.g.*, *Skrmetti*, 83 F.4th at 484–85. A law or policy constitutes sex discrimination for equal protection purposes only if it *classifies* individuals based on their sex, *see Frontiero v. Richardson*, 411 U.S. 677, 682 (1973), which the EO does not do.

Plaintiffs finally argue that the EO discriminates based on sex because it would not implicate "testosterone therapy to a cisgender boy who wants to 'jumpstart' puberty," Pls.' Mem. at 11, whereas it would implicate the use of sex hormones "to align an individual's physical appearance with an identity that differs from his or her sex," EO 14,187 § 2(c). This reasoning is flawed because it "assumes that any administration of these hormones is one treatment," whereas in fact "[u]sing testosterone or estrogen to treat gender dysphoria (to transition from one sex to another) is a different procedure from using testosterone or estrogen to treat, say, Kleinfelter Syndrome or Turner Syndrome (to address a genetic or congenital condition that occurs exclusively in one sex)." *Skrmetti*, 83 F.4th at 481. That the EO treats different treatments, with different purposes, differently does not implicate the constitutional requirement that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

   *iii.* *Important governmental interests animate the President's order that agencies explore policy options.*

Rational basis review requires only that "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). "[T]hose attacking the rationality of the . . . classification have the burden to negative every conceivable basis which might support it." *Id.* at 315 (quotations omitted). Under intermediate scrutiny, the government must show that the classification "serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *United States v. Virginia*, 518 U.S. 515, 533 (1996) (quotations omitted). Because the EO does not classify based on any protected characteristic, rational basis review should apply. But the EO also satisfies intermediate scrutiny, and should therefore be upheld regardless.

The EO serves important (indeed compelling) governmental interests. "A democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens," and the Supreme Court has accordingly "sustained legislation aimed at protecting the physical and emotional well-being of youth even when the laws have operated in the sensitive area of constitutionally protected rights." *New York v. Ferber*, 458 U.S. 747, 757 (1982) (quotation omitted). The EO is based on this governmental interest: as the EO explains,

> Countless children soon regret that they have been mutilated [through the covered treatments] and begin to grasp the horrifying tragedy that they will never be able to conceive children of their own or nurture their children through breastfeeding. Moreover, these vulnerable youths' medical bills may rise throughout their lifetimes, as they are often trapped with lifelong medical complications, a losing war with their own bodies, and, tragically, sterilization.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

EO 14,187 § 1. Far from evincing "animus" towards transgender people, Pls.' Mem. at 15, the EO evinces a presidential directive that agencies consider appropriate ways to prevent serious harms to young people under applicable law.

Plaintiffs seek to downplay the covered treatments as not sufficiently risky, but evidence abounds that such treatments "are dangerous and ineffective." *Eknes-Tucker II*, 114 F.4th at 1266 (Lagoa, J., concurring); *see also id.* (discussing evidence); *Skrmetti*, 83 F.4th at 489 (similar); Tenn. Code Ann. § 68-33-101 (legislative findings that similar treatments "can lead to the minor becoming irreversibly sterile, having increased risk of disease and illness, or suffering from adverse and sometimes fatal psychological consequences"). Moreover, as the EO references, adolescents cannot necessarily "appreciate the life-altering nature of the[se] medical treatments." *Eknes-Tucker II*, 114 F.4th at 1267 (Lagoa, J., concurring). Combined with the fact that "studies show that most children with gender dysphoria grow out of it," *id.*, this results in adolescents later experiencing "regret" about the irreversible treatments they were subjected to, EO 14,187 § 1. Plaintiffs' assertion that the incidence of regret is not sufficiently high compared to procedures like "hip replacement," Dunham Decl. ¶ 17, ECF No. 99, ignores the harm specific to adolescents who are "incapable of knowingly consenting" to the covered treatments. *Eknes-Tucker II*, 114 F.4th at 1267 (Lagoa, J., concurring).

