The Honorable Lauren King

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br> Defendants. | NO. 2:25-cv-00244-LK <br><br> PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER <br><br> ORAL ARUGMENT: <br> February 14, 2025, at 10:00 a.m. |

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:25-CV-00244-LK

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................ 1

II. ARGUMENT .................................................................................................................. 1

    A. Defendants' Threshold Arguments Are Meritless ................................................... 1

    B. Plaintiffs Are Likely to Succeed on the Merits ........................................................ 3

        1. The Order violates the separation of powers, and is not the empty gesture Defendants' claim ........................................................................................... 3

        2. The Order violates equal protection ................................................................ 5

            a. The Order classifies based on transgender status and sex ......................... 5

            b. The Order fails heightened scrutiny ........................................................... 6

        3. The Order is not authorized by the Commerce Clause and violates the Tenth Amendment ........................................................................................... 8

    C. Irreparable Injury and the Balance of Equities Weigh in Plaintiffs' Favor, and a Temporary Restraining Order Is in the Public Interest ....................................... 10

    D. Relief Should Cover All Gender-Affirming Care Provided in Plaintiff States ....... 11

III. CONCLUSION ............................................................................................................ 12

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:25-CV-00244-LK

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

## I. INTRODUCTION

Defendants resist a temporary restraining order yet submit no evidence whatsoever and primarily argue for the reversal of binding Ninth Circuit precedent. Even though the Order is coercing medical providers to stop providing gender-affirming care today, and even though the President boasts about this loss of care as a "promise[] kept," Defendants say this lawsuit is not ripe. But the Order unequivocally proclaims its intent is to "end" gender-affirming care "immediately," and a federal agency has *already* acted to implement the Order against the Plaintiff States. Without relief, the Order's open discrimination and flagrant intrusion into congressional and state prerogatives will go unchecked. Defendants do not rebut the deluge of harms caused by their Order and established by the Plaintiffs' evidence. This Court should enjoin Defendants from enforcing the Order.

## II. ARGUMENT

### A. Defendants' Threshold Arguments Are Meritless

At the outset, Defendants are mistaken that Plaintiffs bring only a facial challenge. Opp. p.8. Courts look to whether a party is challenging the entirety of an action or only parts of it in analyzing the facial versus as-applied nature of a challenge. *See Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011). Here, Plaintiffs challenge specific sections of the Order. *See* Compl. pp.24-31. Thus, whether there are hypothetical lawful applications of the Order is irrelevant to Plaintiffs' claims. *See* Opp. p.8.

Defendants then make a passing argument that Plaintiffs lack a cause of action. Opp. p.9. It is well-established that plaintiffs who have demonstrated Article III standing—which Defendants concede—may obtain declaratory and injunctive relief to prevent unconstitutional federal action. *See, e.g., City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1233-35 (9th Cir. 2018) (affirming judgment where Executive Order unconstitutionally violated the separation of powers); *Washington v. Trump*, 847 F.3d 1151, 1164-65 (9th Cir. 2017) (denying motion to stay injunction against Executive Order). Indeed, "[t]he ability to sue to enjoin

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:25-CV-00244-LK

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015).[1]

Defendants next dispute prudential ripeness. Opp. pp.9-11.[2] Under this doctrine, the Court considers "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1141 (9th Cir. 2000) (en banc). Prudential ripeness considerations strongly favor Plaintiffs. Regarding fitness, the Order has a direct and immediate effect—by subjecting the Plaintiff States' medical institutions and providers to severe financial and criminal threats, the Order has the status of law which "requires immediate compliance with its terms." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009). Regarding hardship, the challenged Order "requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." *Id*. Indeed, the White House itself has touted that the Order is "already having its intended effect" in highlighting hospitals who have been coerced into curtailing or eliminating gender-affirming care. Dkt. #17-9; *see also* Compl. ¶109; Dkt. #129 (allegations and testimony on eliminated care). In short, the Order is in effect and has caused immediate, harmful effects on Plaintiffs.

