The Honorable Lauren King

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al.,<br><br>                Plaintiffs,<br><br>  v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>                Defendant. | NO. 2:25-cv-00244-LK<br><br>SUPPLEMENTAL DECLARATION OF PHYSICIAN PLAINTIFF 1 IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION<br><br>NOTE ON MOTION CALENDAR:<br>February 28, 2025 at 2:00 p.m. |

SUPPL. DECL. OF
PHYSICIAN PLAINTIFF 1 ISO
PLS.' MOT. FOR PRELIM. INJ.
NO. 2:25-cv-00244-LK

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

I, Physician Plaintiff 1, declare as follows:

1. I am a Plaintiff in this action. I bring my claims on behalf of myself and my patients. I offer this declaration in support of Plaintiffs' Motion for Preliminary Injunction. I have personal knowledge of the facts set forth in this declaration and could testify competently to those facts if called as a witness.

2. This declaration incorporates and supplements my declaration dated February 5, 2025, submitted as Dkt. #13.

3. After I heard about the Court's Temporary Restraining Order issued on February 14, 2025, I felt an enormous sense of relief. Since Executive Order 14,187 targeting transgender and gender-diverse adolescents and their doctors was issued, I have worried constantly about whether I would be able to continue providing gender-affirming care to my patients. I have been carrying the heavy weight of knowing that my patients could lose their health care at any moment. I have seen many of my colleagues struggle as their institutions chose to shutter their gender-affirming care programs as a result of the Executive Order.

4. After the TRO was issued, I felt like I could finally breathe again. The same was true for my colleagues in Plaintiff states who I spoke to about the TRO. Hearing about the TRO gave me hope that maybe the federal government would not be able to harm me and my patients in the way they had announced they would.

5. There was a staff meeting on Friday afternoon just a few hours after we learned about the Court's ruling. The fact that the TRO was issued was the first thing we shared at the meeting. There was a general sense of excitement. Some staff members were crying tears of joy. One physician wanted to immediately call two of her patients to let them know about the Court's ruling because those patients had been so distressed about the prospect of lost care when she had seen them in clinic the day prior. Staff members recounted how hard it has been meeting with patients and their families since Executive Order 14,187 was issued. Our patients and their

SUPPL. DECL. OF
PHYSICIAN PLAINTIFF 1 ISO
PLS.' MOT. FOR PRELIM. INJ.
NO. 2:25-cv-00244-LK

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

families have been terrified that Executive Order 14,187 will prevent us from being able to continue providing gender-affirming care.

6. While the Court's temporary Order has provided me with an immediate sense of relief, I am aware that the TRO only lasts for 14 days and that makes me nervous. Without more permanent relief, I am concerned that medical institutions, including the one in which I practice, will stop providing gender-affirming care because they fear they will lose federal funding or put their providers at risk of being investigated or prosecuted.

7. I spoke with a physician colleague in another state last week whose institution forced them to stop providing gender-affirming care because of Executive Order 14,187. That colleague recounted how they were trying to send prescription refills in to all their patients as quickly as possible to help "buy them time," to try to establish care elsewhere. They expressed how scared they were for their patients given the dearth of other adolescent gender-affirming care providers in their state. They described the utter devastation they felt as a physician being told by their institution that they could no longer provide the medical care that their patients and their families both needed and wanted.

8. I am thankful that the institution at which I provide clinical services is still allowing me and my colleagues to continue providing gender-affirming care, but I'm also cognizant that this could quickly change if we aren't able to obtain more stable, long-lasting protection from the Court. Providers of gender-affirming care are terrified right now. Many of us are facing immense pressure from within the institutions we work to discontinue aspects of the clinical care we provide and research we conduct. I know from talking to colleagues in other states and leadership at my own institution that the outcome of this lawsuit is probably the difference-maker in whether my institution, and other institutions like mine in other states, can continue to offer gender-affirming care.

9. For instance, I know of at least three different gender-affirming care providers in Washington State that are looking to me and the clinic I work in to determine whether or not

SUPPL. DECL. OF
PHYSICIAN PLAINTIFF 1 ISO
PLS.' MOT. FOR PRELIM. INJ.
NO. 2:25-cv-00244-LK

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

they continue to provide gender-affirming care. Even though they don't work at my institution, they are looking at what happens at my institution to guide their own next steps. I believe that if my place of work stops providing gender-affirming care, other providers in Washington will do the same.

10. If this happens, it will make it so that only a small number of the most affluent families, who can afford to pay out of pocket at purely private facilities that don't accept federal funding will be able to obtain necessary medical care for their child. Many of the patients I serve won't be able to afford to do this, and I worry the impact on them and their families will be devastating.

11. Physicians who receive federal research grants are particularly vulnerable. I worry about whether my own federal research grants will continue to be funded, or whether I will be able to continue to secure ongoing research funding to support my family.

12. Physicians also need this Court's continued protection to shield them from baseless prosecutions by the federal government for providing gender-affirming care. I worry about having federal agents show up at my home or the clinic where I work because of the medical care that I provide.

13. I even worry about traveling out of state. There are already certain states that I won't travel to because of laws that those states have passed criminalizing gender-affirming care. But I now also have to worry about the federal government coming after me, even in Washington. I'm not sure if I can express how terrifying that is. Over the last two weeks I have had trouble sleeping. I worry about the federal government taking me to jail or separating me from my family. I need this Court's continued protection to keep the federal government from investigating me or my colleagues for providing lawful, medically-indicated gender-affirming care to adolescent patients in Washington State.

SUPPL. DECL. OF
PHYSICIAN PLAINTIFF 1 ISO
PLS.' MOT. FOR PRELIM. INJ.
NO. 2:25-cv-00244-LK

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

I declare under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct.

DATED this 18th day of February 2025 at Seattle, Washington.

_____
PHYSICIAN PLAINTIFF 1, MD

SUPPL. DECL. OF
PHYSICIAN PLAINTIFF 1 ISO
PLS.' MOT. FOR PRELIM. INJ.
NO. 2:25-cv-00244-LK

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744