The Honorable Lauren King

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>    Defendants. | NO. 2:25-cv-00244-LK<br><br>DECLARATION OF KIAN LEGGETT, LICSW, SMMHS |

DECLARATION OF KIAN LEGGETT,
LICSW, SMMHS
NO. 2:25-cv-00244-LK

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

I, KIAN LEGGETT, declare as follows:

1. I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2. I identify as a genderqueer trans person. I use they/them pronouns. I live in Elma, Washington.

3. I am a Licensed Independent Clinical Social Worker (LICSW) and am credentialed as a Sexual Minority Mental Health Specialist (SMMHS), as well as a Child Mental Health Specialist (CMHS). I earned a bachelor's degree in psychology in 2009, and a Master of Social Work in 2014 from the University of Washington. In addition to providing mental health counseling, I provide clinical supervision to associate social workers and other mental health providers.

4. I have chosen to submit this declaration using my legal name despite my fear that the Federal Government could retaliate against me, my therapy practice, my colleagues, or clients for providing gender-affirming care or for the views I express here. I also fear that individuals emboldened by the anti-trans rhetoric and recent actions of the Federal Government could target me for speaking out in this litigation or for providing gender-affirming care.

5. I have been a social worker since 2014, and a mental health therapist since 2016. From 2014-2016, I worked as a case manager in a transitional living program for unhoused youth ages 18-24. From 2016-2019 I worked as a child and family therapist for a large community mental health agency. My clients ranged in age from 7-24, plus any involved parents and guardians. I've worked as a mental health therapist specifically in transitional housing programs, shelters, public schools, and on the main campus of my agency at the time. All my clients at that time were low-income Medicaid recipients, and most of my clients were trans or queer. In 2018, I started my private practice, where I served clients and their families aged 12 and older. Currently, I see clients aged 18 and older. I serve people of all identities, but most clients I see

DECLARATION OF KIAN LEGGETT, LICSW, SMMHS
NO. 2:25-cv-00244-LK

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

are LGBTQ+. Throughout my career, I estimate that I have served over 100 transgender clients under 19 years old. Since 2018, I have served 45 trans clients under 19 years old.

6. My personal experience being transgender informs and influences my work. I was designated female at birth and grew up not having the words or knowledge to describe how my body didn't feel right. At 13, I came out as bisexual to my parents. I wasn't around other people who were gender variant at the time. I would hear "everybody's uncomfortable going through puberty" and "all girls have issues with self-esteem." I thought that there was something fundamentally different about me.

7. Everyone's story is different. For me, it felt like that feeling when you wear a piece of clothing that just doesn't fit. I didn't know what was wrong, or exactly what I was feeling, just that something was not right. My parents tried to support me in expressing my identity, but they also didn't have the words or knowledge to help me figure it out. They just knew that I was deeply unhappy. The older I got, the lonelier and more out of place I felt in the world and in my body. I began self-medicating with drugs and alcohol when I was 15.

8. Ten years later, in the middle of grad school and with the help of friends and family, I got sober and came out as trans. I started using they/them pronouns and I analogize it to being like finally realizing that I've been wearing pants three sizes too small and then to be able to swap them out just felt so much more comfortable. I felt relief at being able to identify what was wrong. It was life-changing knowing that I had the option—to stop trying to force myself into things that just didn't fit.

9. I began to transition medically in 2014. I was 26 when I started Hormone Replacement Therapy (HRT).

10. The trans community has been historically mistreated and not supported by the healthcare system. When people talk about restricting access to gender-affirming care, the fact is, our community will figure out a way to get the treatment we need. We have experience dealing with society's barriers. That also means we're at a much greater risk for preventable illness,

DECLARATION OF KIAN LEGGETT, LICSW, SMMHS
NO. 2:25-cv-00244-LK

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1  injury, and death. When you have to share an injectable medication, you risk blood born illness. When your hormone levels aren't being regularly tested by a doctor you risk over or underdosing medication. Banning access to safe gender care just means people will be forced into unsafe gender care.

11. Being trans is not a disease or a diagnosis. If a trans client is 18 or older and they tell me they want gender-affirming medical care, the only reason they need to go through so many extra steps is because they are transgender. A cisgender person seeking these same medical interventions faces no such hurdles. I have never in my life been asked to do a mental health evaluation for a cisgender person seeking these procedures. The only reason there are barriers to these medical interventions, whether that be puberty blockers, hormones, or surgery—interventions that are routinely provided to cisgender individuals—is because we are part of a marginalized group in a world hostile to our existence.

12. I am an Informed Consent for Access to Trans Health Care (ICATH) Provider. I trust my clients when they tell me what they need for themselves and their bodies, but make sure that they are educated and informed.

