The Honorable Lauren King

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

STATE OF WASHINGTON, et al.,

               Plaintiffs,

   v.

DONALD J. TRUMP, in his official capacity as President of the United States, et al.,

               Defendant.

NO. 2:25-cv-00244-LK

DECLARATION OF CATHERINE DOE, M.D. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

NOTE ON MOTION CALENDAR: February 28, 2025 at 2:00 p.m.

ATTORNEY GENERAL OF COLORADO
1300 Broadway, 10th Floor
Denver, Colorado 80203

1    I, Catherine Doe, M.D. declare as follows:

2    1.    I am over the age of 18, competent to testify as to the matters herein, and make

3    this declaration based on my personal knowledge.

4    2.    I am a medical doctor affiliated with the University of Colorado School of

5    Medicine who provides gender affirming care to patients under the age of nineteen. I am making

6    this attestation under the pseudonym "Catherine Doe" because healthcare professionals who

7    provide this care have been threatened professionally and personally by those who oppose it.  I

8    fear for my safety and the safety of my family if identified in this attestation by my true name.

9    A true signature will be maintained in the Office of the Attorney General for the State of

10   Colorado. I have been in clinical practice for over a decade.  My areas of expertise include

11   general pediatrics, adolescent and young adult health, reproductive health care, and LGBTQ+

12   specialized care.  I am published in my fields of expertise and am recognized as an expert in

13   gender affirming care.

14   3.    I provide services in an interdisciplinary, family-centered model of care that

15   supports transgender and gender-diverse (TGD) children and adolescents. This model is a best-

16   practice standard of care grounded in scientific evidence. Research shows that access to

17   affirming care has positive effects on the mental and physical wellbeing of TGD patients and

18   their families. A core tenet of my practice is that I recognize that I am not the only expert in the

19   room when speaking with a patient and their family.  My role is to provide medically accurate

20   information in a way that patients and families can understand. I never enter a patient's room

21   with any agenda, other than to address the priorities that my patient and their family identify as

22   most important to them. I provide this information objectively, so that families can make the

23   most informed decisions about their child's health. Each family serves as the expert on what is

24   best for their child, and on the family's unique values. All families deserve the right to seek and

25   receive the expert medical care that their child needs to thrive; the families of transgender youth

26   are no different.

4.    A transgender child or adolescent has a sex assigned at birth that does not align with their gender identity.  The International Statistical Classification of Diseases and Related Health Problems (ICD-11) recognizes gender incongruence as "a marked and persistent incongruence between an individual's experienced gender and the assigned sex." Some people with gender incongruence also experience gender dysphoria, which refers to clinically significant distress or impairment that results from an incongruence between one's sex assigned at birth and one's gender identity.  Peer reviewed clinical practice guidelines support providing affirming care to children and adolescents who meet criteria for gender incongruence and/or gender dysphoria. Gender-affirming care can include any single or combination of social, psychological, behavioral or medical interventions designed to support and affirm an individual's gender identity.

5.    Transgender people experience high levels of stigmatization and victimization, contributing to negative self-image and increased risk for adverse mental health outcomes.  Rates of depression and anxiety symptoms are higher among gender diverse youth, as are rates of suicidal ideation and self-reported suicide attempt, compared to cisgender peers.   These inequities are not present because of gender diversity itself. Rather, transgender children and adolescents experience significant rates of bullying and discrimination, which impact their access to protective factors such as safety at school, peer connections, and even the ability to access preventive health services.

6.    Fortunately, research has identified that access to gender-affirming care and parental support can significantly reduce the risks for negative health outcomes in transgender youth.  Studies have shown that transgender adolescents show poorer psychological well-being before treatment but show similar or better psychological functioning compared with cisgender peers, when they have access to affirming care.

DECLARATION OF CATHERINE DOE

7.      For these reasons and others, the American Psychiatric Association supports access to affirming and supportive treatment for trans and gender diverse youth and their families, including appropriate mental health services, and when indicated, puberty suppression and medical transition support. The APA opposes all legislative and other governmental attempts to limit access to these services for trans and gender diverse youth, or to sanction or criminalize the actions of physicians and other clinicians who provide them.

8.      As a healthcare provider who values the importance of data and research, I rigorously follow established clinical care guidelines. There are no medical interventions recommended for pre-pubertal children; my pre-pubertal patients and their families receive behavioral health and socially supportive services. When children begin experiencing distressing pubertal changes that do not align with their identity, families may seek puberty delaying treatments. I provide detailed information about the known risks, benefits and side effects of puberty suppressing medications, which are reversible interventions. Puberty delaying medications offer the only opportunity for neutral time, to allow patients who have entered puberty and their families, to receive support without the fear of permanent secondary sex characteristics that would otherwise begin to form from endogenous puberty.

9.      For post-pubertal adolescents who seek gender affirming hormone therapy, I require that my patients undergo a detailed readiness assessment to confirm that they have the maturity and capacity to understand the risks, benefits and side effects of the treatment they seek. Parents, as legal guardians, are heavily involved at every step of care, including the readiness process. Once they feel they have enough information to make an informed decision, parents can decide to provide informed consent for their adolescent to access these medical interventions.

DECLARATION OF CATHERINE DOE

10.     Medical gender-affirming care requires monitoring and surveillance over time. Legal guardians remain trusted partners in the ongoing care of their children and adolescents, well beyond the initiation of treatment.  To suggest that gender affirming care decisions are made by parents capriciously, without thoughtful time, consideration or complete investment in the wellbeing of their children, is to truly not understand the model of care that is followed by many doctors, including by me.

