The Honorable Lauren J. King

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

STATE OF WASHINGTON, et al.,

                Plaintiffs,

      v.

DONALD TRUMP, in his official capacity as
President of the United States, et al.,

                Defendants.

No. 2:25-cv-00244-LJK

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION**

Noted For Consideration:
February 28, 2025

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION MOTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

BACKGROUND ..................................................................................................................... 4

    I.    The Executive Orders ............................................................................................ 4

    II.    This Lawsuit ......................................................................................................... 6

STANDARD OF REVIEW ....................................................................................................... 6

ARGUMENT .......................................................................................................................... 7

    I.    Plaintiffs Do Not Demonstrate Likelihood Of Success on the Merits ...................... 7

        A.    Plaintiffs' claims fail at the threshold.......................................................... 7

        B.    Plaintiffs are unlikely to succeed on their separation-of-powers claim. ............ 11

        C.    Plaintiffs are unlikely to succeed on their Equal Protection claim..................... 14

        D.    Plaintiffs are unlikely to succeed in challenging Section 8(a) of the
            Protecting Children EO. ............................................................................ 20

        E.    The EOs are not unconstitutionally vague...................................................... 23

    II.    The Remaining Factors Weigh Against Plaintiffs' Requested Relief ...................... 24

    III.    Any Preliminary Injunction Should be Limited. ....................................................... 25

    IV.    Any Injunctive Relief Should be Accompanied By a Bond.................................... 27

    V.    Any Injunctive Relief Should be Stayed. ................................................................ 27

CONCLUSION ...................................................................................................................... 28

DEFENDANTS' OPPOSITION TO PLAINTIFFS'               **U.S. DEPARTMENT OF JUSTICE**
MOTION FOR PRELIMINARY INJUNCTION            **Civil Division, Federal Programs Branch**
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK         **1100 L St. NW**
                                                      **Washington, DC 20530**
                                                       **Tel: 202-305-0845**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **<u>INTRODUCTION</u>**

President Trump issued two Executive Orders (EOs) directing agencies to take steps, as permitted by law, to place conditions on certain federal grant funding in accordance with the Administration's policy goals. EO 14,168, 90 FR 8615 (Jan. 20, 2025), entitled *Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* (Defending Women EO), sets forth a policy "to recognize two sexes, male and female." *Id.* § 2. In relevant part, "each agency shall assess grant conditions and grantee preferences and ensure grant funds do not promote gender ideology." *Id.* § 3(g).

Meanwhile, EO 14,187, 90 FR 8771, *Protecting Children from Chemical and Surgical Mutilation* (Protecting Children EO), sets forth a policy that the federal government will not "fund, sponsor, promote, assist, or support the so-called 'transition' of a child from one sex to another." *Id.* § 1. It directs the heads of agencies that provide research or educational grants to medical institutions to, "consistent with applicable law and in coordination with the Director of the Office of Management and Budget, immediately take appropriate steps to ensure that institutions receiving Federal research or education grants end the chemical and surgical mutilation of children." *Id.* § 4. The Protecting Children EO also instructs the Attorney General to "review . . . enforcement of section 116 of title 18, United States Code, and prioritize enforcement of protections against female genital mutilation" (FGM). *Id.* § 8(a). Section 116 criminalizes the knowing performance or facilitation of FGM on another person who is under 18 years of age. 18 U.S.C. § 116(a).

Both orders make clear that they "shall be implemented consistent with applicable law," EO 14,168 § 8(b); EO 14,187 § 11(b), and "shall not be construed to . . . affect . . . the authority

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

granted by law to an executive department or agency, or the head thereof," EO 14,168 § 8(a)(i); EO 14,187 § 11(a)(1).

Plaintiffs, four states and three physicians, claim the EOs violate the separation of powers, the Fifth Amendment's equal-protection guarantee, the Tenth Amendment, and the Fifth Amendment's due process protections against impermissibly vague laws. Plaintiffs seek the extraordinary relief of a preliminary injunction (PI) enjoining the agency defendants from enforcing or implementing the EOs' challenged provisions against the four states as well as all healthcare providers in the four states. Pls.' Proposed Order at 5, ECF No. 169-1. But Plaintiffs fail to satisfy any of the requirements for the relief they seek.

Plaintiffs' claims fail at the threshold for multiple reasons. They identify no cause of action against the defendant agencies, they cannot enjoin the President, and Article II's plain authority for the President to direct his subordinates to take appropriate steps in furtherance of policy forecloses their claims. Moreover, their claims are unripe. The defendant agencies have not revoked or withheld any particular grants relied upon by Plaintiffs. Which grants the agencies can condition consistent with applicable law as directed by the EOs is currently uncertain, and there is no final agency action for the Court to evaluate. Finally no *ultra vires* relief is available.

On the merits, Plaintiffs are unlikely to succeed on any of their claims. First, the EOs do not violate the separation of powers. The President's authority to direct subordinate agencies to implement his agenda, subject to those agencies' own statutory authorities, is well-established. By their terms, the EOs require any funding conditions to be implemented consistent with applicable law, a requirement that encompasses the executive's delegated authority to

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

administer grants, including the procedural and substantive requirements applicable to individual grants that are set forth by statute and regulation, as well as the Constitution.

Second, the EOs do not violate the Fifth Amendment's equal-protection guarantee. The framework for scrutinizing governmental action under equal-protection doctrine has little application here, where there is no agency action to scrutinize. To the extent the Ninth Circuit's precedents require this Court to find that the EOs classify based on sex and trans-identifying status, those decisions were incorrect and should be overruled. And Plaintiffs' equal-protection claim fails regardless because the EOs substantially relate to the important governmental interest of safeguarding children from potentially dangerous, ineffective, and unproven treatments. As a result, the EOs satisfy both intermediate and rational basis scrutiny.

Third, Plaintiffs cannot succeed in challenging Section 8(a) of the Protecting Children EO, which addresses 18 U.S.C. § 116. To obtain a conviction under 18 U.S.C. § 116, the government must prove one of the jurisdictional elements in the statute to establish that the charged conduct has a sufficient nexus to interstate or foreign commerce. This jurisdictional element places the statute squarely within Congress' Commerce Clause power—and removes it from the powers reserved to the states under the Tenth Amendment. Moreover, 18 U.S.C. § 116 itself defines "female genital mutilation" for purposes of the conduct criminalized in that statute, and the Protecting Children EO does not purport to define or redefine that phrase.

