1

The Honorable Lauren King

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

9

STATE OF WASHINGTON, et al.,

NO. 2:25-cv-00244-LK

10

Plaintiffs,

11

v.

PLAINTIFFS' MOTION FOR
CONTEMPT, SHORTENED TIME,
AND ATTORNEYS' FEES

12

DONALD J. TRUMP, in his official capacity
as President of the United States, et al.,

NOTE ON MOTION CALENDAR:
Friday, March 14, 2025

13

Defendants.

ORAL ARGUMENT REQUESTED

14

15

16

17

18

19

20

21

22

23

24

25

26

PLS.' MOT. FOR CONTEMPT,
SHORTENED TIME, AND
ATTORNEYS' FEES
NO. 2:25-cv-00244-LK

1

**TABLE OF CONTENTS**

2  I.    INTRODUCTION.................................................................................................. 1

3  II.   BACKGROUND................................................................................................... 1

4  III.  ARGUMENT ........................................................................................................ 4

5       A.  This Court Has Inherent Power to Enforce Its Orders Through Contempt and
6           to Expedite Discovery................................................................................... 4

        B.  Termination of the Grant Violates This Court's TRO and PI..................... 5
7
        C.  The Termination Letter Also Violates Injunctions of Two Other Federal
8           Courts Further Evidencing Defendants' Contempt ..................................... 8

9       D.  In the Alternative, This Court Should Issue an Order to Show Cause and
            Permit Expedited Discovery ...................................................................... 10
10
        E.  Good Cause Supports Bringing Defendants into Compliance on Shortened
11          Time ............................................................................................................ 11

12      F.  The Court Should Award Fees Resulting from This Motion.................... 12

13 IV.   CONCLUSION .................................................................................................. 12

14

15

16

17

18

19

20

21

22

23

24

25

26

# I.    INTRODUCTION

Less than a month after this litigation was filed, Defendants believe they have devised a way to skirt this Court's authority and avoid complying with its injunctions. On February 28 and March 4, Defendants sent letters abruptly terminating a years-running grant to Seattle Children's Hospital for the provision and improvement of gender-affirming care. The National Institutes of Health (NIH) told Seattle Children's Hospital that it was terminating the grant because "Transgender issues" are inconsistent with "biological realities" and studying transgender health does not have value. In light of this Court's injunctions covering Plaintiff State of Washington, Plaintiffs assumed this was an honest mistake and alerted Defendants to the problem.

But Defendants refuse to fix it. They incredibly claim that NIH's sudden about-face has nothing to do with the enjoined Executive Orders. This, despite tweets from Department of Government Efficiency (DOGE) gloating about the canceled grants, media reporting, and leaked NIH documents tying the cancelations directly to the Trump Administration's Executive Orders. And somehow it gets worse. As Plaintiffs were finalizing this motion, HHS issued additional notices, including to hospitals in the Plaintiff States, threatening to strip up to $370 million in education grants from children's hospitals nationwide based on the Denial-of-Care Order. Under Defendants' stingy and self-serving reading of the Court's injunctions they can cancel any grant they want to, as long as they don't admit why they're doing it.

That is not how this works. Injunctions are not suggestions—they are binding orders of the Court. Defendants may not evade this Court's orders through game-playing, and they may not harm Plaintiff States and their institutions that have already shown entitlement to preliminary relief. The Court should hold Defendants in contempt on shortened time, and should award Plaintiff State of Washington its fees in connection with this motion.

# II.    BACKGROUND

Plaintiffs filed this suit on February 7 alleging that President Trump's Executive Order 14,187 (Denial-of-Care Order) unconstitutionally defunds and criminalizes gender-affirming care

PLS.' MOT. FOR CONTEMPT,
SHORTENED TIME, AND
ATTORNEYS' FEES
NO. 2:25-cv-00244-LK

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1  and requesting a temporary restraining order. *See generally* Dkt. ##1, 11. This Court granted a 14-
2  day temporary restraining order (TRO) on February 14. Dkt. #158. It enjoined Defendants,
3  including the U.S. Department of Health and Human Services (which includes NIH), from
4  enforcing or implementing Section 4 of the Denial-of-Care Order. *Id.* Section 4 of the Denial-of-
5  Care Order instructs federal agencies "to ensure that institutions receiving Federal research or
6  education grants end" gender-affirming care. Dkt. ##17-1 p.3.

