The Honorable Lauren J. King

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD TRUMP, in his official capacity as President of the United States, et al., <br><br> Defendants. | No. 2:25-cv-00244-LJK <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONTEMPT, SHORTENED TIME, AND ATTORNEY'S FEES** <br><br> Noted For Consideration: <br> March 14, 2025 |

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CONTEMPT, SHORTENED TIME, AND ATTORNEY'S FEES
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

## INTRODUCTION

The grant termination challenged in Plaintiffs' motion for contempt does not violate this Court's orders. The National Institutes of Health (NIH), a subagency of the U.S. Department of Health and Human Services (HHS), used preexisting authority to terminate funding for a research project developing an online interactive sexual education tool. NIH's decision in no way implicates this Court's TRO and PI to the extent they enjoined the implementation and enforcement of Section 4 of EO 14,187, 90 Fed. Reg. 8771, entitled *Protecting Children from Chemical and Surgical Mutilation* (Protecting Children EO). That EO directed agencies to take steps to ensure that medical institutions end the "chemical and surgical mutilation" of children, which includes puberty blockers, cross-sex hormones, and surgical interventions—not online sexual health education.

Nor does the underlying research involve the focus of Plaintiffs' challenge to, or this Court's enjoinment of, Sections 3(e) and 3(g) of EO 14,168, *Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* (Defending Women EO). Plaintiffs challenged that EO, and this Court enjoined it, only to the extent it conditions or withholds "federal funding based on the fact that a health care entity or health professional provides gender-affirming care within the Plaintiff States." PI at 53, ECF No. 233. But research into an online, interactive sexual education tool does not provide gender-affirming care. Research and education are not care. And the only applicable definition of "gender-affirming care"—in the Protective Children EO—defines the phrase as encompassing only certain pharmaceutical and surgical interventions, which are very different from the online tool being developed through this grant. Plaintiffs' briefing and this Court's opinion confirm that those pharmaceutical and surgical interventions were the focus of this case, and the PI is

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CONTEMPT, SHORTENED TIME, AND ATTORNEY'S FEES
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

properly read to enjoin only those aspects of "gender-affirming care." In any event, Defendants' actions were at least taken based on a good-faith and reasonable interpretation of this Court's orders.

Plaintiffs wrongly rely on Defendants' purported violation other courts' orders in their motion. Those orders are not properly before this Court, and Defendants did not violate them in any event. Plaintiffs also improperly move for expedited discovery. And, even if Plaintiffs' contempt motion had merit (and it does not), their request for attorney's fees is barred by sovereign immunity and cannot reasonably be assessed on the merits without submission of further materials.

For these reasons, Plaintiffs' motion for contempt should be denied.

## BACKGROUND

This Court is familiar with the background of this case, so Defendants will focus here on the facts relevant to the instant motion.

***The EOs.*** Plaintiffs challenge Section 4 of the Protecting Children EO and Sections 3(e) and 3(g) of the Defending Women EO. Section 4 of the Protecting Children EO directs agencies that provide research or educational grants to medical institutions to, "consistent with applicable law . . . immediately take appropriate steps to ensure that institutions receiving Federal research or education grants end the chemical and surgical mutilation of children." EO 14,187 § 4.

Section 2(c) of the EO defines "chemical and surgical mutilation" as:

> the use of puberty blockers, including GnRH agonists and other interventions, to delay the onset or progression of normally timed puberty in an individual who does not identify as his or her sex; the use of sex hormones, such as androgen blockers, estrogen, progesterone, or testosterone, to align an individual's physical appearance with an identity that differs from his or her sex; and surgical procedures that attempt to transform an individual's physical appearance to align with an identity that

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CONTEMPT, SHORTENED TIME, AND ATTORNEY'S FEES
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

differs from his or her sex or that attempt to alter or remove an individual's sexual organs to minimize or destroy their natural biological functions.

EO 14,187 § 2(c). Section 2(c) goes on to state: "This phrase sometimes is referred to as 'gender affirming care.'" *Id.*

Section 3 of the Defending Women EO, in relevant part, directs agencies to "take all necessary steps, as permitted by law, to end the Federal funding of gender ideology," *id.* § 3(e), including by "assess[ing] grant conditions and grantee preferences and ensur[ing] grant funds do not promote gender ideology," *id.* § 3(g).