Plaintiffs argue that these treatments are "medically necessary." Pls.' Mem. at 14. But while Plaintiffs may disagree, there is ample evidence for the EO's concern about a lack of sufficient medical or scientific evidence of the efficacy of such treatments for gender dysphoria in minors and the high risks of adverse effects. *See, e.g.*, *Skrmetti*, 83 F.4th at 488–89 (stating that "the evidence supporting [similar treatments'] use is far from conclusive," and discussing the "unsettled, developing, in truth still experimental[] nature of treatments in this area"); Tenn.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

Code Ann. § 68-33-101 (similar treatments "are experimental in nature and not supported by high-quality, long-term medical studies"). Plaintiffs' arguments that the EO is underinclusive because it does not address "treatments when provided to affirm an adolescent's gender assigned at birth," Pls.' Mem. at 14, are further unpersuasive. The government did not identify, nor do Plaintiffs cite, evidence that use of these treatments create the same harms as the uses addressed in the EO.

In sum, the EO satisfies intermediate scrutiny (as well as rational basis review), and should not be enjoined.

**D.  Plaintiffs are unlikely to succeed on their Tenth Amendment claim.**

Plaintiffs claim 18 U.S.C. § 116, or at least the EO's purported interpretation of it, violates the Tenth Amendment by "usurp[ing] the States' reserved powers to regulate the practice of medicine." TRO Mot. at 18. This claim is meritless. To obtain a conviction under 18 U.S.C. § 116, the government must prove one of the jurisdictional elements in the statute to establish that the charged conduct has a sufficient nexus to interstate or foreign commerce. This jurisdictional element places the statute squarely within Congress' Commerce Clause power—and removes it from the powers reserved to the states under the Tenth Amendment.

"If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States." *New York v. United States*, 505 U.S. 144, 156 (1992). Thus, when "Congress acts under one of its enumerated powers—here its power under the Commerce Clause—there can be no violation of the Tenth Amendment." *United States v. Mussari*, 95 F.3d 787, 791 (9th Cir. 1996).

Section 116 falls squarely within Congress' Commerce Clause authority, and Plaintiffs do not argue the contrary. Const. Art. I, § 8, cl. 3. Congress may regulate "three broad

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

categories of activity" under its commerce power: (1) "the use of the channels of interstate commerce," (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities," and (3) "activities that substantially affect interstate commerce." *United States v. Morrison*, 529 U.S. 598, 608 (2000). Section 116 requires proof of one of several jurisdictional elements that bring the statute within these categories.[5] 18 U.S.C. § 116(d)(1)–(5). For example, for prosecutions under § 116(d)(1), the government must prove that "the defendant or victim traveled in interstate or foreign commerce . . . in furtherance of or in connection with the [charged] conduct." Under § 116(d)(2), the government must prove "the defendant used a means, channel, facility, or instrumentality of interstate or foreign commerce in furtherance of or in connection with the [charged] conduct." The Ninth Circuit, and other courts of appeals, "have consistently approved statutes with jurisdictional hooks in the face of Commerce Clause challenges." *United States v. Howald*, 104 F.4th 732, 738 (9th Cir. 2024), *cert. denied*, No. 24-5814, 2024 WL 5011770 (U.S. Dec. 9, 2024); s*ee, e.g.*, *United States v. Ballinger*, 395 F.3d 1218, 1230 (11th Cir. 2005); *United States v. Dela Cruz*, 358 F.3d 623, 625 (9th Cir. 2004);; *United States v. Lankford*, 196 F.3d 563, 570–72 (5th Cir. 1999).