Defendants dispute ripeness by arguing that "agency defendants have not taken action to revoke, or threaten to revoke, any funding at issue in the EO." Opp. p.8. Defendants wholly ignore that the Administration has ordered grant recipients not to use funds in ways that violate the Order. *See* Dkt. #16 ¶21; Dkt. #16-1 p.2 (HRSA notice directing grantees that "effective immediately" grant funds may not be used for "activities that do not align" with E.O. 14,187,

---

[1] Defendants' argument that there is no final agency action here (Opp. p.9) is beside the point because Plaintiffs do not raise any claims under the Administrative Procedure Act.

[2] Defendants do not dispute Plaintiffs' Article III standing. For the same reasons Plaintiffs have standing, Dkt. #11 (Mot.) pp.8-11, this case is constitutionally ripe. *See Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003).

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:25-CV-00244-LK

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

among others); Dkt. #16-2 p.2 (HRSA notice withdrawn without explanation).[3] They ignore news from every corner of the country that gender-affirming care providers are ceasing care and canceling appointments in response to the Order. McGinty Reply Decl. Exs.1-6. And this position also cannot be reconciled with the administration's actions to halt billions in federal funding with virtually no notice, which have been rescinded or restrained only because of litigation. *See* Dkt. #17-6 p.2 (rescinded) (freezing the obligation and disbursement of all federal financial assistance); Nat'l Inst. of Health NOT-OD-25-068 (cutting billions per year from NIH research grants). And tellingly, Defendants have "not even attempted to show that Congress authorized" them to condition federal grant moneys from medical institutions for providing gender-affirming care. *City & Cnty. of San Francisco*, 897 F.3d at 1234 (challenge to Executive Order purporting to prevent "sanctuary jurisdictions" from receiving federal grants ripe for review). This case is ripe because the President has claimed for himself Congress's exclusive spending power, has directed federal agencies to "[d]efund[]" gender-affirming care "immediately," and because federal officials have followed through on his command. Exec. Order No. 14,187, 90 C.F.R. 8771 (cited as E.O. 14,187) §4.

B.  **Plaintiffs Are Likely to Succeed on the Merits**

   1.  **The Order violates the separation of powers, and is not the empty gesture Defendants' claim**

Defendants' lead argument—and their only argument on separation of powers—is that the Order cannot violate the law because it "requires agencies to act 'consistent with applicable law'" and includes a savings clause requiring the same. Opp. p.12 (quoting E.O. 14,187 §§4, 11(b)). But as Defendants well know, the Ninth Circuit already rejected this "all bluster and no

---

[3] Defendants point to 2 C.F.R. § 200.340, which outlines when a federal award may be terminated. But this regulation makes clear that this is subject to the "terms and conditions" of the award. HRSA's directive cited no such terms and conditions. And hospitals too have reported losing federal funding for transgender health care as a result of the President's executive orders. *See* McGinty Reply Decl. Ex.1. The recission of HRSA's notice does not render this action moot. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:25-CV-00244-LK

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

bite" argument when President Trump made it during his first go-round. *City & Cnty. of San Francisco*, 897 F.3d at 1238.

The Ninth Circuit's reasoning in *San Francisco* controls. "Savings clauses are read in their context, and they cannot be given effect when the Court, by rescuing the constitutionality of a measure, would override clear and specific language." *Id.* at 1239. The Court in *San Francisco* distinguished *Allbaugh*, the main authority Defendants rely on (Opp. pp.13-15), "[b]ecause the Executive Order unambiguously commands action," and there is "more than a 'mere possibility that some agency might make a legally suspect decision.'" *Id.* at 1240 (quoting *Bldg. & Const. Trades Dept. v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002)). "The Executive Order's savings clause does not and cannot override its meaning." *Id.*[4]

Contrary to Defendants' protestations, the Order here is no less a directive than the executive order in *San Francisco*. *Contra* Opp. p.14. Section 4 explicitly directs all executive agencies to "immediately take appropriate steps to ensure that institutions receiving Federal research or education grants end" gender-affirming care. E.O. 14,187 §4. That must mean something, unless Defendants are prepared to concede that halting federal funding is not an "appropriate step[]"—a position that would be at odds with basically everything they have done for the past three weeks. *See*, *e.g.*, Defs. Resp. to Prop. TRO, Dkt. #49 p.2, *New York v. Trump*, Case No. 1:25-cv-00039-JJM-PAS (D.R.I. Jan. 30, 2025) (arguing that a sweeping federal funding freeze was within "[t]he President's authority to direct subordinate agencies to implement his agenda"). There is no way to read this as anything but a directive to federal agencies to immediately, and unlawfully, halt federal funding to institutions providing gender-affirming care. HRSA agreed, instructing grant recipients to "immediately" cease grant use that conflicted with the Order before abruptly changing course, causing a "climate of chaos" for state medical institutions. Dkt. #16 ¶21. Defendants try to avoid binding precedent by suggesting that