13. I follow the World Professional Association for Transgender Health (WPATH) Standards of Care in my practice. I use it every time I talk to clients, insurance companies, other providers, community members, and families about gender-affirming care. Additionally, I use the following research-based resource materials regularly with clients: Trans Student Educational Resources, https://transstudent.org/graphics/youthsupport/ (last accessed Feb. 17, 2025); Trans Bodies: A Resource Guide for the Transgender Community, http://transbodies.com/ (last accessed Feb. 17, 2025).

14. Nine times out of ten, when I have provided gender care to a minor, the parent/guardian has reached out to me first on behalf of their child. Minors are typically referred to me by either their social worker (if they're working with one) and/or their physician. In these cases, the family already has an established and ongoing relationship with their providers. When

DECLARATION OF KIAN LEGGETT, LICSW, SMMHS
NO. 2:25-cv-00244-LK

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

a minor reaches out to me first, my next step is to determine who holds legal medical decision-making power and obtain consent from all adults and the minor in question to move forward with a readiness interview.

15. I always meet with all parents/guardians any time I see clients under 18 for gender care. Minors must have parental consent for gender-affirming medical care. I've also had clients 18 and 19 years old who chose to have their parents present. The meetings are face-to-face, and part of my job is to make sure that both the minor and their caregivers understand what the medical intervention they are requesting is, what their hopes and expectations are for the outcome, and to identify and problem solve any future barriers. I offer resources, make referrals, and coordinate care. We talk about potential short and long-term consequences of medical intervention, possible risks and benefits. I always want robust care for my clients and their families,.

16. The difference that getting on puberty blockers alone can make in someone's mental health cannot be overstated. Blockers just slow down puberty and give minors and their families time to make a medically (and emotionally) informed plan. It buys time-if we can prevent lasting harm to someone who is 15, 16, 17—it's crisis management. The difference treatment can make is night and day. Affirming gender care is showing someone *I see you and believe that you understand your body*. That alone can be transforming. It's having an adult say they care about you. That they care about your existence, safety, and wellbeing.

17. The conversation is much more intense with folks 18 and under. I ask clients and their families what do you think gender-affirming medical care is going to fix? What do you think it won't fix? If they're describing a situation that may not be solely addressed by receiving gender-affirming medical care, as an example, I'd say we need to talk about your depression. We need to talk about your bullying. We do more thorough evaluations. I ask these questions because medical transitioning is not a cure-all. It does not cure systemic violence. It does not cure transphobia. It does not cure Executive Orders. It will not fix symptoms associated with

DECLARATION OF KIAN LEGGETT, LICSW, SMMHS
NO. 2:25-cv-00244-LK

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

systemic oppression. But it can cure the dysphoria—the bad (and sometimes deadly) fitting pair of pants.

18. Gender-affirming care is literally lifesaving. It prevents trauma and harm. It saves lives. Banning gender care in any form forces healthcare providers to act against our own clinical judgement and violate our professional code of ethics. It forces us to knowingly withhold lifesaving care and puts us and our clients at direct risk of blatantly preventable harm. Cisgender minors go through high-risk medical procedures to save their lives all the time. ANY surgical procedure has a risk of harm. ANY surgical procedure has a risk of regret. In life saving circumstances, for cisgender minors, we allow doctors to perform these procedures because the chance of preserving life is more important than the risk of complications or regret.

19. In my more than nine years working with trans youth and adults, I have never heard anyone express regret for having received gender-affirming care. It's been the opposite in fact-regret and grief for not having received care sooner.

20. I am aware of the Executive Order putting conditions on gender-affirming care for youth. I would be very concerned if the restrictions in this executive order were to affect medical providers in Washington. Almost 50% of my patients are on Medicaid. The Executive Order not only threatens my clients' well-being, but my practice. If my clients can no longer access services, my practice is jeopardized. I'm a single person business and passionate about serving our community. We are already under-paid and underserved.

21. My colleagues and I worry for our clients, who are also very worried. I have already experienced losing young trans clients to suicide, and I fear that the rate of self-harm and suicide will increase. I have already seen an increase in suicidal ideation and self-harm among my clients as a direct result of this Executive Order. The stakes are too high to take away gender-affirming medical care for persons under 19.

DECLARATION OF KIAN LEGGETT, LICSW, SMMHS
NO. 2:25-cv-00244-LK

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

22. By banning gender care, this administration is sending the message that it is more ethical, and preferable, to allow a trans child to die specifically because they are trans. They say this ban is to protect children. This ban will kill them.

I declare under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct.

DATED this __18th__ day of February 2025.

_____
KIAN LEGGETT, LICSW, SMMHS

DECLARATION OF KIAN LEGGETT, LICSW, SMMHS
NO. 2:25-cv-00244-LK

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744