11.     The overwhelming majority of patients who receive gender affirming care as adolescents choose to continue their care in adulthood. In one study, 98% of patients who began gender affirming medical care in adolescence continued the treatment into adulthood. Several studies estimate the rate of decisional regret for medical transition to be 1-2% among adolescents and young adults. This is significantly lower than rates of regret for other routinely sought healthcare services.

12.     Gender affirming care, including medical interventions for those whose families have been appropriately evaluated and counseled, is safe, effective and lifesaving. Children and adolescents who access this care with the full support of their parents are permitted to do what all pediatricians hope for their patients: they grow up into healthy young adults. My patients who have been able to access the full spectrum of affirming care enjoy close friendships, they excel academically, and they share with me their plans for college or their dream job. The parents of my patients have tearfully said that they never could have imagined how happy their child could be and are so grateful that they live in a state that protects their family's right to access this care.

13.     Before the January 28, 2025 Executive Order, our model of care was holistic and comprehensive. It included behavioral health assessment, connection to ongoing mental health therapies, puberty delaying medications, and gender affirming hormone therapies. The Executive Order threatens our ability to serve patients funded by Medicaid, and my institution's ability to receive federal research funds (not just related to gender affirming care, but for medical research spanning the pediatric and adult populations). In response to those threats, we had to

1    alter our model of care to only provide patients with behavioral and supportive care, without the

2    possibility of receiving puberty delaying medications or gender affirming hormone therapies

3    going forward. Patients who have been treated safely with puberty delaying medications and

4    gender affirming hormone therapy for several years, now face the possibility that they will have

5    to stop their treatments when their previously prescribed refills expire. This has resulted in fear

6    and escalating anxiety and depressive symptoms among youth and their parents.

7         14.     The Executive Order, by its terms, causes direct harm to transgender children,

8    adolescents and their families. This Order marginalizes and dehumanizes a population that is

9    already vulnerable to discrimination, bullying and harassment. It denies the rights of parents and

10   youth, in consultation with their care team, to make informed decisions about their healthcare.

11   Denying access to medical interventions that are known to be safe and effective threatens the

12   ability of adolescents and young adults to thrive socially and academically. Their marginalization

13   will exacerbate dysphoria and mood symptoms, and the unavailability of care ultimately may

14   cause some previously stable transgender youth to attempt suicide.

15        15.     By preventing or interrupting the ability of adolescent patients to initiate or

16   continue puberty delaying medications and gender affirming hormone therapies, the Executive

17   Order causes immense harm to the health of my patients. As described above, these patients

18   already face discrimination, harassment, and bullying. Forcing them to stop their successful

19   treatments until they reach 19 years of age is cruel. In the time they are being denied access to

20   treatment, some effects of their treatment will revert or stall, which may lead to the need for

21   expensive and invasive medical procedures in the future. To halt this care is to needlessly force

22   these youth and their families through the agony of bodily changes that do not align with their

23   identity.

24

25

26

DECLARATION OF CATHERINE DOE

16.     Because of the severity of the harm posed to these patients if they are denied access to the evidence-based care they deserve by expert healthcare providers, they may seek out other means of obtaining these medications, such as purchasing them from unregulated sources. Obtaining these medications outside of the care of an integrated, multidisciplinary setting that supports their holistic experience is unsafe, and certainly not what is best for the health of children and adolescents.

17.     Having to discuss with patients and their families that we will not be able to continue prescribing their medically necessary treatments, solely in response to this Executive Order, has caused healthcare providers like me great moral harm. I chose to dedicate my professional life to the wellbeing of children and their families. Parents trust pediatric experts like me with the health of their children, and I take that responsibility incredibly seriously. I have committed to caring for a population of patients whose needs can be met in safe, effective and evidence-informed ways. The experiences of my patients sharply contrast with the way that this care has been mischaracterized and publicly attacked, as it is described in the Executive Order. The Executive Orders undermines medical knowledge, data and science, and seeks to punish the healthcare institutions and specialists who support evidence-based care.

18.     If the Executive Order is determined to be unlawful or unconstitutional, my colleagues and I hope to return to providing integrated, family-centered care that includes the full spectrum of care. After appropriate counseling and assessment, and when medically appropriate, we would like to be able to offer puberty delaying medications and gender affirming hormone therapies. We are committed to serving the transgender and gender diverse patient population with thoughtful, evidence based, and individualized care.

ATTORNEY GENERAL OF COLORADO
1300 Broadway, 10th Floor
Denver, Colorado 80203

19.    We know that the care we provide is essential and has positively changed the lives of our patients and their families. For the safety of patients, their families, and the healthcare providers who dedicate their lives every day to the care of children and adolescents, I hope that we can return to our best-practice model of care.

I declare under penalty of perjury under the laws of the State of Colorado and the United States of America that the foregoing is true and correct.


_____
CATHERINE DOE, M.D.

State of Colorado      )
                       ) ss
County of Adams        )

Signed and sworn before me on this 17th day of February 2025 by Catherine Doe, M.D.

WITNESS MY HAND AND OFFICIAL SEAL

_____
Notary Public

My commission expires: 07·15·2027

DONNA PEIFFER
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20144027008
MY COMMISSION EXPIRES JULY 15, 2027

DECLARATION OF CATHERINE DOE