Finally, Plaintiffs have not established a likelihood of success on their void-for-vagueness claim. The Defending Women EO's definitions of "male" and "female" are ascertainable on their face and are further clarified by recent agency guidance.

Plaintiffs also fail to satisfy the remaining elements for a PI. For these reasons, as explained more fully below, Plaintiffs' motion should be denied. If the Court nonetheless enters

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

a PI, it should be limited as explained below, accompanied by a bond, and stayed pending any further review.

## BACKGROUND

### I.    THE EXECUTIVE ORDERS

On January 20, 2025, President Trump signed the Defending Women EO. It states that "the Executive Branch will enforce all sex-protective laws to promote" the policy "to recognize two sexes, male and female," which "are not changeable." EO 14,168 § 2. In relevant part, the EO directs agencies to "take all necessary steps, as permitted by law, to end the Federal funding of gender ideology," *id.* § 3(e), including by "assess[ing] grant conditions and grantee preferences and ensur[ing] grant funds do not promote gender ideology," *id.* § 3(g). The EO makes clear that "[n]othing in this order shall be construed to impair or otherwise affect . . . the authority granted by law to an executive department or agency," *id.* § 8(a), and that the "order shall be implemented consistent with applicable law," *id.* § 8(b).

On January 28, 2025, President Trump signed the Protecting Children EO. In Section 4, it directs the heads of departments and agencies "that provide[] research or educational grants to medical institutions" to, "consistent with applicable law and in coordination with the Director of the Office of Management and Budget, immediately take appropriate steps to ensure that institutions receiving Federal research or education grants end the chemical and surgical mutilation of children." EO 14,187 § 4.

The Protecting Children EO does not restrict care but rather announces a policy on what sorts of education and research the Executive Branch has chosen to subsidize, consistent with applicable law. The EO also does not address medical institutions or practices that do not receive federal research or educational grants. Like the Defending Women EO, the Protecting

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

Children EO makes clear that "[n]othing in this order shall be construed to impair or otherwise affect . . . the authority granted by law to an executive department or agency," *id.* § 11(a)(i), and that the "order shall be implemented consistent with applicable law," *id.* § 11(b). Further, the Protecting Children EO contemplates that implementation of its directives will take time: in Section 9, it instructs agencies to submit a progress report within 60 days of the order, "detailing progress in implementing this order and a timeline for future action." EO 14,187 § 9.

A majority of states have gone further by enacting laws and policies to restrict gender-affirming care for minors. *See* KFF, *Policy Tracker: Youth Access to Gender Affirming Care and State Policy Restrictions*, https://perma.cc/M9Y3-D4M2. *See* KFF, *Policy Tracker: Youth Access to Gender Affirming Care and State Policy Restrictions*, https://perma.cc/M9Y3-D4M2. Other countries have also recently adopted similar restrictions. Joshua P. Cohen, *Increasing Number Of European Nations Adopt A More Cautious Approach To Gender-Affirming Care Among Minors*, Forbes, June 14, 2023, https://perma.cc/9VM9-W4S4.

Section 8 of the Protecting Children EO separately instructs the Attorney General to "review . . . enforcement of section 116 of title 18, United States Code, and prioritize enforcement of protections against female genital mutilation." *Id.* § 8(a). Section 116 criminalizes the knowing performance or facilitation of FGM on another person who is under 18 years of age. 18 U.S.C. § 116(a). The statute defines "female genital mutilation" as "any procedure performed for non-medical reasons that involves partial or total removal of, or other injury to, the external female genitalia" and provides examples, such as "a clitoridectomy," and "the partial or total removal . . . of the labia minora or the labia majora." *Id.* § 116(e). To be actionable, the statute explicitly requires that the conduct have a nexus to interstate or foreign commerce. *Id.* § 116(d). The statute excludes liability for "[a] surgical operation" that is

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

"necessary to the health of the person on whom it is performed, and is performed by a person licensed in the place of its performance as a medical practitioner." *Id.* § 116(b)(1).

## II.    THIS LAWSUIT

On February 4, 2025, Plaintiffs filed this lawsuit. Compl., ECF No. 1. On February 19, 2025, Plaintiffs amended their complaint. Am. Compl., ECF No 164. Plaintiffs consist of four states—Washington, Oregon, Minnesota, and Colorado—and three physicians. Am. Compl. ¶¶ 21–29. They sued President Trump, fifteen federal agencies, and the heads of those agencies. Am. Compl. ¶¶ 33–64. On February 4, 2025, Plaintiffs moved for a temporary restraining order (TRO). Pls.' Mot. TRO, ECF No. 11. On February 14, this Court granted the motion. TRO, ECF No. 158; *see also* TRO Op., ECF No. 161. Thereafter, Plaintiffs amended their complaint and filed a motion for a PI. Pls.' Mot. for Prelim. Inj., ECF No. 69.

## STANDARD OF REVIEW

A PI is "an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008). A party seeking such relief "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

Plaintiffs raise only facial challenges to the EOs, which are "the most difficult challenge[s] to mount successfully." *United States v. Salerno,* 481 U.S. 739, 745 (1987). To demonstrate that they are likely to prevail on the merits, Plaintiffs bear the "heavy burden" of "establish[ing] that no set of circumstances exist under which the [EOs] would be valid." *Id.*

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

## ARGUMENT

I.    **PLAINTIFFS DO NOT DEMONSTRATE LIKELIHOOD OF SUCCESS ON THE MERITS**

    A.    **Plaintiffs' claims fail at the threshold.**

Multiple threshold defects plague Plaintiffs' claims. They identify no cause of action or final agency action that allows them to proceed against the agency defendants. Similarly, their claims are unripe because the agency defendants have not withheld or denied specific grants on the basis of the EOs, leaving material questions unanswered about the statutory and regulatory requirements for any grant funding at issue and the scope of funding potentially at stake. Their attempt to prevent the Executive Branch from even considering a Presidential directive runs afoul of Article II. And Plaintiffs fail to demonstrate they are entitled to seek ultra vires relief.