7        Plaintiffs filed an Amended Complaint on February 19 adding claims against Executive
8  Order 14,168 (Gender-Ideology Order). *See generally* Dkt. #164. Plaintiffs moved for a preliminary
9  injunction the same day (Dkt. #169), which was granted at approximately 9:35 p.m. on February
10  28. Dkt. #233. The preliminary injunction (PI) enjoined Defendants from enforcing or
11  implementing Section 4 of the Denial-of-Care Order and also enjoined the Defendants from
12  enforcing Sections 3(e) and 3(g) of the Gender-Ideology Order "to condition or withhold federal
13  funding based on the fact that a health care entity or health professional provides gender-affirming
14  care within the Plaintiff States." *Id.* p.53.

15        On February 28, while the TRO was in place and shortly before this Court entered its PI,
16  NIH terminated a grant previously awarded to Seattle Children's Hospital to provide gender-
17  affirming care and innovate gender-affirming interventions benefitting the sexual, physical, and
18  mental health of transgender youth. Ahrens Ex. A; *see also* NIH RePORT, *An intervention to*
19  *promote healthy relationships among transgender and gender expansive youth*,
20  https://reporter.nih.gov/project-details/10697301. NIH terminated the grant because "[r]esearch
21  programs based on gender identity are often unscientific, have little identifiable return on
22  investment, and do nothing to enhance the health of many Americans. Many such studies, ignore,
23  rather than seriously examine, biological realities." Ahrens Ex. A p.2. The same day, DOGE
24  congratulated itself on the social media platform "X" posting "Today NIH canceled grants for
25  ~$10.9 million" including the Seattle Children's Hospital grant. McGinty Ex. 2. The grants listed
26

PLS.' MOT. FOR CONTEMPT,
SHORTENED TIME, AND
ATTORNEYS' FEES
NO. 2:25-cv-00244-LK

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    in the post correspond to recent Executive Orders targeting transgender people and other minority

2    groups, including the Denial-of-Care Order and Gender-Identity Order.

3    On March 3, Plaintiffs' counsel contacted Defendants' counsel and explained that the

4    termination violated the TRO and the PI as orders in two separate cases. McGinty Ex. 3 p.5. Counsel

5    for Plaintiffs asked that counsel for Defendants "confirm in writing within 48 hours that this

6    termination letter has been withdrawn." *Id.* Defendants counsel responded on March 5, arguing that

7    the grant termination did not violate either order because NIH was not implementing or enforcing

8    the orders, but "terminated the grant based on its own authorities and NIH Grants Policy Statement."

9    *Id.* p.3. Defendants' counsel also argued that the termination did not violate the PI, because the PI

10    was not issued at the time the termination letter went out. *Id.*

11    Later that day, Plaintiffs' counsel learned more. On March 4, a day before Defendants'

12    counsel's representations that it was in compliance with the PI, NIH issued a second letter

13    confirming the grant termination. Ahrens Ex. B. The second letter strips Seattle Children's Hospital

14    of more than $200,000, indicating under the heading "termination" that "[t]his award related to

15    Transgender issues no longer effectuates agency priorities." *Id.* p.6. It then repeats under the heading

16    "Transgender issues" the basis for defunding stated in the February 28 letter. *Id.* As a result of this

17    notice, Seattle Children's Hospital may be asked to pay back hundreds of thousands of dollars for

18    expenses that were already incurred for study costs and salaries. Ahrens ¶12.

19    Despite two federal-court injunctions barring NIH from defunding gender-affirming care,

20    NIH appears to have taken similar actions across hundreds of research grants, identifying

21    "[t]transgender issues" as a research area that NIH no longer supports. McGinty Ex. 5.

22    Furthermore, just today (March 6), HHS proclaimed its reliance on the "chemical and

23    surgical mutilation" order to defund up to $370 million in medical education grants from "59 . . .

24    children's hospitals nationwide," including money that has already been awarded and in many cases

25    spent. *Id.* Ex 8. In flagrant violation of this Court's order, this notification was sent to at least two

26    hospitals in the Plaintiff States—Children's Hospital Minnesota and Seattle Children's Hospital—

PLS.' MOT. FOR CONTEMPT,
SHORTENED TIME, AND
ATTORNEYS' FEES
NO. 2:25-cv-00244-LK

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

and appears to target at least five hospitals in the Plaintiff States. McGinty ¶9; *see also* Dkt. #116 ¶11 (explaining that Seattle Children's federal funding from the program targeted by HHS's notice). The Substance Abuse and Mental Health Services Administration, another component of HHS, issued a similar letter, also today, sent to at least one Plaintiff State. McGinty ¶10.