**TRO and PI.** On February 14, 2025, this Court entered a TRO. TRO Order, ECF No. 158. The order, in relevant part, "fully enjoined" Defendants "from enforcing or implementing Section 4 of [EO] 14,187 within the Plaintiff States." *Id.*

This Court entered a PI on the evening of February 28, 2025. The PI order "fully enjoined" all Defendants except the President "from enforcing or implementing Section 4 of [EO] 14,187 within the Plaintiff States." PI at 53. The order also "fully enjoined" Defendants "from enforcing Sections 3(e) or 3(g) of [EO] 14,168 to condition or withhold federal funding based on the fact that a health care entity or health professional provides gender-affirming care within the Plaintiff States." *Id.*

**NIH Grant.** On February 28, 2025, NIH terminated a research grant previously awarded to Seattle Children's Hospital (SCH). *See* NIH Grant Termination Letter, Ahrens Decl. Ex. A, ECF No. 244-1. NIH later provided a revised Notice of Award reflecting the termination and providing $40,091 in support of "patient safety and orderly closeout of the project." Ahrens Decl. Ex. B at 6, ECF No. 244-2. The grant had funded a study titled "An intervention to promote healthy relationships among transgender and gender expansive youth." NIH RePORT – RePORTER, https://perma.cc/MP9E-Q587 (Project Summary). NIH began funding the

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CONTEMPT, SHORTENED TIME, AND ATTORNEY'S FEES
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

project in 2022 and provided $216,453 in funding for the project in fiscal year 2023. *Id.* The study was designed to (1) "engage a Youth Advisory Board and Community Consultants to co-design a fully functional online interactive sexual education tool . . . with TGE youth," (2) "conduct cognitive interviews to refine select survey tools and ensure gender-affirming intervention effect measurement in a future" research project, and (3) "conduct an unbalanced, randomized controlled pilot study with 40 youth . . . to refine content and establish feasibility of the [tool] and data collection protocols/procedures." *Id.* The study sought the following outcomes: "intervention usability/feasibility/appropriateness/acceptability and study feasibility." *Id.* NIH had issued the grant under its discretionary authority in 42 U.S.C. § 241 and 42 C.F.R Part 52 and terminated it using authority under 2 C.F.R. § 200.340(a)(2). Ahrens Decl. Ex. B at 1.

***Plaintiffs' Motion.*** On March 6, 2025, Plaintiffs filed a motion for contempt, shortened time, and attorney's fees. ECF No. 243. Plaintiffs claim that NIH's grant termination violates the TRO, the PI, and other court's orders and request expedited discovery and attorney's fees.[1]

### STANDARD OF REVIEW

Civil contempt is a "severe remedy." *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019). It "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006) (quotation omitted). Plaintiffs must prove their burden with "clear and convincing evidence." *Labor/Cmty. Strategy Ctr. v. Los Angeles Cty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009).

---

[1] SCH, an independent hospital, does not join this motion or assert any harms on behalf of itself. *See generally* Pls.' Mot.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CONTEMPT, SHORTENED TIME, AND ATTORNEY'S FEES
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

There is no contempt when the party's action "appears to be based on a good faith and reasonable interpretation of the court's order." *In re Dual-Deck*, 10 F.3d at 695 (citations omitted). Further, "civil contempt should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Taggart*, 587 U.S. at 561 (2019). "This standard is generally an objective one." *Id.*

## ARGUMENT

### I.  DEFENDANTS HAVE COMPLIED WITH THIS COURT'S ORDERS.

NIH terminated this grant using its preexisting authority, without reference to either EO. *See* Grant Termination Letter (terminating grant under 2 C.F.R.§ 340(a)(2)). Regardless, NIH complied with the TRO and PI because the termination (1) did not implement Section 4 of the Protecting Children EO by enforcing or implementing any steps to ensure that SCH end the "chemical and surgical mutilation of children" as defined in the Protecting Children EO and (2) did not enforce Sections 3(e) and 3(g) of the Defending Women EO by withholding funding "based on the fact that a health care entity or health professional provides gender-affirming care" as the PI uses the phrase. Plaintiffs' contempt motion is thus not based on the text of this Court's orders or the challenged EO and instead seeks to place undefined restrictions on the government that have not been the subject of this litigation. In any event, contempt should at least be denied because Defendants' actions were based on a good-faith and reasonable interpretation of this Court's orders.