Plaintiffs' motion makes no mention of these Commerce Clause principles, nor explains why the statute's jurisdictional element—which the government would need to prove in any prosecution—is insufficient to satisfy them under binding Ninth Circuit authority. The government of course must prove one of the jurisdictional elements in any prosecution, but

---

[5] Congress amended 18 U.S.C. § 116 in 2021 to include this jurisdictional element, as well as legislative findings to further support the effects on interstate and foreign commerce of female genital mutilation, Public Law 116–309, § 2 (2021), after a court invalidated a prior version of the statute on grounds that it exceeded Congress' authority. *See United States v. Nagarwala*, 350 F. Supp. 3d 613 (2018).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

1   plaintiffs' claim does not hinge on any theory that their feared prosecutions will fail to establish

2   the jurisdictional element.

3       Instead, Plaintiffs claim the statute interferes with their authority to regulate the practice

4   of medicine, noting that they have enacted laws "protecting providers and patients in providing

5   or obtaining gender-affirming treatment" and that their laws do not treat "participation in any

6   gender-affirming treatment consistent with the [state] standard of care" as "unprofessional

7   conduct subject to discipline." Pls.' Mem. at 18–19. But "[f]ederal laws criminalizing conduct

8   within traditional areas of state law, whether the states criminalize the same conduct or decline

9   to criminalize it, are of course commonplace under the dual-sovereign concept and involve no

10  infringement per se of states' sovereignty in the administration of their criminal laws." *United*

11  *States v. Johnson*, 114 F.3d 476, 481 (4th Cir. 1997). "So long as a federal criminal statute falls

12  within the limits of the Commerce Clause, it withstands the challenge that it interferes with the

13  states' ability to define and enforce [their own laws]." *Id.* (quotation omitted). In any event, all

14  three plaintiff states have laws that similarly criminalize female genital mutilation. Wash. Rev.

15  Code Ann. § 9A.36.170; Minn. Stat. Ann. § 609.2245; Or. Rev. Stat. Ann. § 163.207. And the

16  Washington law defines "female genital mutilation" using the same language as 18 U.S.C.

17  § 116. Wash. Rev. Code Ann. § A.36.175.

18      Plaintiffs' claim ultimately boils down to a fear that 18 U.S.C. § 116 will be used to

19  prosecute conduct that Plaintiffs believe falls outside the scope of the statute. In support of this

20  fear, Plaintiffs assert that the EO puts forth a "new" "interpretation" of 18 U.S.C. § 116 and

21  directs the Attorney General to "prioritize" prosecutions consistent with that purported new

22  interpretation. Pls.' Mem. at 8; *see id.* at 19. But that is not a Tenth Amendment concern. It's a

23  concern that the government will act contrary to Plaintiffs' view of the statute. Plaintiffs have

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

not raised in their complaint any contrary to law claim with respect to Section 8 of the EO or 18 U.S.C. § 116, so the Court cannot grant preliminary relief on that basis. *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) ("When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction.").

In any event, Plaintiffs' claim is speculative and misread the EO. Section 8 instructs the Attorney General to "review Department of Justice enforcement of section 116 of title 18, United States Code, and prioritize enforcement of protections against female genital mutilation." EO 14,187 § 8. The EO thus does not require any particular interpretation of the criminal statute or any prosecutions, but only directs "review" and prioritization.

Moreover, by its terms, this direction addresses "female genital mutilation," which is defined in 18 U.S.C. § 116, and not "chemical and surgical mutilation," which is defined separately and differently in the Executive Order. Order § 2(c). The EO does not purport to define (or redefine) "female genital mutilation." That phrase is already defined in 18 U.S.C. § 116, and the EO makes clear that it "shall be implemented consistent with applicable law," Order § 11(b), and "shall not be construed to . . . affect . . . the authority granted by law to [the Attorney General]," *id.* § 11(a)(1).