---

[4] Defendants' argument that *San Francisco* "was wrongly decided and should be overruled," Opp. p.15 n.4, is an argument they will have to make to an *en banc* Ninth Circuit panel.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER
NO. 2:25-CV-00244-LK

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

this Court should wait to see if "an agency . . . contravene[s] the law in a particular instance." Opp. p.15 (quoting *Allbaugh*, 295 F.3d at 33). But even if *Allbaugh* controlled here, Defendants fail to cite even a single statute that would grant them the power they claim. As Plaintiffs established previously, there is no such law. *See* Mot. p.17 n.8 (citing ten years of appropriations bills). Nor, obviously, do they identify a statute that permits them to violate the Fifth or Tenth Amendments.

### 2. The Order violates equal protection

The Order violates equal protection because it explicitly classifies based on transgender status and sex and cannot satisfy heightened scrutiny.

#### a. The Order classifies based on transgender status and sex

It is clear the Order discriminated based on transgender status and sex by penalizing medical treatments when provided to an "individual who does not identify as his or her sex;" "to align an individual's physical appearance with an identity that differs from his or her sex;" or "to transform an individual's physical appearance to align with an identity that differs from his or her sex,". An adolescent assigned male at birth cannot receive medical treatment helping them to "identify" as a girl. And an adolescent assigned female at birth cannot receive medical treatment enabling them to "align" his physical appearance with his gender identity as a boy. The Order unquestionably classifies based on transgender status and sex.[5]

Defendants argue the Order classifies "based on the medical use of the treatment at issue" and not transgender status or sex. Opp. pp.17-18. They're flat wrong. Take for example puberty-delaying medication. Under the Order, adolescents assigned male at birth can receive puberty-delaying medication to bring their bodies into alignment with a typical male puberty, but adolescents assigned female cannot. Likewise, adolescents assigned female at birth can receive

---

[5] Until February 7, 2025, the United States had repeatedly concurred with Plaintiffs' position. *See* Br. for the United States as Amicus Curiae, *Poe v. Labrador*, No. 24-142 (9th Cir. Mar. 12, 2024); Br. for the Petitioner, *United States v. Skrmetti*, No. 23-477 (U.S. Aug. 27, 2024) (similar); *but see* Letter from Curtis Gannon to Scott Harris (Feb. 7, 2025), https://www.supremecourt.gov/DocketPDF/23/23-477/342223/20250207133625781_Letter%2023-477.pdf (retracting position in *Skrmetti*).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER NO. 2:25-CV-00244-LK

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

puberty-delaying medication to bring their bodies into alignment with a typical female puberty, but adolescents assigned male cannot. The fact that both adolescents assigned male at birth and those assigned female receive the same drug to pause puberty, does not make the Order "evenhanded[]." *Contra* Opp. p.18. The Order applies only when medical care is provided to assist adolescents to "identify" differently from their sex assigned at birth. *See Poe by & through Poe v. Labrador*, 709 F. Supp. 3d 1169, 1191-92 (D. Idaho 2023); *Brandt ex rel. Brandt v. Rutledge*, 47 F.4th 661, 670-71, n.4 (8th Cir. 2022).

Defendants repeatedly disagree with binding precedent on the equal protection guarantee for transgender people as "incorrect" and calling for it to be overruled. Opp. pp.4,15 n.4,16-18 *but see* Mot. p.12 (citing cases). These arguments must be directed to an en banc panel of the Ninth Circuit. Defendants even remarkably argue that transgender people are not politically powerless. Opp. p.17. But this assertion is impossible to reconcile with the President's onslaught of executive orders and public statements, making the erasure of transgender existence the cornerstone of federal policy and the administration's politics. *See* Dkt. ##17-1, 17-2, 17-3, 17-15.[6]