***No cause of action against agencies.*** First, Plaintiffs cannot bring claims against the agency defendants.[1] Plaintiffs do not invoke the Administrative Procedure Act (APA) or any other statute providing for a cause of action against an agency. *See, e.g.*, 5 U.S.C. § 706(2)(A)–(C) (permitting courts to "set aside agency action . . . otherwise not in accordance with law; contrary to constitutional right. . . [or] in excess of statutory jurisdiction"). In any event, invoking the APA would be futile. The APA authorizes challenges to only final agency action, which "marks the consummation of the agency's decisionmaking process" and "from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 156 (1997). Plaintiffs have not shown that the agency defendants have taken any actions that determined any rights or obligations or otherwise caused legal consequences. Indeed, Plaintiffs' claimed harm is not

---

[1] Plaintiffs also cannot obtain relief against the President for issuing the EOs. Courts have no authority to second-guess "discretion[ary]" acts taken by the President "in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. 475, 501 (1866); *Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *13 (D.C. Cir. Feb. 15, 2025) ("[T]he President enjoys absolute immunity from injunctive actions.").

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

based on any action taken by the agency defendants, but on Plaintiffs' fear that the agency defendants might take some action in the future to revoke their funding or enforce a criminal statute against them. *See* Pls.' Mem. at 8.

**Plaintiffs' claims are unripe.** Plaintiffs' claims against the agency defendants are not ripe. The ripeness doctrine "require[s] courts to avoid taking premature judicial action, thereby preventing them from becoming entangled in abstract disagreements." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (citation omitted)). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted).

Here, no agency defendant has revoked or withheld any particular grants as a result of the EOs. Assuming an agency can do so for a particular grant, it must generally follow certain procedures. *See, e.g.*, 2 CFR § 200.340 (setting forth procedures for terminating federal awards). Moreover, when an agency takes steps to implement the EOs' contemplated grant conditions, it must take only appropriate actions "as permitted by law." EO 14168 § 3(e); *see also* EO 14,187 § 4.

The Court previously concluded that HRSA's rescinded email to grant recipients concretized Plaintiffs' harm. TRO Op. at 8. But that generic email does not constitute final agency action: HRSA did not terminate any funding or even identify any specific grants at imminent risk. *See* ECF No. 16-1; *Nev. v. Dep't of Energy*, 457 F.3d 78, 85 (D.C. Cir. 2006). Nor can the email be considered the final agency response contemplated by the Protecting Children EO. By asking agencies for a progress report and a timeline for future action within 60 days, the EO anticipates final implementation to require more time. EO 14,187 § 9.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

Moreover, as discussed in greater detail in Part I.B, Congress in some circumstances provides the Executive Branch with discretion to determine and amend grant conditions. This Court thus cannot evaluate whether, in imposing a new or amended condition, an agency has lawfully exercised the discretion afforded to it without knowing the specific condition that has been imposed and the source of agency's authority to impose it. And given the latitude that Congress affords agencies in setting grant conditions in many circumstances, this Court may not assume that there are no situations in which an agency could amend a grant as contemplated by the EOs.

Because the agency defendants have not withheld specific grants on the basis of the EOs, it is not clear what law the Court would need to apply or what funding would be at stake. The Court cannot determine in the abstract whether the requirements for any particular grant program provide the agency with discretion to condition funding on these terms. Absent this essential context, it would be premature to decide the issues now. *See Amalgamated Transit Union Int'l v. U.S. Dep't of Lab.*, 2024 WL 3565264, at *1 (9th Cir. July 29, 2024) ("judicial resolution of the question presented here should await a concrete dispute about a particular denial of a grant application" (quotation omitted)); *Donovan v. Vance*, 576 F. Supp. 3d 816, 824 (E.D. Wash. 2021), *aff'd in part, appeal dismissed in part and remanded,* 70 F.4th 1167 (9th Cir. 2023). If and when an agency takes final agency action against a medical institution under the EOs, an injured party may bring suit then, and the Court can decide the matter on the facts presented.

***Plaintiffs' claims cannot overcome Article II.*** As explained, the EOs charge certain components of the Executive Branch with taking appropriate steps to implement a policy directive by the President, in a manner consistent with applicable law. Plaintiffs' PI seeks to

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

pretermit that process, barring any defendant from "implementing and enforcing" the directive. Pls.' Proposed Order at 5. That sort of order—cutting off at the jump the ability of the Executive Branch to even pursue a general course of action—would intrude on a separate branch of government, in conflict with Article II.

The President has the constitutional authority to direct his subordinates to pursue a general policy goal, consistent with all applicable law. *See* Art. II § 1 ("The executive Power shall be vested in a President of the United States of America."); *id.* § 2 ("[h]e may require the Opinion . . . of the principal Officer in each of the executive Departments, upon any Subject relating to the Duties of their respective Offices."). Federal courts cannot superintend that policymaking—let alone proscribe it. *See Trump v. U.S.*, 603 U.S. 593, 608–09 (2024).

***Plaintiffs lack an equitable cause of action.*** All of Plaintiffs' claims depend on this Court's inherent equitable powers to provide a cause of action, remedying what they see as *ultra vires* executive conduct in violation of some binding source of law. But the *ultra vires* doctrine is "extremely limited" in "scope." *Griffith v. Fed. Labor Rel. Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988). *Ultra vires* relief must run against a particular governmental action that "violates some specific command of a statute" or other source of binding law. *Fed. Express Corp. v. U.S. Dep't of Commerce*, 39 F.4th 756, 764 (D.C. Cir. 2022). But again, Plaintiffs identify no specific source of authority that prevents a presidential order directing subordinates to consider and pursue as appropriate (and as consistent with law) a given policy. Plaintiffs' arguments concern hypothetical downstream actions that may or may not result from the EOs; but *ultra vires* relief is about stopping actual concrete action, not pretermitting hypothetical future harm.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

**B.      Plaintiffs are unlikely to succeed on their separation-of-powers claim.**

Plaintiffs' separation-of-powers claim is unlikely to succeed because Plaintiffs rely on characterizations of the EOs that are simply inconsistent with their terms. The EOs do not purport to withhold all federal funding if an institution provides the treatments referenced in the Protecting Children EO. Instead, the EOs instruct agencies to implement the President's policy to the extent permitted by applicable law. The Executive often has discretion to impose other conditions or allocate fixed grants based on priorities.

The Defending Women EO explicitly states that any withholding of federal funds must only be implemented "as permitted by law." EO 14168 § 3(e). The Protecting Children EO likewise requires agencies to act "consistent with applicable law" to take appropriate steps to ensure institutions receiving federal research and educational grants end treatments referenced in the EO. EO 14,187 § 4. Further, both EOs include a "General Provision[]," stating that "[n]othing in this order shall be construed to impair or otherwise affect . . . the authority granted by law to an executive department or agency" and that "[t]his order shall be implemented consistent with applicable law." EO 14,168 § 8(a), (b); EO 14,187 § 11(a), (b).