## III.    ARGUMENT

**A.    This Court Has Inherent Power to Enforce Its Orders Through Contempt and to Expedite Discovery**

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). "The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 796 (1987). 18 U.S.C. § 401 also provides statutory authority for a court "to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority."

A court may hold a party in civil contempt if the movant "show[s] by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (quotation omitted). "A person fails to act as ordered by the court when [they] fail[] to take all reasonable steps within [their] power to ensure compliance with the court's order." *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146-47 (9th Cir. 1983) (quoting *Sekaquaptewa v. MacDonald*, 544 F.2d 396, 406 (9th Cir. 1976), *cert. denied*, 430 U.S. 931 (1977) (cleaned up); *see also In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) ("Civil contempt in this context consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply."). "[C]ontempt need not be willful, and there is no good faith exception to the requirement of obedience to a court order." *Dual-Deck*, 10 F.3d at 695 (quoting *In re Crystal Palace Gambling Hall*, 817 F.2d 1361, 1365 (9th Cir. 1987)). "In deciding whether an injunction has been violated it is proper to observe the objects for which the relief was granted

PLS.' MOT. FOR CONTEMPT,
SHORTENED TIME, AND
ATTORNEYS' FEES
NO. 2:25-cv-00244-LK

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    and to find a breach of the decree in a violation of the spirit of the injunction, even though its strict

2    letter may not have been disregarded." *Inst. of Cetacean Research v. Sea Shepherd Conservation*

3    *Soc.*, 774 F.3d 935, 949 (9th Cir. 2014) (quoting *John B. Stetson Co. v. Stephen L. Stetson Co.*, 128

4    F.2d 981, 983 (2d Cir.1942)). A court has "wide latitude" to determine when a party is in contempt

5    of its order, subject to abuse-of-discretion review. *Gifford v. Heckler*, 741 F.2d 263, 266 (9th

6    Cir. 1984).

7         This Court likewise has authority under Rule 26(d)(1) to ensure compliance with its orders

8    through expedited discovery. Good cause is generally required to deviate from the normal case

9    schedule and permit discovery prior to a Rule 26(f) conference. *Music Group Macao Com. Offshore*

10   *Ltd. v. John Does I-IX*, 2014 WL 11010724, at *1 (W.D. Wash. 2014) (collecting cases). "Good

11   cause exists 'where the need for expedited discovery, in consideration of the administration of

12   justice, outweighs the prejudice to the responding party.'" *In re Countrywide Fin. Corp. Derivative*

13   *Litig.*, 542 F. Supp. 2d 1160, 1179 (C.D. Cal. 2008) (quoting *Semitool, Inc. v. Tokyo Electron Am.,*

14   *Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002)).

15   **B.    Termination of the Grant Violates This Court's TRO and PI**

16        NIH's termination of Seattle Children's Hospital's grant violates the clear terms of the

17   Court's TRO and PI rulings. This Court should hold HHS in contempt and order it to rescind its

18   termination and reinstate the grant in good standing, including all outstanding funds on the grant

19   balance.

20        There can be no doubt that HHS' grant cancellation violated "a specific and definite order

21   of" this Court. *Affordable Media*, 179 F.3d at 1239. This Court's TRO "fully enjoined [HHS]

22   from enforcing or implementing Section 4 of Executive Order 14,187 within the Plaintiff States."

23   Dkt. #158 p.1. Section 4, in turn, directed federal agencies to "immediately take appropriate steps

24   to ensure that institutions receiving federal research or education grants end the chemical and

25   surgical mutilation of children," with "chemical and surgical mutilation" defined to include a variety

26   of medical gender-affirming care. Dkt. #17-1 pp.2-3.

PLS.' MOT. FOR CONTEMPT,
SHORTENED TIME, AND
ATTORNEYS' FEES
NO. 2:25-cv-00244-LK

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    The Court's preliminary injunction included this same language and also extended to

2    Sections 3(e) and 3(g) of the Gender-Ideology Order "to condition or withhold federal funding

3    based on the fact that a health care entity or health professional provides gender-affirming care

4    within the Plaintiff States." Dkt. #233 p.53.