### A.  Defendants complied with the TRO.

NIH's grant termination did not violate the TRO's prohibition on "enforce[ment] or implement[ation of] Section 4 of Executive Order 14,187 within the Plaintiff States." TRO at 1. Section 4 directed agencies to take appropriate steps to "ensure that institutions receiving

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CONTEMPT, SHORTENED TIME, AND ATTORNEY'S FEES
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

Federal research or education grants end the chemical and surgical mutilation of children." The EO defines "chemical and surgical mutilation" as puberty blockers, hormone therapy, and two kinds of surgical procedures—what this Court refers to as "Listed Services." TRO Mem. Op at 4, ECF No. 162. But the terminated grant involved none of these treatments. Rather, it had funded development of an online interactive sexual education tool. *See* Project Summary; Ahrens Decl. And the termination does not prevent medical institutions, including SCH, from providing any of the Listed Services.

Plaintiffs attempt to add nonexistent provisions into the Protecting Children EO by claiming that the research project, designed to test whether an online tool "improved sexual health education and counseling," is somehow "chemical and surgical mutilation." Pls.' Mot. at 6. That phrase is clearly defined in Section 2(c) to encompass only the Listed Services, not the research funded by this grant or even the underlying education and counseling the project was collecting data to improve. *See* EO 14,187 § 2(c).

Plaintiffs next claim that the TRO was violated because SCH "provides gender-affirming care of precisely the kind targeted by the Denial-of-Care Order." Pls.' Mot. at 6. But the termination letter provides no reason to believe that NIH terminated the grant because SCH performs any of the Listed Services. *See* Grant Termination Letter. And Plaintiffs provide nothing to support their insinuation that NIH terminated the grant for any reason other than the stated purpose—which was because "[r]esearch programs based on gender identity" "no longer effectuate[] agency priorities." Grant Termination Letter at 1; *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) ("The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court."). Indeed, SCH continues to receive copious NIH research funding, undermining Plaintiffs'

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CONTEMPT, SHORTENED TIME, AND ATTORNEY'S FEES
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

speculation that the agency is withholding funding to tacitly force the hospital to refrain from providing the Listed Services despite this Court's order. *See* NIH, RePORT, RePORTER, *SCH Search Results*, https://reporter.nih.gov/search/lFzuWhiOWUie121QPESo-g/projects?org=SEATTLE%20CHILDREN%27S%20HOSPITAL&agencies=NIH;FIC;NCATS;NCCIH;NCI;NEI;NHLBI;NIA;NIAID;NIAMS;NICHD;NIDA;NIDCR;NIDDK;NIEHS;NIGMS;NIMH;NIMHD;NINDS;NINR;OD&projects=Active (listing 175 currently active NIH-funded research projects for SCH); *see also, e.g.*,: TAGGS, *Award Information*, https://perma.cc/JK5Q-T3A7 (NIH award of $415,863 issued on the day after NIH de-obligated $200,453 for the grant at issue here). Plaintiffs' contention that "the termination produces the exact result the TRO foreclosed," Pls.' Mot. at 6, is belied by the EOs' and the TRO's text, the termination letter itself, and the other grants SCH continues to receive.

### B. Defendants are complying with the PI.

NIH's grant termination also complies with the PI. To begin, the PI's enjoinment of Section 4 of the Protecting Children EO uses language identical to the TRO, and the grant termination therefore complies with the PI's enjoinment of Section 4 for the same reasons. *See supra* sec.I.A.

The grant termination also complies with the PI's enjoinment of Section 3 of the Defending Women EO. The PI enjoins Defendants "from enforcing Sections 3(e) or 3(g) of Executive Order 14,168 to condition or withhold federal funding based on the fact that a health care entity or health professional provides gender-affirming care within the Plaintiff States." PI at 53. NIH's grant termination was not "based on the fact that a health care entity or health professional provides gender-affirming care." That is so for two reasons.

First, NIH terminated a *research* grant, not a grant for the provision of care. Research definitions reflect the concept that research is a process focused on producing generalizable

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CONTEMPT, SHORTENED TIME, AND ATTORNEY'S FEES
State of Washington, et al. v. Trump, et al., No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

knowledge. *See* 45 CFR § 46.102(l) ("Research means a systematic investigation, including research development, testing, and evaluation, designed to develop or contribute to generalizable knowledge. […]".); *cf.* 45 CFR § 164.501. Care, by contrast, is defined in this context as "the services rendered by members of the health professions for the benefit of a patient." *Care*, DORLAND'S MED. DICTIONARY, Ex. A *see also* Ahrens Decl. ¶ 8 (acknowledging that the research project was "for the purposes of research," not care); Project Summary (describing the project as first designing an "online interactive sexual health intervention tool," then conducting "cognitive interviews to refine select survey tools" and then conducting a "pilot study . . . to refine content and establish feasibility of the [tool] and data collection protocols/procedures").