Plaintiffs seem most concerned that 18 U.S.C. § 116 could be used to prosecute physicians who provide or parents who facilitate "non-surgical options like puberty-blocking medications and hormone therapy." Pls.' Mem. at 19. The statute, however, criminalizes only "procedure[s]" that "involve[] partial or total removal of, or other injury to, the external female genitalia," such as "a clitoridectomy," "the partial or total removal . . . of the labia minora or the labia majora," or "pricking, incising, scraping, or cauterizing the genital area." 18 U.S.C.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

§ 116(e). Plaintiffs do not contend the statute has ever been used to prosecute such conduct and do not show that any such prosecution is certainly impending.

As for surgical procedures, Plaintiffs note that the statute "explicitly excludes any 'surgical operation' that is 'necessary to the health of the person on whom it is performed and is performed by a person licensed in the place of its performance as a medical practitioner.'" TRO Mot. at 19 (quoting 18 U.S.C. § 116(b). But Plaintiffs acknowledge that "non-surgical options . . . are generally the only treatments minors can receive," and they are the only treatments the physician Plaintiffs provide. Pls' Mem. at 19; *see* Physician Pl. 1 Decl. ¶ 14, ECF No. 13; Physician Pl. 2 Decl. ¶¶ 8, 28, ECF No. 14; Physician Pl. 3 Decl. ¶ 11, ECF No. 15. Plaintiffs thus lack standing to challenge any hypothetical application of the statute to surgical procedures. *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1141 (9th Cir. 2000) (no standing absent a "genuine threat of imminent prosecution"). Moreover, the court cannot (and should not) make an abstract determination about whether future, hypothetical surgical operations are necessary to the health of unknown persons in undefined circumstances—particularly in the context of a broad constitutional challenge under the Tenth Amendment. *See, e.g.*, *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 903 (9th Cir. 1993) (rejecting constitutional claim as unripe because the "entire argument about the effect of the . . . statute rests upon hypothetical situations and hypothetical clients"). Courts "do not decide constitutional questions in a vacuum." *Thomas*, 220 F.3d at 1141 (quotations omitted).

Finally, even if Plaintiffs' Tenth Amendment claim had merit (and it does not), Plaintiffs' requested relief is impermissibly vague and overbroad. Plaintiffs seek to enjoin defendants from "[e]nforcing 18 U.S.C. § 116 against health care providers for care provided in Plaintiff States or against families receiving health care provided in Plaintiff States." Pls'

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

Proposed Order at 5. Their proposed order does not define the "care" or "health care" against

which it seeks to enjoin enforcement of 18 U.S.C. § 116. It does not limit the protected "care"

or "health care" to treatments authorized under state law, much less procedures that are not

prohibited by 18 U.S.C. § 116. Federal Rule of Civil Procedure 65(d) requires that any

restraining order be "specific in terms" and describe "in reasonable detail . . . the act or acts

sought to be restrained." An injunction is not enforceable if it "does not clearly describe

prohibited or required conduct." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1132

(9th Cir. 2006). Plaintiffs' proposed order flunks that test, and thus, it should be denied for that

reason alone.

## II.    THE REMAINING FACTORS WEIGH AGAINST PLAINTIFFS' REQUESTED RELIEF

Plaintiffs wrongly contend that they have shown irreparable injury because of the EO

will purportedly "reduce … the availability of gender-affirming care," and cause grantees to

lose "hundreds of millions of dollars in funding." Pls.' Mem. at 20, 23. But these prospects are

wholly speculative at this point given that the EO has not been applied to any specific funding

or grants. Moreover, Plaintiffs do not show that the EO will be so applied in so short a timeline

that a TRO is necessary to prevent it. *See Facebook, Inc. v. BrandTotal Ltd.*, 499 F. Supp. 3d

720, 735 (N.D. Cal. 2020) ("Even assuming for the sake of argument that [plaintiff's evidence]

might show likely irreparable harm in the absence of relief before trial . . . the Court cannot say

whether expedited relief in the form of a TRO . . . is necessary to prevent such harm.").

Plaintiffs also cite alleged harm stemming from violation of their constitutional rights.