### b.    The Order fails heightened scrutiny

The Order cannot satisfy intermediate scrutiny because it does not serve any important government interest. Defendants' contrary arguments are as baseless as the Order itself. Without offering any evidence, they merely point back to language in the Order that claims "[c]ountless children soon regret that they have been mutilated ...and begin to grasp the horrifying tragedy that they will never be able to conceive children of their own or nurture their children through breastfeeding." Opp. p.20 (quoting E.O. 14,187 §1). This has no basis in fact, as Plaintiffs' experts and numerous provider witnesses make clear. *See* Mot. pp.5-6 (detailing extremely low

---

[6] At the state-level, 93% of transgender youth ages 13-17 live in states that have passed or proposed laws banning access to gender-affirming care, participation in sports, use of bathrooms and other sex-separated facilities, or affirmation of gender through pronoun use. Elana Redfield, et al., *The Impact of 2024 Anti-Transgender Legislation on Youth*, UCLA Williams Institute (Apr. 2024), https://williamsinstitute.law.ucla.edu/publications/2024-anti-trans-legislation/.

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:25-CV-00244-LK

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

rate of regret among youth receiving gender-affirming care); Dkt. #18 ¶¶60-62 (explaining that puberty blocking medications do not impair fertility and that the fertility risks of hormone replacement therapy are overstated, often reversible, and can be managed); Dkt #19 ¶¶82-83 (similar).

Defendants try to rest their claim on two non-binding opinions (one a single-judge concurrence) which they say "discuss[] evidence." Opp. p.21 (citing *Eknes-Tucker v. Governor of Alabama*, 114 F.4th 1241, 1266 (11th Cir. 2024) (Lagoa, J., concurring), and *L. W. by & through Williams v. Skrmetti*, 83 F.4th 460, 489 (6th Cir. 2023), *cert. granted sub nom. United States v. Skrmetti*, 144 S. Ct. 2679 (2024)). But Defendants simply ignore cases going the other way. *See, e.g. Brandt*, 47 F.4th at 670 (holding that "substantial evidence" demonstrates that Arkansas' ban on gender-affirming care "prohibits medical treatment that conforms with 'the recognized standard of care for adolescent gender dysphoria,' [and] that such treatment 'is supported by medical evidence that has been subject to rigorous study[]'") (quoting district court); *Poe*, 709 F. Supp. 3d at 1194 (concluding that Idaho's ban on gender-affirming care failed intermediate scrutiny). Moreover, the opinions on which Defendants rely merely conclude that there is evidence sufficient to satisfy rational basis review—which does not apply here.[7] And neither opinion attaches the evidence on which they claim to rely, meaning that it is not before this Court. Nor does either opinion explain why the relatively minor side-effects of gender-affirming care justify the total ban contemplated by the Order, particularly when the same treatments are widely used for cisgender youths, and when many, riskier treatments remain widely available. *See* Mot. pp.14-15; *Poe*, 709 F. Supp. 3d at 1193 (finding Idaho's justification for its gender-affirming care ban "pretextual" because the law "allows the same treatments for cisgender minors that are deemed unsafe and thus banned for transgender minors"). Nor do Defendants offer any explanation why this Court, in evaluating gender-affirming care, should

---

[7] Even if it did, the rank animus behind the Order dooms it even under rational basis review. Mot. pp.16-17.

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:25-CV-00244-LK

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

privilege the opinions of a handful of judges above the overwhelming medical consensus or the 100-plus declarations submitted by Plaintiffs that detail the critical, often life-saving, benefits of gender-affirming care for youth with gender dysphoria. *See* Dkt. #18 ¶¶40-42; Mot. pp.4-7, 14, 22-24 (discussing evidence).

In the face of the Plaintiffs' *actual* evidence, Defendants' *ipse dixit* cannot carry their "demanding" burden. *United States v. Virginia*, 518 U.S. 515, 533 (1996).

### 3. The Order is not authorized by the Commerce Clause and violates the Tenth Amendment

Defendants argue that 18 U.S.C. § 116 fits squarely within the Commerce Clause (Opp. pp.22-23), and Plaintiffs agree. Plaintiffs are not challenging 18 U.S.C. § 116, but E.O. 14,187 which weaponizes that statute and threatens criminal investigation and prosecution against care providers and families of transgender and gender-diverse youths.