Definitionally, directing executive agencies to act *consistent with applicable law* cannot be interpreted as an order to violate the law. It is plainly lawful for the President to instruct agencies to act within their own statutory authorities to implement the President's priorities consistent with applicable law. *See, e.g.*, *Sherley v. Sebelius*, 689 F.3d 776, 784 (D.C. Cir. 2012); *Sierra Club v. Costle*, 657 F.2d 298, 406 (D.C. Cir. 1981). Those kinds of orders are frequent across presidential administrations.[2]

_____

[2] Presidents regularly exercise their supervisory authority over how executive officers carry out their statutory responsibilities. *See, e.g.*, EO 12,866, 58 Fed. Reg. 51,735, § 1(b), (Sept. 30,

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

The D.C. Circuit's decision in *Building & Construction Trades Department, AFL-CIO v. Allbaugh*, 295 F.3d 28 (D.C. Cir. 2002) is instructive. There, Plaintiffs challenged an executive order that provided that "to the extent permitted by law," no federal agency and no entity that receives federal assistance for a construction product could require or prohibit bidders or contractors from entering into a project labor agreement. *Id.* at 29. Plaintiffs sued, claiming that the executive order exceeded the President's constitutional authority. *See id.* at 31–32. The D.C. Circuit rejected this argument, pointing out that the executive order "directs [agencies] how to proceed in administering federally funded projects, but only '[t]o the extent permitted by law.'" *Id.* at 33. "Thus, if an executive agency, such as the FEMA, may lawfully implement the [EO], then it must do so; if the agency is prohibited, by statute or other law, from implementing the [EO], then the [EO] itself instructs the agency to follow the law." *Id.* The court concluded that "[t]he mere possibility that some agency might make a legally suspect decision" in the future is not a ground for an injunction. *Id.* (citing *Reno v. Flores*, 507 U.S. 292, 301 (1993)); *see also Common Cause v. Trump*, 506 F. Supp. 3d 39, 47 (D.D.C. 2020).

The Ninth Circuit's decision in *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1239 (9th Cir. 2018), is not to the contrary. There, the court considered more stringent language that "unambiguously command[ed] action" to ensure that certain jurisdictions would be ineligible for funding, which created "more than a 'mere possibility that some agency might make a legally suspect decision.'" *City & Cnty. of SF*, 897 F.3d at 1240 (quoting *Allbaugh*, 295 F.3d at 33).

---

1993) (directing agencies on how to exercise regulatory authority, "to the extent permitted by law and where applicable"); EO 14,004, 86 FR 7475 § 1 (Jan. 25, 2021) (directing the Executive Branch to "consistent with applicable law, use terms and conditions of Federal financial assistance awards and Federal procurements to maximize the use of goods, products, and materials produced in, and services offered in, the United States").

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

The EOs' operational language is closer to *Allbaugh* than to *City & County of San Francisco*. It does not "unambiguously command[] action" by ordering Executive Branch officials to ensure that noncompliant jurisdictions are ineligible for federal grants, *City & County of SF*, 897 F.3d at 1240; rather, it merely instructs agencies to coordinate with OMB and to "take appropriate steps" to further the goal that grantees comply with a policy preference, consistent with law. EO 14,187 § 4. Agencies should be accorded the presumption that in taking appropriate steps they will act consistent with applicable law, including abiding by any governing statutory or constitutional restrictions.[3]

The EOs also do not "preclude[] a court from examining whether [it is] consistent with law," rendering "judicial review . . . a meaningless exercise." *City & County of SF*, 897 F.3d at 1240. As the D.C. Circuit noted, "[i]n the event that an agency does contravene the law in a particular instance, an aggrieved party may seek redress through any of the procedures ordinarily available to it: a bid protest, a motion for administrative reconsideration, or an action in the district court challenging that specific decision." *Allbaugh*, 295 F.3d at 33; *see also* 5 U.S.C § 702.

Plaintiffs and this Court misapprehend the nature of the EOs and of executive authority to administer grants. Contrary to Plaintiffs' argument, the Executive Branch does not uniformly lack the power to condition federal funds. *See* Pls.' Mem. at 17. For example, NIH possesses authority to fund research, *see* 42 USC §§ 241(a), 284(b), and to exercise discretion to allocate funds and determine research priorities, *id.* § 282(b)(3), (5), (6), (21); *cf. Apter v. Richardson*, 510 F.2d 351, 355 (7th Cir. 1975) ("[T]he Public Health Service Act does confer broad

---

[3] If this Court disagrees, the government alternately and respectfully submits that *City & County of San Francisco* was wrongly decided. 897 F.3d at 1249 (Fernandez, J., dissenting).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

discretion in the funding of training programs."). NIH has exercised this authority, delegated by

Congress, to add terms and conditions to grants in accordance with EOs, including EO 13,505,

which directed NIH to "support and conduct responsible, scientifically worthy human stem cell

research, including human embryonic stem cell research, to the extent permitted by law." EO

13,505, 74 FR 10,667, 10,667 (2009); *see* NIH Guidelines, 74 FR 32,170–32,175 (July 7,

2009); 45 C.F.R. § 75.210 (authorizing NIH to place terms and conditions on awards).

This is but one example where the Executive Branch possesses discretion, delegated by

Congress, to administer federal grants, including by conditioning or distributing funds

according to the President's policy. The President's power was thus not "at its lowest ebb" in

issuing the EOs. TRO Op. at 15 (quoting *City & Cnty. of San Francisco*, 897 F.3d at 1234).

The President's directive to agencies to take appropriate steps to include a funding condition

consistent with applicable law on certain grants does not facially "usurp Congress's spending,

appropriation, or legislative powers." Pls.' Mem. at 18.

### C.    Plaintiffs are unlikely to succeed on their Equal Protection claim.

"[T]he Due Process Clause of the Fifth Amendment contains an equal protection

component prohibiting the United States from invidiously discriminating between individuals

or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976). To analyze governmental action

under the equal-protection guarantee, courts "apply different levels of scrutiny to different

types of classifications." *Clark v. Jeter*, 486 U.S. 456, 461 (1988). Typically, governmental

classifications must be merely "rationally related to a legitimate governmental purpose." *Id.*

"Classifications based on race or national origin" receive "the most exacting scrutiny." *Id.*

"Between these extremes . . . lies a level of intermediate scrutiny," applied to "classifications

based on sex or illegitimacy." *Id.*

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

1    Application of any of these tiers of scrutiny is inappropriate here, where there is no

2    agency action to scrutinize. Moreover, the Ninth Circuit precedents Plaintiffs rely on in arguing

3    that the EOs are subject to intermediate scrutiny were wrongly decided and should be

4    overruled. But even applying intermediate scrutiny, the EOs are constitutional.