5    Here, NIH's grant termination violates both orders.[1] It violates both orders' injunctions

6    against enforcement and implementation of Section 4 of the Denial-of-Care Order because the grant

7    at issue specifically funds provision of gender-affirming care designed to improve sexual, mental,

8    and physical health outcomes for transgender adolescents through improved sexual health education

9    and counseling. Ahrens ¶¶5-8. Sexual education counseling that targets the specific needs and

10   vulnerabilities of transgender youth *is* gender-affirming care. *Id.* Moreover, Seattle Children's

11   Hospital provides gender-affirming care of precisely the kind targeted by the Denial-of-Care Order.

12   *See*, *e.g.*, Dkt. ## 39 ¶6; 40 ¶¶9-10; 47 ¶6; 70 ¶10; 109 ¶10; 179 ¶¶3-8; 182 ¶11; 184 ¶13; 185 ¶8;

13   187 ¶¶8-9; 196 ¶9. Defunding health care for transgender youth is exactly the point of Section 4 of

14   the Denial-of-Care Order, exactly what the Court enjoined, and exactly what NIH did anyway.

15   Defendants will argue that they should not be held to the terms of this Court's order because

16   NIH never explicitly stated Seattle Children's Hospital is being defunded because it performs so-

17   called "chemical and surgical mutilation" of children. *See* McGinty Ex. 3 p.3. But if contempt were

18   only available when the contemnor openly confessed to violating a court order, then court orders

19   would be illusory and powerless. *See Inst. of Cetacean Research*, 774 F.3d at 954-55 ("To find the

20   Defendants' self-serving interpretation of their obligations under our injunction reasonable would

21   be to invite experimentation with disobedience.") (quotation omitted). Instead, because the

22   termination letter produces the exact result the TRO foreclosed, during the period the TRO was in

23   effect, the termination letter was contemptuous.

24   NIH's violation of the PI is even clearer. As explained, the health care delivery tool being

25   developed with NIH funding is itself a form of gender-affirming health care. This sort of research

26

---

[1] It is undisputed that HHS had notice of both orders. *See* Dkt. ##167, 238.

PLS.' MOT. FOR CONTEMPT,
SHORTENED TIME, AND
ATTORNEYS' FEES
NO. 2:25-cv-00244-LK

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1   is only possible by health care professionals and institutions that provide gender-affirming care,

2   because doing the research (i.e., administering the care and improving the delivery tool that provides

3   that care) is gender-affirming care. *See* Ahrens ¶8 ("Research of this kind involves the provision of

4   healthcare as a part of the research itself."). And there can be no doubt that the NIH's termination

5   of the grant is an implementation and enforcement of Sections 3(e) and 3(g) of the Gender-Ideology

6   Order. NIH terminated the grant because it is "based on gender identity" and repeated the Gender-

7   Ideology Order's animating falsehood that "gender identity" is "unscientific." Ahrens Ex. A p.2.

8   The letter of March 4, states explicitly: "This award related to Transgender issues no longer

9   effectuates agency priorities." Ahrens Ex. B p.6. Those new priorities are the discriminatory ones

10  this Court enjoined because they erase transgender identity and devalue trans people. *See* Dkt #233

11  p.45 (this "language . . . denies and denigrates the very existence of transgender people" and "[m]ore

12  than that, . . . aims to erase them").

13          Defendants' argument that the PI order was not yet in effect when the termination letter was

14  issued, and therefore NIH's grant termination cannot violate it, is hollow. First, on March 4, the

15  NIH took further action to terminate the grant and deobligate funds for work to be completed under

16  the grant—days *after* the PI was entered. Ahrens Ex. 2. So, even if the termination letter itself were

17  not a violation of the PI, the March 4 letter certainly was. Second, the violation is *continuing*.

18  Research grants like this one have recurrent periods of fund withdrawals to pay for expenses

19  incurred while conducting research. Ahrens ¶9. Even if NIH were permitted to try to beat the clock

20  by sending out the letter hours before the PI was issued, once this Court ruled, NIH could no longer

21  deny Seattle Children's Hospital funds to provide gender-affirming care on the basis of the Gender-

22  Ideology Order. That violation is happening right now, including preventing the finalization of the

23  research project that has been ongoing since 2022. Ahrens ¶¶5, 16.