The Ahrens Declaration's conflation of research and care in describing the pilot-program aspect of the research project, Ahrens Decl. ¶ 8, ignores the differing purposes of research and care. Testing the online sexual education tool provides information about its "feasibility . . . and data collection protocols/procedures." Project Summary. It does not provide services for the benefit of the human subjects participating in the experiment, even if that knowledge might later be used for the benefit of future patients. Indeed, to claim that a research study provides care ignores the real possibility that the "development and administration" of a heretofore-untested tool on human subjects, Ahrens Decl. ¶ 8, may reveal that the tool is not, in fact, efficacious.

At most, the underlying subject of research in this project is education, not care. The researchers were developing an "online tool" for "education/skills delivery" to trans-identifying youth. Ahrens Decl. ¶ 7; *see* OED, *Education*, hhttps://perma.cc/SGA8-LS3W (defining the

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CONTEMPT, SHORTENED TIME, AND ATTORNEY'S FEES
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

current use of the term as "[t]he systematic instruction, teaching, or training in various academic and non-academic subjects given to or received by a child").

Second, the research project, even if understood to provide "care," does not provide the gender-affirming care at issue in this case. Plaintiffs adopt the broadest reading of the term "gender affirming care" to argue that research into an online sexual health education tool constitutes "gender affirming care." Pls.' Mot. at 6. But the Supreme "Court has often admonished that general language in judicial opinions should be read as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering." *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 278 (2023) (quotation omitted). The research funded by the now-terminated grant is "quite different" from the care the parties and this Court were concerned about here.

For starters, the only applicable definition of "gender-affirming care" is in Section 2(c) of the Protecting Children EO, which defines the term as encompassing only the Listed Services—puberty blockers, hormone therapy, and certain surgical procedures. EO 14,1187 § 2(c). This Court did not define the term differently. *See generally*, PI. Rather, this Court observed that Plaintiffs' challenge to the Defending Women EO was based on Plaintiffs' provision of the kind of "gender affirming care" discussed in the Protecting Children EO, noting that "[b]ecause the Listed Services help transgender patients align their physical appearance with their gender identity, it is beyond dispute that they 'promote gender ideology'" as the Defending Women EO uses that term. PI at 9 n.6.

Indeed, this Court's finding that Plaintiffs were injured by the EOs relied on equating "gender affirming care" with the term's definition in the Protecting Children EO. "When words

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CONTEMPT, SHORTENED TIME, AND ATTORNEY'S FEES
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

have several plausible definitions, context differentiates among them." *United States v. Hansen*, 599 U.S. 762, 775 (2023). This Court concluded that Plaintiffs "provide the Listed Services when they believe such Services are medically appropriate . . . . Therefore, Plaintiffs have shown they intend to engage in a course of conduct in conflict with the" EOs. PI at 9; *see also id.* at 12 ("The record shows that enforcement of . . . Sections 3(e) and 3(g) of the Gender Ideology EO will cause one of two concrete harms to Plaintiffs: they will either (1) be forced to halt any treatment or funding for gender dysphoria or (2) lose federal funding")[2]; Pls.' Mem. in Support of PI at 11 (focusing on the "puberty blockers, testosterone, testosterone suppression, and estrogen" used in "gender-affirming care"); *id.* at 13; Am. Compl. ¶¶ 66–96, ECF No. 164.

This Court therefore enjoined enforcement of Sections 3(e) or 3(g) of the Defending Women EO only as to "gender-affirming care" as that term is used in the Protecting Children EO.

### C. In any event, Defendants' actions were based on a good-faith and reasonable interpretation of this Court's orders.

If this Court nonetheless intended to enjoin NIH's grant termination through the TRO or PI, Plaintiffs' contempt motion should be denied because Defendants' actions were based on a good-faith and reasonable interpretation of both orders.