*See id.* at 20. But merely asserting a constitutional claim is insufficient to trigger a finding of

irreparable harm where a plaintiff "has not shown [that] he suffered a constitutional

deprivation." *Epps v. Grannis*, 2011 WL 3740477, at *2 (S.D. Cal. Aug. 1, 2011)

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

Finally, it is incorrect that a TRO "would not harm the federal government at all." Pls.' Mem. at 24. The relief Plaintiffs request would effectively disable the President and federal agencies from effectuating the President's agenda consistent with their statutory authorities and constitutional duties. The public interest is not advanced when the Executive is disabled from even *considering* a policy, especially one that has been the subject of legislation across the country. *See* KFF, *Policy Tracker: Youth Access to Gender Affirming Care and State Policy Restrictions*, https://perma.cc/M9Y3-D4M2. Thus, the balance of the equities weighs in favor of the Government and relief should be denied.

## III.    ANY TRO SHOULD BE LIMITED TO THE PLAINTIFFS.

For the reasons explained above, the Court should deny Plaintiffs' motion in its entirety. But even if the Court determines that a TRO is appropriate, it should be limited to the Plaintiffs before this Court and not extend, as Plaintiffs request, to all "health care providers for care provided in Plaintiff States." *See* Pls.' Proposed Order at 4–5.

Relief should be limited to Plaintiffs themselves. A plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* Thus, constitutional claims generally may be brought only by "one at whom the constitutional protection is aimed." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004).

The Supreme Court has recognized a narrow exception to that rule for *parens patriae* actions—that is, suits in which a state seeks "to protect her citizens" from alleged violations of their federal rights. *Georgia v. Pennsylvania Railroad Co.*, 324 U.S. 439, 447 (1945). Critically, however, it is well established that a "State does not have standing as *parens patriae* to bring an action against the Federal Government." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 610 n.16 (1982). "[I]t is no part of [a State's] duty or p[ower to enforce

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

[its people's] rights in respect of their relations with the Federal Government." *Massachusetts v. Mellon*, 262 U.S. 447, 485–86 (1923). A recent example: in *Haaland v. Brackeen*, 599 U.S. 255 (2023), Texas lacked standing to challenge a federal statute under the Equal Protection Clause. Texas "ha[d] no equal protection rights of its own," and Texas could not "assert equal protection claims on behalf of its citizens because 'a State does not have standing as *parens patriae* to bring an action against the Federal Government.'" *Id.* at 294–95 (brackets and citation omitted). For these reasons, any TRO should be limited to the named Plaintiffs only and should not include nonparty providers geographically situated in the state Plaintiffs' boundaries.

## **CONCLUSION**

For these reasons, the Court should deny Plaintiffs' TRO motion.

DATED: February 11, 2025                Respectfully submitted,

BRETT A. SHUMATE
Acting Assistant Attorney General
Civil Division

MICHELLE BENNETT
Assistant Branch Director
Federal Programs Branch

*/s/  Vinita B. Andrapalliyal*
VINITA B. ANDRAPALLIYAL
Senior Counsel (NY Bar Reg. No. 5231667)
CHRISTIAN S. DANIEL
Trial Attorney (DC Bar No. 1600226)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel: (202) 305-0845
Fax: (202) 616-8460
vinita.b.andrapalliyal@usdoj.gov
christian.s.daniel@usdoj.gov

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

*Attorneys for Defendants*

*I certify that this memorandum contains 8400 words, in compliance with the Local Civil Rules.*

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

1

## CERTIFICATE OF SERVICE

2

3      I hereby certify that on February 11, 2025, I electronically filed the foregoing

4   Opposition to Plaintiffs' Motion for Temporary Restraining Order using the Court's CM/ECF

5   system, causing a notice of filing to be served upon all counsel of record.

6

7   Dated: February 11, 2025                    /s/  Vinita. B. Andrapalliyal
                                                VINITA B. ANDRAPALLIYAL
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902