This is a Tenth Amendment concern. *Contra* Opp. p.24. The President has no Commerce Clause powers and cannot unilaterally criminalize gender-affirming care whether there is a nexus to interstate commerce or not. *See* U.S. Const. art. II. "The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." U.S. Const. amend. X. Because the Constitution does not give the President the power to regulate health care, when he arrogates it to himself, he treads on rights reserved to the States. *See Linder v. United States*, 268 U.S. 5, 18 (1925).

Attempting to save the Order, Defendants read it devoid of all context. This is an order that declares "medical professionals are maiming and sterilizing" children with "puberty blockers" and "sex hormones." E.O. 14,187 §§1 2(c). It says that "chemical and surgical mutilation" "sometimes is referred to as 'gender affirming care.'" *Id*. §2(c). With those policies and definitions, it directs that the "Attorney General *shall* . . . prioritize enforcement of protections against female genital mutilation." *Id*. §8(a) (emphasis added). According to Defendants, this merely requires a "review" and a "prioritization." Opp. p.25. Defendants seem

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER
NO. 2:25-CV-00244-LK

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

to agree that applying 18 U.S.C. § 116 to gender-affirming care is not a straightforward reading, but conspicuously fail to disavow it.[8] Opp. pp.25-26; *see also Isaacson v. Mayes*, 84 F.4th 1089, 1099 (9th Cir. 2023) (failure to disavow enforcement of a statute establishes a credible threat of enforcement).[9] They even seem to suggest that Section 8(a) has nothing to do with gender-affirming care. *Id*. But, like statutes, executive orders are interpreted consistent with their object and policy. *City & Cnty. of San Francisco*, 897 F.3d at 1238 (quoting *Bassidji v. Goe*, 413 F.3d 928, 934 (9th Cir. 2005)). Here, the object and policy is to "end" gender-affirming care. E.O. 14,187 §1. The natural reading, and the reading giving rise to widespread terror among providers of gender-affirming care and the families of transgender and gender-diverse adolescents (*e.g.*, Dkt. #13 ¶¶28-29; Dkt. #14 ¶25; Dkt. #108 ¶14) is that gender-affirming care like the kind Plaintiffs provide is now a target for criminal investigation and prosecution.

This is also more than a dispute over statutory interpretation: it is question of lawful authority. Gender-affirming care is lawful in Plaintiff States. It is lawful under federal law. The President has no delegated or enumerated power to "end" gender-affirming care. Certainly, the female genital mutilation statute does not give him such authority. That statute defines "female genital mutilation" as covering only procedures "performed for non-medical reasons," and thus cannot lawfully be applied to gender-affirming care. 18 U.S.C. § 116(e). But by directing prosecutions of gender-affirming care, the President is regulating the practice of medicine, without authority, in violation of the Tenth Amendment. Indeed, the President is forcing

---

[8] While Defendants argue Plaintiffs lack pre-enforcement standing to challenge the application of 18 U.S.C. § 116 to gender-affirming surgeries provided to minors (Opp. p. 26) they make no such argument about puberty blockers or hormone treatments, essentially conceding that they intend to apply the statute that way. In any event, Plaintiffs' instrumentalities do not provide genital surgeries to minors, but do provide such surgeries to adults. *E.g.* Dkt. #16 ¶14. But the Order defines "child" as anyone under 19 and therefore includes adults.

[9] 18 U.S.C. § 116(b)(1) excludes surgical operations "necessary to the health of the person on whom it is performed" when "performed by a person licensed" as a "medical practitioner." But the statute also includes language susceptible to bad faith weaponization. It defines "female genital mutilation" in part as "any procedure . . . that involves . . . injury to[] the external female genitalia" including "other procedures that are harmful to the external female genitalia." *Id.* § 116(e).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER NO. 2:25-CV-00244-LK

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

providers to quit gender-affirming care, and gloating about it, Dkt. #17-9 pp.2-3, even as Defendants claim Plaintiffs "misread the EO". Opp. p.25.

Finally, Defendants quibble with the Plaintiffs' proposed order. Opp. pp.26-27. But the order appropriately enjoins Defendants from enforcing 18 U.S.C. § 116 against health care providers providing medically indicated care, which clearly goes beyond the statute's text. To the extent the order does not carve out violations of Plaintiff States' laws against unauthorized practice of medicine, that is not the Defendants' concern. Plaintiff States regulate health care in their states, not Defendants.