5              *i.    The EOs are not amenable to constitutional scrutiny.*

6        At the threshold, there is a doctrinal mismatch between the EOs—which direct agencies

7    to explore a policy option—and heightened scrutiny. As discussed, the relevant provisions of

8    the EOs only direct agencies to take "appropriate" steps, based on what the facts and law allow.

9    EO 14,187 § 4. Plaintiffs seek to pretermit that process, forcing the government to justify

10   policies that it has not even adopted. Defendants are aware of no case requiring that the

11   government must carry a particular evidentiary burden before it can even *contemplate* future

12   action, and Plaintiffs cite none.

13            *ii.    The EOs do not warrant intermediate scrutiny.*

14       Plaintiffs wrongly argue that the EOs are subject to intermediate scrutiny because they

15   "discriminate based on transgender status and sex." Pls.' Mem. at 9.

16       As an initial matter, the Protecting Children EO targets specified treatments for young

17   people based on their medical purpose, not the trans-identifying status of the patient. In

18   particular, because section 2(c) of that EO describes the relevant treatments as "gender

19   affirming care," it is implausible to read that section to apply to "a transgender teen who needs

20   puberty blockers" for "cancer treatment," TRO Op. at 18, which is not a "gender affirming"

21   treatment. And the EO's provisions on sex hormones and surgical procedures only turn on

22   whether the treatments are used for certain purposes. EO 14,187 § 2(c). The Defending Women

23   EO's recognition that the "sexes are not changeable," meanwhile, does not deny the existence

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

1    of persons whose "subjective sense of self" is "disconnected" from that "biological reality," EO

2    14,168 §§ 2, 2(g).

3        Even if the Court were to find that the EOs classify based on trans-identifying status,

4    that is not a quasi-suspect classification. The government recognizes that the Ninth Circuit has

5    held that "heightened scrutiny applies to laws that discriminate based on transgender status,"

6    *Doe v. Horne*, 115 F.4th 1083, 1102 (9th Cir. 2024), but respectfully preserves the argument

7    that the Ninth Circuit's conclusion is incorrect. Trans-identifying persons do not "exhibit

8    obvious, immutable, or distinguishing characteristics that define them as a discrete group."

9    *Bowen v. Gilliard*, 483 U.S. 587, 602 (1987).

10       The EOs moreover do not classify on the basis of sex. That providers of the relevant

11   treatments may necessarily "determine the sex of the individual" patient, TRO Op. at 18, is not

12   a sex classification: the Protecting Children EO necessarily "uses sex-specific language

13   because it regulates sex-specific medications." *Eknes-Tucker v. Governor of Ala.*, 114 F.4th

14   1241, 1262 (11th Cir. 2024) (Lagoa, J., concurring in denial of reh'g en banc); *see also*

15   *Geduldig v. Aiello*, 417 U.S. 484, 496 n.20 (1974) ("While it is true that only women can

16   become pregnant it does not follow that every legislative classification concerning pregnancy is

17   a sex-based classification . . . ."). But the Protecting Children EO applies evenhandedly to

18   males and females who seek the implicated treatments. EO 14,187 § 2(c).[4] Such a policy does

19   not privilege or burden one sex over the other. *See Miss. Univ. for Women v. Hogan*, 458 U.S.

20   718 (1982) (university's policy of admitting women, but not men, was sex classification).

---

[4] Plaintiffs do not explain what provisions of the Defending Women EO they believe classify
based on sex.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

Plaintiffs cite the Supreme Court's decision in *Bostock v. Clayton Cnty.*, 590 U.S. 644, 660 (2020) for the proposition that a classification based on trans-identifying status is necessarily a sex classification for equal-protection purposes. Pls.' Mem. at 9. The government recognizes that the Ninth Circuit has so held. *See Hecox v. Little*, 104 F.4th 1061, 1080 (9th Cir. 2024). The government respectfully preserves the argument that the Ninth Circuit incorrectly applied the Supreme Court's Title VII-specific conclusion in *Bostock* to the Equal Protection Clause, despite the different text of those provisions and their distinct functions.

Plaintiffs finally argue that the Protecting Children EO discriminates based on sex because it would not implicate "testosterone therapy to a cisgender boy who wants to 'jumpstart' puberty," Pls.' Mem. at 10, whereas it would implicate the use of sex hormones "to align an individual's physical appearance with an identity that differs from his or her sex," EO 14,187 § 2(c). This reasoning wrongly "assumes that any administration of these hormones is one treatment," when in fact the treatments Plaintiffs cite are different. *Skrmetti*, 83 F.4th at 481.

### iii.    Important governmental interests animate the EOs.

Rational basis review requires only that "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). Under intermediate scrutiny, the government must show that the classification "serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *United States v. Virginia*, 518 U.S. 515, 533 (1996) (quotations omitted). Because the EOs do not classify based on any protected characteristic, rational basis review should apply, but the EOs satisfy intermediate scrutiny regardless.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

1    The EOs serve important governmental interests. "A democratic society rests, for its

2    continuance, upon the healthy, well-rounded growth of young people into full maturity as

3    citizens," and the Supreme Court has accordingly "sustained legislation aimed at protecting the

4    physical and emotional well-being of youth even when the laws have operated in the sensitive

5    area of constitutionally protected rights." *New York v. Ferber*, 458 U.S. 747, 757 (1982)

6    (quotation omitted). The Protecting Children EO is based on this governmental interest. *See* EO

7    14,187 § 1. The Defending Women EO is similarly based on concerns about the harms

8    stemming from "[e]fforts to eradicate the biological reality of sex." EO 14,168 § 1. Far from

9    evincing "animus," Pls.' Mem. at 14, the EOs evince a presidential directive that agencies

10   consider appropriate ways to prevent serious harms to young people.