24          This Court should issue an order finding Defendant HHS in contempt of court and ordering

25  it to come into compliance by reinstating in good standing and fully funding Seattle Children's

26  Hospital's grant that was illegally terminated.

PLS.' MOT. FOR CONTEMPT,
SHORTENED TIME, AND
ATTORNEYS' FEES
NO. 2:25-cv-00244-LK

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

**C.    The Termination Letter Also Violates Injunctions of Two Other Federal Courts Further Evidencing Defendants' Contempt**

While a moving party need not show bad faith to secure a contempt order, a contemnor's bad faith is doubtless relevant to showing that they "fail[ed] to take all reasonable steps within [their] power to comply," *Dual-Deck*, 10 F.3d at 695, and in determining the appropriate sanction. Here, HHS' bad faith is amply demonstrated because it is not merely failing to comply with this Court's orders, but with injunctions issued in at least two other cases.

First, NIH's termination violates both a TRO and PI entered in *PFLAG v. Trump*, No. 8:25-cv-00337-BAH (D. Md.). That case, like this one, challenges the Gender-Ideology and Denial-of-Care Orders on separation of powers and equal protection grounds, among other bases. On February 13, the district court there entered a TRO forbidding HHS, NIH, and other defendants "from conditioning or withholding federal funding based on the fact that a healthcare entity or health professional provides gender affirming medical care to a patient under the age of nineteen under Section 3(g) of [the Gender-Ideology] Order and Section 4 of [the Denial-of-Care] Order[.]" *Id.* Dkt. #61 p.1. The TRO further ordered HHS and NIH to "release any disbursements on funds that were paused due to the Executive Order." *Id.* p.2. For avoidance of any doubt, the Maryland TRO included a prohibition on taking "any steps to implement, give effect to, or reinstate [the enjoined conduct] under a different name." *Id.* p.3.

That order was in effect as of the February 28 termination and remained in effect until March 4, when the court entered a PI. *Id.,* Dkt. #116. The PI ordered the same relief, enjoining the federal government from withholding funds pursuant to the executive order, ordering them to pay any disbursements that had been paused pursuant to the orders, and forbidding the government from trying to skirt the injunction by implementing the policies underlying the executive orders under a different guise. *Id.* pp.1-2. Just as HHS' actions here violate this Court's order, so too they violate the substantially similar order of the Maryland district court.

PLS.' MOT. FOR CONTEMPT,
SHORTENED TIME, AND
ATTORNEYS' FEES
NO. 2:25-cv-00244-LK

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    On top of that, NIH's cancellation violates another injunction entered by the Rhode

2    Island District Court in *New York v. Trump*, No. 25-cv-39-JJM-PAS (D.R.I.). In that case,

3    Washington, along with several other states, sued the President, and numerous federal

4    agencies—including HHS—challenging their plan to freeze federal financial aid pursuant to an

5    OMB directive and multiple executive orders, including the Gender-Ideology Order. On

6    January 31, the Rhode Island District Court entered a temporary restraining order, enjoining

7    Defendants from "paus[ing], freez[ing], imped[ing], block[ing], cancel[ing], or terminat[ing]

8    Defendants' compliance with awards and obligations to provide federal financial assistance to

9    the States" and provided "Defendants shall not impede the States' access to such awards and

10    obligations, except on the basis of the applicable authorizing statutes, regulations, and terms."

11    *Id.*, Dkt. #50 p.11.

12    Following the Court's order, however, some defendants continued to withhold funding

13    from Washington and other plaintiff states. *Id.*, Dkt. #66 pp.7-8. Defendants' intransigence

14    forced the plaintiff states to file a motion to enforce the Court's judgment. *Id.* The court granted

15    the motion, reiterating that "[t]he plain language" of its TRO "prohibits all categorical pauses or

16    freezes in obligations or disbursements . . . based on the President's 2025 Executive Orders."

17    *Id.*, Dkt. #96 p.3. To ensure there was no confusion about what its order covered, the Court

18    specifically directed defendants "not to pause any funds based on pronouncements pausing

19    funding incorporated into the OMB Directive," including the Gender-Ideology Order, and to

20    "resume the funding of institutes and other agencies of the Defendants (*for example the National

21    Institute[s] for Health*) that are included in the scope of the Court's TRO." *Id.* pp.4-5

22    (emphasis added). And on March 6, the Court granted the States' preliminary injunction, which

23    further makes clear that HHS cannot pause federal funds based on executive orders underlying

24    the OMB directive, including the Gender-Ideology Order. *Id.*, Dkt. #161 p.44.