As explained above, there is no obvious connection between research into an online interactive sexual education tool and the "chemical and surgical mutilation" procedures at issue in Section 4 of the Protecting Children EO. *Lab./Cmty. Strategy Ctr. v. LA Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123–24 (9th Cir. 2009) (concluding there was no evidence that the defendant's conduct "was not based on a good faith and reasonable interpretation of the

---

[2] The online-tool-development does not treat gender dysphoria. *See* PI at 26–28 (describing various treatments for gender dysphoria); *compare with* Project Summary; Ahrens Decl. ¶ 6.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CONTEMPT, SHORTENED TIME, AND ATTORNEY'S FEES
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

order" when it was "not immediately obvious whether" the defendant was required to act a certain way). And it was reasonable for Defendants to understand this Court's enjoinment of Section 3 of the Defending Women EO "based on the fact that a health care entity or health professional provides gender-affirming care," PI at 53, to exclude research, education tools, and care other than the Listed Services. At most, "there is a fair ground of doubt as to the wrongfulness of the defendant's conduct."[3] *Taggart*, 587 U.S. at 561.

## II. DEFENDANTS HAVE NOT VIOLATED OTHER COURTS' ORDERS, WHICH ARE NOT PROPERLY AT ISSUE HERE.

Plaintiffs wrongly rely on the purported violation of the orders of other courts. As an initial matter, Plaintiffs may not seek relief from this Court on the basis of alleged contempt of another court. "[C]ivil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994). This Court should therefore decline Plaintiffs' invitation to engage in "the anomalous proceeding of one court taking cognizance of an alleged contempt committed before and against another court, which possessed ample powers, itself to take care of its own dignity and punish the offender." *Ex parte Bradley*, 74 U.S. 364, 372 (1868).

---

[3] Defendants have also not violated the PI by issuing the notices Plaintiffs mention in the introduction and background of their contempt motion, but not in their argument. Pls.' Mot. at 1, 3–4. The documents merely inform interested parties of HHS's concerns about the proliferation in use of puberty blockers, cross-sex hormones, and surgery to treat children with gender dysphoria and certain research and data on the potentially harmful effects of such interventions. And they explain that, moving forward, the agencies may take action, consistent with applicable law, to protect children from these interventions. The documents do not "condition or withhold federal funding." PI at 53. They do not signal agency action that will condition or withhold funding "based on the fact that a health care entity or health professional provides gender-affirming care." *Id*. And they were not issued under the enjoined provisions of the EOs.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CONTEMPT, SHORTENED TIME, AND ATTORNEY'S FEES
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

In any event, Defendants have not violated the orders Plaintiffs cite. Defendants have not violated the *PFLAG v. Trump* TRO for reasons similar to those set out in Part I, *supra*—the NIH grant termination did not "withhold[] federal funding based on the fact that a healthcare entity or health professional provides gender affirming medical care to a patient under the age of nineteen under Section 3(g) of [EO] 14168 and Section 4 of [EO] 14187." Order at 1, *PFLAG v. Trump*, No. 8:25-cv-337 (D. Md. Feb. 13, 2025), ECF No. 61.[4] The NIH grant termination did not violate the *New York v. Trump* court's orders either. Among other reasons, that court's orders did not bar Defendants from "limit[ing] access to federal funds on the basis of the applicable authorizing statutes, regulations, and terms," such as those relied on in the grant termination letter. Order at 1, *New York v. Trump*, No. 1:25-cv-39 (D.R.I. Feb. 12, 2025), ECF No. 107; *see also* Mem. & Order at 42–43, *New York v. Trump*, No. 1:25-cv-39 (D.R.I. Mar. 6, 2025) ("*New York* PI"), ECF No. 161 (similar).

### III.   PLAINTIFFS' ADDITIONAL REQUESTS SHOULD BE DENIED.

#### A. Discovery is inappropriate.

The Supreme Court has "explained that an objective, rather than subjective, standard is more appropriate in determining whether [a party] could be held in civil contempt." *In re Taggart*, 980 F.3d 1340, 1347 (2020).[5] Whether the grant termination violated this Court's

---

[4] While the parties in *PFLAG* are litigating the plaintiffs' motion to enforce that court's PI, plaintiffs there have not claimed that the NIH grant termination violated any order. *See* Pls.' Emergency Mot. to Enforce PI, *PFLAG v. Trump*, No. 8:25-cv-337 (D. Md. Mar. 7, 2025), ECF No. 118.

[5] The limited circumstances where subjective intent may be relevant, such as "a party's record of continuing and persistent violations and persistent contumacy," *Taggart*, 587 U.S. at 562, do not include this case.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CONTEMPT, SHORTENED TIME, AND ATTORNEY'S FEES
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-8573

orders, and whether Defendants' position that it did not is reasonable, can and should be determined on the face of the termination letter, and discovery is inappropriate.