C. **Irreparable Injury and the Balance of Equities Weigh in Plaintiffs' Favor, and a Temporary Restraining Order Is in the Public Interest**

Defendants do not seriously contest that the Order is causing irreparable injury to Plaintiffs. They have no answer to the parents who testify to the enormous benefits that gender-affirming care brought to their children. *E.g.* Dkt. #39 ¶6; Dkt. #50 ¶12; Dkt. #68 ¶7. Or the providers who testify that gender-affirming care saved their patients' lives. E.g., Dkt. #77 ¶13; Dkt. #105 ¶8; Dkt. #109 ¶7. Or the expert testimony. Dkt. #18 ¶¶59-66; Dkt. #19 ¶¶85-102. Or even the testimony of Plaintiff States' that enforcement of the Order will deprive the world of critical medical breakthroughs. Dkt. #16 ¶¶5-12; Dkt. #107 ¶¶4-19.

Their *only* argument is that the Order's effect is "speculative." Opp. p.27. This is a rehash of Defendants' argument that the case is not ripe for review and should be rejected for the same reasons. *See supra* 2-3.

The balance of equities and public interest, which merge when the government is a party, also compel an injunction. *Wolford v. Lopez*, 116 F.4th 959, 976 (9th Cir. 2024). The tremendous harm the Order has and will continue to cause Plaintiffs far outweighs Defendants' complaint that enjoining the Order would "effectively disable the President and federal agencies from effectuating the President's agenda," Opp. p.28. Indeed, the Ninth Circuit rejected this argument in *Doe #1 v. Trump,* holding "it cannot be so" that the government's "irreparable harm standard

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:25-CV-00244-LK

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

is satisfied by the fact of executive action alone." 957 F.3d 1050,1059 (9th Cir. 2020). And Defendants' reliance on other states' legislation concerning gender-affirming care only strengthens Plaintiffs' argument that the States' ability to regulate the practice of medicine (consistent with equal protection) is an important public interest.

D.  **Relief Should Cover All Gender-Affirming Care Provided in Plaintiff States**

Lastly, Defendants argue that the scope of relief should be limited only to the "Plaintiffs before this Court," Opp. p.28, presumably meaning only state medical institutions, their providers, and the Physician Plaintiffs. This argument fails for three reasons.

First, and most obviously, for Tenth Amendment purposes the Plaintiff States are the "one[s] at whom the constitutional protection is aimed." *Id*. (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004)). Defendants do not explain how relief for Plaintiff States' sovereign injury could be narrower than the geographic bounds of Washington, Minnesota, and Oregon. Instead, relief here should track the boundaries of the Plaintiff States. *See City & Cnty. of San Francisco v. U.S. Citizenship & Immigr. Servs.,* 981 F.3d 742, 763 (9th Cir. 2020) (affirming preliminary injunction covering "the territory" of the plaintiff states and counties); *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018) (similar).[10]

Second, Defendants' separation-of-powers violation similarly merits complete relief within the Plaintiff States. As the Supreme Court recently explained, broad relief is merited when a state plaintiff demonstrates harm to itself or its instrumentality. In *Biden v. Nebraska*, 143 S. Ct. 2355, 2373-75 (2023), the Supreme Court left undisturbed a *nationwide* preliminary injunction based on the Executive's improper incursion into Congress's "control of the purse." *Id*. That was so even though only *one* plaintiff state showed standing, based on harms to a single Missouri instrumentality receiving federal funds. *Id*. at 2365-67. Here, where the Plaintiff States

---

[10] Defendants purport to refute *parens patriae*, a standing doctrine. Opp. pp.28-29. Because the Plaintiff States did not invoke *parens* standing, and because Defendants concede standing, *parens* is irrelevant. *See* Mot. pp.8-11 (arguing only proprietary, sovereign, and third-party standing).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER
NO. 2:25-CV-00244-LK

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1  stand to lose massive federal funds and Defendants concede standing, an injunction covering the
2  three Plaintiff States is both warranted and modest.