11   Plaintiffs seek to downplay the covered treatments as not risky, but evidence abounds

12   that such treatments "are dangerous and ineffective." *Eknes-Tucker*, 114 F.4th at 1266 (Lagoa,

13   J., concurring); *Skrmetti*, 83 F.4th at 489 (similar); Tenn. Code Ann. § 68-33-101. Moreover, as

14   the Protecting Children EO references, adolescents cannot necessarily "appreciate the life-

15   altering nature of the[se] medical treatments." *Eknes-Tucker*, 114 F.4th at 1267 (Lagoa, J.,

16   concurring). Combined with the fact that "studies show that most children with gender

17   dysphoria grow out of it," *id.*, this results in adolescents later experiencing "regret," EO 14,187

18   § 1. At minimum, there is a "lack of clear data on how frequently . . . regret occurs," supporting

19   the government's interest in limiting funding at this time. *The Cass Review: Independent

20   Review of Gender Identity Services for Children and Young People* ("*Cass Review*") at 22, 179

21   (Apr. 2024), https://perma.cc/3QVZ-9Y52; *see also id.* (noting "insufficient/inconsistent

22   evidence about the effects of puberty suppression on . . . fertility").

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

Plaintiffs argue that these treatments are "medically necessary." Pls.' Mem. at 13. But there is ample evidence for the EOs' concern about a lack of sufficient evidence of the efficacy of such treatments for gender dysphoria in minors and the risks of adverse effects. *See, e.g.*, *Skrmetti*, 83 F.4th at 488–89 (discussing the "unsettled, developing, in truth still experimental[] nature of treatments in this area"); Tenn. Code Ann. § 68-33-101; *Cass Review* at 22, 179, 195 (finding "no evidence that puberty blockers improve body image or dysphoria" and "no evidence that gender-affirmative treatments reduce deaths by suicide"); Annette L. Cantu et al., *Changes in Anxiety & Depression from Intake to First Follow-Up Among Transgender Youth in a Pediatric Endocrinology Clinic*, 5:3 Transgender Health 196 (2020), https://pmc.ncbi.nlm.nih.gov/articles/PMC7906229/ ("no change in acute distress" in "transgender youth initiating gender-affirming care").

Plaintiffs' arguments that the EOs lack a sufficient means-end fit to "ban[] care for all transgender adolescents," Pls.' Mem. at 13, miss the mark as the EOs do not ban any care. And the EOs are not constitutionally "underinclusive" merely because they do not address different medical treatments, such as "breast augmentation surgery in cisgender females," TRO at 20, which do not pose concerns related to the "claim that adults can change a child's sex" through treatment, EO 14,187 § 1. Nor are they constitutionally "overinclusive" because they apply to 19-year-olds, TRO at 20, as the relevant risks apply to adolescents. *See Age Limits and Adolescents*, Canadian Paediatric Society (Nov. 2023), https://pmc.ncbi.nlm.nih.gov/articles/PMC2794325/ ("Adolescence . . . corresponds roughly to the period between the ages of 10 and 19 years."). The Protecting Children EO further does not to a patient seeking "a vasectomy" for purposes of not passing on "Huntington's disease . . . to

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

his children," TRO at 21, because that would not be a "gender affirming" surgery. EO 14,187 § 2(c).[5]

In all events, a perfect means-end fit is not required under intermediate scrutiny. *See Assoc. Gen. Contractors of Cal., Inc. v. City & County of SF*, 813 F.2d 922, 942 (9th Cir. 1987) ("[T]here is no requirement that gender-based statutes be 'drawn as precisely as [they] might have been.'" (quoting *Michael M. v. Sup. Ct. of Sonoma Cnty.*, 450 U.S. 464, 473 (1981))). The EOs satisfy intermediate scrutiny (as well as rational basis review), and should not be enjoined.

### D. Plaintiffs are unlikely to succeed in challenging Section 8(a) of the Protecting Children EO.

Plaintiffs claim the Protecting Children EO's purported interpretation of 18 U.S.C. § 116 violates the Tenth Amendment by "usurp[ing] the States' reserved powers to regulate the practice of medicine" and the separation of powers by subverting the statute's "specific exclusion of medical care." Pls.' Mem. at 17, 19. These claims are meritless. To obtain a conviction under 18 U.S.C. § 116, the government must prove one of the jurisdictional elements in the statute to establish that the charged conduct has a sufficient nexus to interstate or foreign commerce. This jurisdictional element places the statute squarely within Congress' Commerce Clause power—and removes it from the powers reserved to the states under the Tenth Amendment. Moreover, 18 U.S.C. § 116 itself defines "female genital mutilation" for purposes of the conduct criminalized in that statute, and the Protecting Children EO does not purport to redefine that phrase.

---

[5] That not every treatment implicated under the Protecting Children EO is "irreversible," TRO Op. at 21, does not gainsay that EO's recognition of irreversibility as one of many different risks applicable to one or more treatments.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

"If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States." *New York v. United States*, 505 U.S. 144, 156 (1992); *see also United States v. Mussari*, 95 F.3d 787, 791 (9th Cir. 1996).

Section 116 falls squarely within Congress' Commerce Clause authority, and Plaintiffs do not argue the contrary. Const. Art. I, § 8, cl. 3. Section 116 requires proof of one of several jurisdictional elements that bring the statute within this authority. 18 U.S.C. § 116(d)(1)–(7). The Ninth Circuit has "consistently approved statutes with jurisdictional hooks in the face of Commerce Clause challenges." *United States v. Howald*, 104 F.4th 732, 738 (9th Cir. 2024).

Plaintiffs' motion makes no mention of these Commerce Clause principles, nor explains why the statute's jurisdictional element is insufficient to satisfy them. In granting a TRO, this Court determined there was a Tenth Amendment violation "[t]o the extent that Section 8(a) purports to expand 18 U.S.C. § 116 to encompass [services] *lacking any tie to interstate commerce*." TRO Op. at 25 (emphasis added). But not even Plaintiffs argue that the EO purports to eliminate the jurisdictional hook in 18 U.S.C. § 116 (and it does not). Instead, Plaintiffs claim the statute interferes with their authority to regulate the practice of medicine, saying that they have enacted laws "protecting providers and patients in providing or obtaining gender-affirming treatment." Pls.' Mem. at 18. But "[f]ederal laws criminalizing conduct within traditional areas of state law . . . involve no infringement per se of states' sovereignty."[6] *United States v. Johnson*, 114 F.3d 476, 481 (4th Cir. 1997).