25

26

9

1   The court's orders remain in effect. And they plainly forbid HHS from implementing the

2   Gender-Ideology Order to terminate pending grants. Defendants' violation of a whole swatch of

3   federal court orders nationwide is strong evidence of its contempt.

4   **D.    In the Alternative, This Court Should Issue an Order to Show Cause and Permit Expedited Discovery**

5   If this Court concludes it does not yet have sufficient facts to find Defendants in contempt,

6   it should at the very least issue an order to show cause and permit Plaintiffs expedited discovery to

7   test Defendants' assertions concerning the grant termination.

8   There is no dispute that, if NIH relied on the enjoined Executive Orders in any part when

9   terminating the grant at issue here, that termination would be a violation of this Court's orders.

10   Defendants' defense boils down to the assertion that, even though there is smoke everywhere, there

11   is no fire because NIH was exercising its "own independent authorities and NIH Grants Policy

12   Statement," and not "enforc[ing]" either of the Executive Orders enjoined by this Court.

13   McGinty Ex. 3 p.3. But NIH has only its own self-serving say-so to substantiate this claim, and it

14   is undermined by *all* of the available information. For example, a chart provided to

15   Physician Plaintiff 1 appears to show NIH's decisional flow-chart for "withholding future funding"

16   for grants based on "EO 14168"—the Gender-Ideology Order. *Id.* Ex. 6. The chart makes decisions

17   about whether any further funding is "possible" turn on whether funds are used for "gender-

18   affirming care" or "Gender identity development." *Id.* A similar practice was reported by the

19   science journal Nature. *Id.* Ex. 5. And a posting on the social media site X by DOGE highlighting

20   multiple terminated NIH grants (including the grant at issue in this motion) transparently relates to

21   recently issued Executive Orders, whether the Gender-Ideology Order, Denial-of-Care Order or

22   E.O. 14,151 ("Ending Radical and Wasteful Government DEI Programs and Preferencing"). The

23   face of the termination letters prove, by clear and convincing evidence, that the termination violates

24   this Court's orders. But, if this Court is not yet persuaded, then Plaintiffs must have discovery to

25   probe behind the curtain of Defendants' conclusory statements so that they may present evidence

26

PLS.' MOT. FOR CONTEMPT,
SHORTENED TIME, AND
ATTORNEYS' FEES
NO. 2:25-cv-00244-LK

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

at a show cause hearing.

**E.      Good Cause Supports Bringing Defendants into Compliance on Shortened Time**

"[A] district court has broad discretion to manage its own calendar." *United States v. Batiste*, 868 F.2d 1089, 1091 n.4 (9th Cir. 1989) (citing numerous cases). A court may modify the deadlines to brief and hear a motion "when a court order—which a party may, for good cause, apply ex parte—sets a different time." Fed. R. Civ. P. 6(c)(1)(C)[2]. Here, good cause exists to set an expedited briefing schedule for several reasons.

First, as set forth above, Defendants are in violation of multiple orders issued by multiple federal courts. Given the seriousness of this allegation, this issue should be heard and resolved on an expedited basis. Moreover, HHS' termination of the grant harms transgender and gender-diverse youth. Ahrens ¶¶13-14, 16. It casts serious doubt on the futures of researchers whose careers depends on this funding. *Id.* ¶15. Immediate review is necessary to relieve the chaos caused by HHS' contemptuous actions. Further, expedited resolution is necessary to prevent harm to other medical researchers and institutions. Until this motion is resolved, Defendants will continue to illegally terminate medical research grants involving gender-affirming care or gender-identity development based on their own self-serving reading of this Court's orders. Expedited resolution of this motion will minimize the number of medical research grants that are interrupted, defunded, or entirely terminated. Given the importance of the issues at stake and the significance of the medical research that Defendants are seeking to derail, there is good cause for the Court to order expedited briefing on Plaintiffs' contempt motion. Accordingly, Plaintiffs respectfully propose the following: Defendants' response due on Tuesday, March 12; Plaintiffs' reply due on Wednesday, March 13; and a hearing on Friday, March 14.[3]

---

[2] For purposes of this request, Plaintiffs are relying on the Court's inherent authority to secure compliance with its orders and not any entitlement in the Local Civil Rules. *See* Local Rules W.D. Wash. LCR 6(b).

[3] Defendants oppose the instant motion for contempt, as well as Plaintiffs' request to shorten time. But to the extent the Court does shorten time, Defendants request their response be due on March 13, and request leave to appear by video or telephone conference at any hearing set by the Court. McGinty Ex. 4. Plaintiffs do not oppose remote appearance by Defendants but request the opportunity to appear in person at any hearing.