Plaintiffs also baselessly claim that "[t]here is no dispute that, if NIH relied on the enjoined [EOs] in any part when terminating the grant at issue here, that termination would be a violation of this Court's orders." Mot. at 10. This Court only enjoined a minority of provisions in those EOs, and Defendants are therefore not enjoined from relying on those EOs "in any part." Moreover, Defendants are only enjoined from "enforcing" sections 3(e) and 3(g) of the Defending Women EO "to condition or withhold federal funding based on the fact that a health care entity or health professional provides gender-affirming care within the Plaintiff States." PI at 53. Defendants did not enforce those sections in such a way, and it is therefore irrelevant whether they relied on those sections for any other purpose.

Plaintiffs' citation to an unidentified "chart received by Physician Plaintiff 1 from a colleague," McGinty Decl. ¶ 7, is not a basis for discovery either. Plaintiffs do not explain why the existence of such a chart supports their motion, and such a chart's existence does not go to whether the agency violated this Court's orders, which supersede any conflicting actions a Defendant agency may have otherwise contemplated.

### B. The Court should not award attorneys' fees.

Even if Plaintiffs' contempt motion had merit (and it does not), sovereign immunity precludes attorneys' fees. "Money awards can be imposed against the United States only if there has been an express waiver of sovereign immunity," and the Ninth Circuit has not "found[] anything which suggests that the United States expressly has waived its sovereign immunity with respect to contempt sanctions." *Barry v. Bowen*, 884 F.2d 442, 443 (9th Cir. 1989). Although the Circuit later stated that courts have a supervisory power to impose

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CONTEMPT, SHORTENED TIME, AND ATTORNEY'S FEES
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

monetary sanctions against the government "to remedy a violation of recognized . . . constitutional rights," *United States v. Woodley*, 9 F.3d 774, 782 (9th Cir. 1993), the Circuit's prior decision in *Barry* controls. *See United States v. Hardesty*, 977 F.2d 1347, 1347 (9th Cir. 1992). *Woodley*'s exception to sovereign immunity would not be implicated here anyway, because Plaintiffs have not established that the purported violation of this Court's orders was a constitutional violation, and their constitutional rights are not implicated here because SCH is a private institution.

Finally, Defendants cannot adequately address the reasonableness of Plaintiffs' fee request because Plaintiffs have not yet provided their timesheets. *See* Pls.' Mot. at 12. Plaintiffs' supporting declaration provides only block-billed entries. *See* Bowers Decl., ECF No. 246. This is insufficient to permit a determination whether Plaintiffs have substantiated their request. *See Century 21 Real Estate LLC v. William Clement Co.*, 2014 WL 2472471 (C.D. Cal. May 30, 2014) ("[Plaintiff] submits only a blanket declaration justifying its fees, with no breakdown of the hours worked by specific personnel on specific tasks. This lacks sufficient specificity for the Court to award fees."). If this Court decides to award attorneys' fees, Defendants request the opportunity to address the appropriate fee amount after Plaintiffs complete their submission.

## CONCLUSION

For these reasons, this Court should deny Plaintiffs' contempt motion.

DATED: March 13, 2025          Respectfully submitted,

                               YAAKOV M. ROTH
                               Acting Assistant Attorney General
                               Civil Division

                               MICHELLE BENNETT
                               Assistant Branch Director
                               Federal Programs Branch

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CONTEMPT, SHORTENED TIME, AND ATTORNEY'S FEES
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

                    */s/ Vinita B. Andrapalliyal*
                    VINITA B. ANDRAPALLIYAL
Senior Counsel (NY Bar Reg. No. 5231667)
CHRISTIAN S. DANIEL
Trial Attorney (DC Bar No. 1600226)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel: (202) 305-0845
Fax: (202) 616-8460
vinita.b.andrapalliyal@usdoj.gov
christian.s.daniel@usdoj.gov

*Attorneys for Defendants*

*I certify that this memorandum contains 4198 words, in compliance with the Local Civil Rules.*

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CONTEMPT, SHORTENED TIME, AND ATTORNEY'S FEES
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LJK

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2025, I electronically filed the foregoing Opposition to Plaintiffs' Motion for Temporary Restraining Order using this Court's CM/ECF system, causing a notice of filing to be served upon all counsel of record.

Dated: March 13, 2025                                    */s/ Vinita. B. Andrapalliyal*
                                                         VINITA B. ANDRAPALLIYAL

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CONTEMPT, SHORTENED TIME, AND ATTORNEY'S FEES

*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902