3  Finally, the Physician Plaintiffs represent the interests of their minor patients, not just themselves. Under established precedent, they may seek relief on behalf of current and future patients. *See*, *e.g.*, *June Med. Servs. LLC v. Russo*, 591 U.S. 299, 318 (2020) (plurality) ("We have long permitted abortion providers to invoke the rights of their actual or potential patients[.]") (citing cases); *id*. at 354 n.4 (Roberts, C.J., concurring) (agreeing with standing analysis); *Whitman-Walker Clinic, Inc. v. U.S. Dep't of HHS*, 485 F. Supp. 3d 1, 35 (D.D.C. 2020) ("Defendants are wrong to suggest that the health-provider Plaintiffs cannot assert the rights of LGBTQ patients they might treat in the future."). Because future patients may lawfully seek gender-affirming health care anywhere within the Plaintiff States, the Court should issue an injunction of the same scope. [11]

### III.  CONCLUSION

The Court should grant Plaintiffs' motion.

DATED this 12th day of February 2025.

I certify that this memorandum contains 4,188 words, in compliance with the Local Civil Rules.

NICHOLAS W. BROWN
Washington State Attorney General

*/s/ William McGinty*
WILLIAM MCGINTY, WSBA #41868
CYNTHIA ALEXANDER, WSBA #46019
TERA HEINTZ, WSBA #54921
ANDREW R.W. HUGHES, WSBA #49515
NEAL LUNA, WSBA #34085
CRISTINA SEPE, WSBA #53609

---

[11] Defendants object to an injunction against the President. But the Court "need not decide whether injunctive relief against the President [is] appropriate" because Plaintiffs' injuries are "likely to be redressed by declaratory relief against the [named Secretaries] alone." *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 588-89 (1952) (holding President Truman did not act within his constitutional power in seizing steel mills and affirming the district court's decision enjoining the Secretary of Commerce from carrying out the order). Here, Plaintiffs pursue injunctive relief against all Defendants except the President.

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:25-CV-00244-LK

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

| | |
|---|---|
| 1 | LUCY WOLF, WSBA #59028 |
| | Assistant Attorneys General |
| 2 | 800 Fifth Avenue, Suite 2000 |
| | Seattle, WA 98104-3188 |
| 3 | (206) 464-7744 |
| | William.McGinty@atg.wa.gov |
| 4 | Cynthia.Alexander@atg.wa.gov |
| | Tera.Heintz@atg.wa.gov |
| 5 | Andrew.Hughes@atg.wa.gov |
| | Neal.Luna@atg.wa.gov |
| 6 | Cristina.Sepe@atg.wa.gov |
| | Lucy.Wolf@atg.wa.gov |
| 7 | *Attorneys for Plaintiff State of Washington* |
| 8 | /s/ *Lauryn K. Fraas* |
| | LAURYN K. FRAAS, WSBA #53238 |
| 9 | COLLEEN MELODY, WSBA #42275 |
| | Assistant Attorneys General |
| 10 | 800 Fifth Avenue, Suite 2000 |
| | Seattle, WA 98104-3188 |
| 11 | (206) 464-7744 |
| | Lauryn.Fraas@atg.wa.gov |
| 12 | Colleen.Melody@atg.wa.gov |
| | *Attorneys for Physician Plaintiffs 1-3* |
| 13 | |
| 14 | KEITH ELLISON |
| | State of Minnesota Attorney General |
| 15 | |
| | /s/ *James W. Canaday* |
| 16 | JAMES W. CANADAY, MSBA #030234X |
| | Deputy Attorney General |
| 17 | 445 Minnesota St., Ste. 600 |
| | St. Paul, Minnesota 55101-2130 |
| 18 | (651) 757-1421 |
| | james.canaday@ag.state.mn.us |
| 19 | *Attorneys for Plaintiff State of Minnesota* |
| 20 | |
| 21 | DAN RAYFIELD |
| | State of Oregon Attorney General |
| 22 | /s/ *Allie M. Boyd* |
| | ALLIE M. BOYD, WSBA #56444 |
| 23 | Senior Assistant Attorney General |
| | Trial Attorney |
| 24 | 1162 Court Street NE |
| | Salem, OR 97301-4096 |
| 25 | (503) 947-4700 |
| | allie.m.boyd@doj.oregon.gov |
| 26 | *Attorneys for Plaintiff State of Oregon* |

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 2:25-CV-00244-LK

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744