Recognizing the futility of their Tenth Amendment claim, Plaintiffs have added a separation-of-powers claim in their PI motion. They claim the Protecting Children EO

---

[6] All four plaintiff states similarly criminalize FGM. Wash. Rev. Code Ann. § 9A.36.170; Minn. Stat. Ann. § 609.2245; Or. Rev. Stat. Ann. § 163.207; Colo. Rev. Stat. Ann. § 18-6-401.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

"redefines gender-affirming care . . . as 'mutilation,' in a bad-faith effort to bring [it] within the federal prohibition on 'female genital mutilation' under 18 U.S.C. §116." Pls.' Mem. at 18. This claim misreads the EO and is speculative in any event. Section 8(a) merely instructs the Attorney General to "review Department of Justice enforcement of [18 U.S.C. 116] and prioritize enforcement of protections against female genital mutilation." EO 14,187 § 8. The EO thus does not require any particular interpretation of the criminal statute or any prosecutions, but only directs "review" and prioritization.

Moreover, by its terms, this direction addresses "female genital mutilation," which is defined in 18 U.S.C. § 116, and not "chemical and surgical mutilation," which is defined separately and differently in the Protecting Children EO, *id*. § 2(c). The EO does not purport to define (or redefine) "female genital mutilation." The EO makes clear that it "shall be implemented consistent with applicable law," Order § 11(b), and "shall not be construed to . . . affect . . . the authority granted by law to [the Attorney General]," *id*. § 11(a)(1). In its TRO decision, this Court questioned why an EO addressing "chemical and surgical mutilation" would also address "female genital mutilation," if not to "equate the two." TRO Op. at 23. But there is no prohibition on an EO addressing multiple topics.

Plaintiffs suggest 18 U.S.C. § 116 could be used to prosecute physicians who provide or parents who facilitate "non-surgical options like puberty-blocking medications and hormone therapy." Pls.' Mem. at 18. The statute, however, criminalizes only "procedure[s]" that "involve[] partial or total removal of, or other injury to, the external female genitalia." 18 U.S.C. § 116(e). Plaintiffs do not contend the statute has ever been used to prosecute such conduct and do not show that any such prosecution is certainly impending.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

As for surgical procedures, Plaintiffs note that the statute "explicitly excludes any 'surgical operation' that is 'necessary to the health of the person on whom it is performed and is performed by a person licensed in the place of its performance as a medical practitioner.'" Pls.' Mem. at 19 (quoting 18 U.S.C. § 116(b)). But Plaintiffs acknowledge that non-surgical options "are generally the only treatments minors can receive," and they are the only treatments the physician Plaintiffs provide. Pls.' Mem. at 19; *see* Physician Pl. 1 Decl. ¶ 14, ECF No. 13; Physician Pl. 2 Decl. ¶¶ 8, 28, ECF No. 14; Physician Pl. 3 Decl. ¶ 11, ECF No. 15. Plaintiffs thus lack standing to challenge any hypothetical application of the statute to surgical procedures. *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1141 (9th Cir. 2000). Moreover, the Court cannot (and should not) make an abstract determination about whether future, hypothetical surgical operations are necessary to the health of unknown persons in undefined circumstances. *See, e.g.*, *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 903 (9th Cir. 1993).

**E.  The EOs are not unconstitutionally vague.**

Plaintiffs are unlikely to succeed on their facial Fifth Amendment void-for-vagueness claim. As an initial matter, facial challenges of this type are premature and strongly disfavored. *See United States v. Rodriguez*, 360 F.3d 949, 954 (9th Cir. 2004). The EOs here moreover cannot be unconstitutionally vague on their face or as applied, because the challenged provisions of the EOs do not prohibit any conduct by Plaintiffs, but instead impose requirements on agencies, who can provide any clarification they deem appropriate if and when they take steps to implement the EOs. *See* EO 14,187 § 4; *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 504 (1982) (stating that courts should not "assume that the [government] will take no further steps to minimize the dangers of arbitrary enforcement").

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

In any event, the definition of "sex" in the EOs is not unconstitutionally vague. An individual's sex *is* determined "at conception," EO 14,168 § 4, because "sex determination is strictly chromosomal." Scott F. Gilbert, *Chromosomal Sex Determination in Mammals*, Developmental Biology, (6th ed. 2000), https://www.ncbi.nlm.nih.gov/books/NBK9967/. That an individual "do[es] not produce reproductive cells" yet at the moment of conception, Pls.' Mem. at 20, does not mean that a person does not chromosomally belong at that time to a particular sex that is characterized by the production of a certain reproductive cell.

Agency guidance on the Defending Women EO's sex-based definitions provides additional clarity. *See* EO 14,168 § 3 (requiring HHS to provide "clear guidance expanding on the sex-based definitions set forth in this order"); *Sex-Based Definitions*, HHS (Feb. 19, 2025), https://womenshealth.gov/article/sex-based-definitions. This guidance does not include the phrase "at conception," and therefore dispels any purported confusion. *See Hoffman Ests.*, 455 U.S. at 494 n.5.

## II.    THE REMAINING FACTORS WEIGH AGAINST PLAINTIFFS' REQUESTED RELIEF

Plaintiffs wrongly contend that they have shown irreparable injury because the EOs will purportedly "reduce … the availability of gender-affirming care," and cause grantees to lose "hundreds of millions of dollars in funding." Pls.' Mem. at 20, 23. But these prospects are wholly speculative at this point given that the EOs have not been applied to any specific funding or grants. Moreover, Plaintiffs do not show that the EOs will be so applied in so short a timeline that a PI is necessary to prevent it. *See Facebook, Inc. v. BrandTotal Ltd.*, 499 F. Supp. 3d 720, 735 (N.D. Cal. 2020). Plaintiffs also cite alleged harm stemming from violation of their constitutional rights. *See id.* at 20. But merely asserting a constitutional claim is insufficient to trigger a finding of irreparable harm where a plaintiff "has not shown [that] he suffered a

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

constitutional deprivation." *Epps v. Grannis*, 2011 WL 3740477, at *2 (S.D. Cal. Aug. 1, 2011). It is incorrect that a PI "would not harm the federal government at all." Pls.' Mem. at 24. The relief Plaintiffs request would effectively disable the President and federal agencies from effectuating the President's agenda consistent with their statutory authorities and constitutional duties. The public interest is not advanced when the Executive is disabled from even *considering* a policy. Thus, the balance of the equities weighs in favor of the Government and relief should be denied.

## III.    ANY PRELIMINARY INJUNCTION SHOULD BE LIMITED.

As explained above, the Court should deny Plaintiffs' motion in its entirety. But even if the Court determines that a PI is appropriate, it should be limited to only redress each Plaintiff's specifically asserted injuries and should not extend, as Plaintiffs request, to all "health care providers for gender-affirming care provided in Plaintiff States." Pls.' Proposed Order at 5.