PLS.' MOT. FOR CONTEMPT,
SHORTENED TIME, AND
ATTORNEY'S FEES
NO. 2:25-cv-00244-LK

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

**F.    The Court Should Award Fees Resulting from This Motion**

In addition to ordering immediate compliance with its orders, the Court should grant the Washington its attorneys' fees spent bringing Defendants into compliance. The Court may use its civil contempt authority to "compensate the complainant for losses sustained." *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)). Attorneys' fees is a classic form of compensatory civil sanctions. *See, e.g.*, *Oracle USA, Inc. v. Rimini Street, Inc.*, 81 F.4th 843, 859 (9th Cir. 2023). "District courts have broad discretion to determine the reasonableness of [compensatory contempt] fees." *Black Lives Matter Seattle-King Cnty. v. City of Seattle*, 516 F. Supp. 3d 1202, 1211 (W.D. Wash. 2021).

To date, Washington has incurred $17,643.55 in securing Defendants' compliance with this Court's orders.[4] Bowers ¶ 11. Washington calculated its fees using the lodestar method relied on by this Court for contempt fees. *Black Lives Matter*, 516 F. Supp. 3d at 1211-12, 1216 (awarding $81,997.13 in fees). Because its fees are reasonable, the Court should award them to "compensate [Washington] for [Defendants'] contemptuous conduct." *Oracle USA*, 81 F.4th at 858 (citation omitted).

## IV.    CONCLUSION

The Court should grant Plaintiffs' motion.

DATED this 6th day of March 2025.

I certify that this memorandum contains 4,179 words, in compliance with the Local Civil Rules.

NICHOLAS W. BROWN
Attorney General of Washington

*/s/ William McGinty*
WILLIAM MCGINTY, WSBA #41868
CYNTHIA ALEXANDER, WSBA #46019

---

[4] Washington will supplement these figures on reply, including timesheets complying with this Court's standing order. Washington will waive time spent preparing for and attending any hearing on this motion, such that the record on its fee request will be complete at the close of briefing.

PLS.' MOT. FOR CONTEMPT,
SHORTENED TIME, AND
ATTORNEYS' FEES
NO. 2:25-cv-00244-LK

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

TERA HEINTZ, WSBA #54921
ANDREW R.W. HUGHES, WSBA #49515
NEAL LUNA, WSBA #34085
CRISTINA SEPE, WSBA #53609
LUCY WOLF, WSBA #59028
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(360) 709-6470
William.McGinty@atg.wa.gov
Cynthia.Alexander@atg.wa.gov
Tera.Heintz@atg.wa.gov
Andrew.Hughes@atg.wa.gov
Neal.Luna@atg.wa.gov
Cristina.Sepe@atg.wa.gov
Lucy.Wolf@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

*/s/ Colleen Melody*
LAURYN K. FRAAS, WSBA #53238
COLLEEN MELODY, WSBA #42275
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(360) 709-6470
Lauryn.Fraas@atg.wa.gov
Colleen.Melody@atg.wa.gov
*Attorneys for Physicians Plaintiffs 1-3*


KEITH ELLISON
Attorney General of Minnesota

*/s/ James W. Canaday*
JAMES W. CANADAY (admitted pro hac vice)
Deputy Attorney General
445 Minnesota St., Ste. 600
St. Paul, Minnesota 55101-2130
(651) 757-1421
james.canaday@ag.state.mn.us
*Attorneys for Plaintiff State of Minnesota*


DAN RAYFIELD
Attorney General of Oregon

*/s/ Allie M. Boyd*
ALLIE M. BOYD, WSBA #56444
Senior Assistant Attorney General
Trial Attorney
1162 Court Street NE

Salem, OR 97301-4096
(503) 947-4700
allie.m.boyd@doj.oregon.gov
*Attorneys for Plaintiff State of Oregon*


PHIL WEISER
Attorney General of Colorado

*/s/ Shannon Stevenson*
SHANNON STEVENSON (admitted pro hac vice)
Solicitor General
Office of the Colorado Attorney General
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
shannon.stevenson@coag.gov
*Attorneys for Plaintiff State of Colorado*

PLS.' MOT. FOR CONTEMPT,
SHORTENED TIME, AND
ATTORNEYS' FEES
NO. 2:25-cv-00244-LK

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744