Relief should be limited to the Plaintiffs who have standing themselves.[7] "Article III of the Constitution limits the exercise of the judicial power to 'Cases' and 'Controversies.'" *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 438 (2017) (citation omitted). A federal court may entertain a suit only by a plaintiff who has suffered a concrete "injury in fact," and a court may grant relief only to remedy "the inadequacy that produced [the plaintiff's] injury." *Gill v. Whitford*, 585 U.S. 48, 50 (2018) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)); *see also Doe 2 v. Shanahan*, 917 F.3d 694, 739–40 (D.C. Cir. 2019) (Williams, J., concurring). Thus, "a

---

[7] Minnesota does not establish standing to challenge Section 4 of the Protecting Children EO, not least because it fails to assert that the state or its instrumentalities receive any research or educational grant funding. *See* Am. Compl. ¶ 9. Rather, it alleges that some of the providers in its state are "recipients of federal research or education grants." *Id.* Minnesota alleges that it "operates the [s]tate's Medicaid and public health programs," but does not allege it receives educational or research funding through those programs. *Id.*

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

plaintiff's judicial 'remedy must be tailored to redress *the plaintiff's* particular injury.'" *Id.* at 740 (quoting *Gill*, 585 U.S. at 73).

Plaintiffs, however, seek relief well beyond redressing their own asserted injuries. First, Plaintiffs seek to enjoin the agency defendants from "implementing" Sections 4 and 8(a) of the Protecting Children EO. Pls.' Proposed Order at 5. But it is unnecessary and, thus, overbroad to enjoin internal agency deliberations, which cannot impact Plaintiffs. Any injunction as to Section 4 of the Protecting Children EO thus should do no more than preliminarily enjoin the agency defendants from "condition[ing] or withhold[ing] federal funding based on the fact that a [Plaintiff] health care entity or health professional provides . . . care" defined by Section 2(c) of the Protecting Children EO. Such an injunction tracks Plaintiffs' own proposed injunction as to Sections 3(e) and 3(g) of the Defending Women EO, Pls.' Proposed Order at 5, as well as the TRO recently entered against these EOs by a Maryland district court. TRO, *PFLAG v. Trump*, 8:25-cv-337 (D. Md. Feb. 13, 2025), ECF No. 61. Similarly, any injunction as to Section 8(a) of the Protecting Children EO should go no further than preliminarily enjoining the U.S. Department of Justice from enforcing that portion of the EO "against health care providers for gender-affirming care provided in Plaintiff States . . . to the extent that Section 8(a) of Executive Order 14,187 purports to redefine 'female genital mutilation' under 18 U.S.C. § 116 as 'chemical and surgical mutilation' as defined in Section 2(c) of the Protecting Children EO."[8]

Second, in their proposed relief against Section 4 of the Protecting Children EO and Sections 3(e) and 3(g) of the Defending Women EO, the Plaintiff states seek relief not only for

---

[8] Plaintiffs' request to enjoin enforcement of 18 U.S.C. § 116, Pls.' Proposed Order at 5, should be rejected because Plaintiffs do not challenge 18 U.S.C. § 116; they only challenge Section 8(a) of the Protecting Children EO. *See* Am. Compl. ¶¶ 181–86.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

themselves but for "health care providers for gender-affirming care provided in Plaintiff States." Pls.' Proposed Order at 5. But "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement," "the plaintiff generally must assert his own legal rights and interests." *Warth* v. *Seldin*, 422 U.S. 490, 499 (1975). A plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* The Plaintiff states can only seek relief on their own behalf, not on behalf of unaffiliated providers in their states.

The Supreme Court has recognized a narrow exception for *parens patriae* actions—that is, suits in which a state seeks "to protect her citizens" from alleged violations of their federal rights. *Georgia v. Pennsylvania Railroad Co.*, 324 U.S. 439, 447 (1945). Critically, however, it is well established that a "State does not have standing as *parens patriae* to bring an action against the Federal Government." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 610 n.16 (1982); *see also Haaland v. Brackeen*, 599 U.S. 255, 294–95 (2023). Thus, any PI should be limited to the named Plaintiffs only and should not include nonparty providers geographically situated in the state Plaintiffs' boundaries.

## IV.    ANY INJUNCTIVE RELIEF SHOULD BE ACCOMPANIED BY A BOND.

Defendants also respectfully request that any injunctive relief be accompanied by a bond under Fed. R. Civ. P. 65(c). A bond is appropriate here given that any preliminary relief would potentially mandate that the Executive spend money that may not be recouped once distributed.

## V.    ANY INJUNCTIVE RELIEF SHOULD BE STAYED.

If the Court issues a PI, Defendants respectfully request that such relief be stayed pending the disposition of any appeal that is authorized, or at a minimum that such relief be

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

administratively stayed for seven days to allow the government to seek an emergency, expedited stay from the court of appeals if an appeal is authorized. *See* Fed. R. App. P. 8(a)(1).

## **CONCLUSION**

For these reasons, the Court should deny Plaintiffs' PI motion.

DATED: February 25, 2025                    Respectfully submitted,

                                            ERIC J. HAMILTON
                                            Deputy Assistant Attorney General
                                            Civil Division

                                            MICHELLE BENNETT
                                            Assistant Branch Director
                                            Federal Programs Branch

                                            */s/ Vinita B. Andrapalliyal*
                                            VINITA B. ANDRAPALLIYAL
                                            Senior Counsel (NY Bar Reg. No. 5231667)
                                            CHRISTIAN S. DANIEL
                                            Trial Attorney (DC Bar No. 1600226)
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L St. NW
                                            Washington, DC 20005
                                            Tel: (202) 305-0845
                                            Fax: (202) 616-8460
                                            vinita.b.andrapalliyal@usdoj.gov
                                            christian.s.daniel@usdoj.gov

                                            *Attorneys for Defendants*

                                            *I certify that this memorandum contains 8374*
                                            *words, in compliance with the Local Civil Rules.*

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2025, I electronically filed the foregoing Opposition to Plaintiffs' Motion for Temporary Restraining Order using the Court's CM/ECF system, causing a notice of filing to be served upon all counsel of record.

Dated: February 25, 2025                    */s/ Vinita. B. Andrapalliyal*
                                            VINITA B. ANDRAPALLIYAL

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**