The Honorable Lauren King

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

STATE OF WASHINGTON, et al.,

Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, et al.,

Defendants.

NO. 2:25-cv-00244-LK

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CONTEMPT, SHORTENED TIME, AND ATTORNEYS' FEES

NOTE ON MOTION CALENDAR:
Friday, March 14, 2025

ORAL ARGUMENT REQUESTED

PLS.' REPLY ISO MOT. FOR CONTEMPT, SHORTENED TIME, AND ATTORNEYS' FEES
NO. 2:25-cv-00244-LK

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Defendants Are in Contempt ..... 1

B. Defendants' Response Shows, at Minimum, Plaintiffs Must Have Discovery ..... 5

C. The Court Should Award Attorneys' Fees ..... 6

III. CONCLUSION ..... 7

PLS.' REPLY ISO MOT. FOR CONTEMPT, SHORTENED TIME, AND ATTORNEYS' FEES
NO. 2:25-cv-00244-LK

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

## I.  INTRODUCTION

This Court determined that the Denial-of-Care and Gender-Ideology Orders unconstitutionally discriminated against transgender Americans and violated separation of powers. But Defendants now claim they can enforce those Orders, as long as they don't explicitly identify them by name and pretend their actions—which just happen to be what the Orders would require—are not based on them. If this were the law, injunctions would be worthless.

Luckily, it is not. At best, Defendants were too cavalier in adopting an extremely narrow, self-serving interpretation of this Court's injunctions. At worst, they intentionally defied the Court. Either way, their conduct undermines this Court's authority and creates the same unconstitutional government action that originally brought Plaintiffs to court. This Court should hold Defendants in contempt.

## II.  ARGUMENT

### A.  Defendants Are in Contempt

Defendants do not deny that this Court's orders enjoin them from defunding institutions providing gender-affirming care because they provide gender-affirming care, and further do not contest that the grant they terminated was provided to an institution providing such care. They argue, however, that their actions are consistent with this Court's injunctions because they terminated the grant not to implement or enforce the enjoined Orders, but because they determined, independently of the Orders, that research involving transgender and gender-diverse people is not worth the federal government's money. Dkt.#253 p.6. And so, they contend, they clawed back more than $200,000 on a grant that only had about $78,000 left (meaning that money would have to be paid back) and terminated a years' long research project that was a few months away from the finish line. This doesn't pass the smell test.

Defendants cannot avoid application of this Court's injunctions by playing games. *See Simon v. City and Cnty. of San Francisco*, 2024 WL 4314207 at *3 (N.D. Cal. Sept. 26, 2024) (holding that party violated injunction where the party's "behavior . . . is the same conduct that

PLS.' REPLY ISO MOT. FOR
CONTEMPT, SHORTENED TIME,
AND ATTORNEYS' FEES
NO. 2:25-cv-00244-LK

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

formed the basis for the Court's injunction, and there can be no question that the conduct violates the spirit of the injunction"). The Court's injunction prevented Defendants from defunding institutions providing gender-affirming care because they provide such care. Dkt.#161 p.27 (finding that "the serious harms caused to transgender youth by depriving them of gender-affirming care" was irreparable injury); Dkt.#233 p.30 (finding that "condition[ing] grant funding *based on* whether grant recipients offer—among other things—gender-affirming services for gender dysphoria" constitutes discrimination subject to heightened scrutiny).

Whether unconstitutional discrimination occurs by reason of the challenged Orders or some "new" decision clearly influenced by them—as Defendants claim—is beside the point. *See F.V. v. Jeppesen*, 466 F. Supp. 3d 1110, 1118 (D. Idaho 2020) (holding injunction against policy prohibiting changing one's sex on a birth certificate applied to newly enacted law accomplishing the same purpose); *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 949 (9th Cir. 2014) (where purpose of "the injunction was to stop [defendant] from attacking the Plaintiffs' vessels," defendant "thwarted that objective by furnishing other . . . entities with the means to do what it could not after the issuance of the injunction"); *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949) ("It does not lie in their mouths to say that they have an immunity from civil contempt because the plan or scheme which they adopted was not specifically enjoined. Such a rule would give tremendous impetus to the program of experimentation with disobedience of the law[.]"). Here, termination of Seattle Children's Hospital's NIH grant directly contravened the purpose of this Court's TRO and PI to prohibit Defendants from financially punishing entities for providing gender-affirming care. That constitutes contempt of Court.

And the connection between the termination of the grant and the enjoined orders is clear based on NIH's own words. NIH terminated the grant because it had to do with "gender identity" (Dkt.#244-1 p.2) and "Transgender issues" (Dkt.#244-2 p.6). Section 4 of the Denial-of-Care Order purports to defund institutions that provide gender-affirming care (Dkt.#17-1 p.3), which

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Seattle Children's Hospital does generally (Dkt.#243 p.8), as well as with the specific funding provided by the terminated grant (Dkt.#244 ¶8). Terminating this grant was without a doubt an implementation and enforcement of Section 4 of the Denial-of-Care Order enjoined by this Court's TRO and PI. Defendants argue that the grant termination cannot be part of the unconstitutional coercion demanded by Section 4 because Seattle Children's Hospital has not yet seen the rest of its NIH grants terminated. Dkt.#253 pp.7-8. This ignores, of course, Defendants' announced plan to do just that, which Defendants do not contest. *See* Dkt.##245-5, 245-6.

The termination violates the injunction against enforcing Sections 3(e) and 3(g) of the Gender-Ideology Order for the same reasons. Defendants' primary argument is that the tool funded by the grant is not "care" of any kind, but is research instead. Dkt.#253 pp.8-11. This is wrong two ways: it misreads the injunction and misunderstands medical research. Defendants were enjoined from conditioning or withholding *any* federal funding, including research funding, "based on the fact that a health care entity or health care professional provides gender-affirming care." Dkt.#233 p.53. The research funded by the grant is research that institutions performing gender-affirming care are uniquely situated to provide. Dkt.#244 ¶¶4-9. In the same way that cancer research can only be conducted by doctors and hospitals that treat cancer patients, gender-affirming care research can only be conducted by doctors and hospitals that provide gender-affirming care. Defendants also misunderstand what medical research is. Dr. Ahrens specifically refutes Defendants' argument, explaining that after the clinical trial patients pilot it, patients in the control group will also be given the care "after the trial ends," conclusively showing that the gender-affirming intervention funded by the grant is for the dual purposes of research and provision of medical care. *Id.* ¶8. For both the test group and eventually the control group, "[r]esearch of this kind *involves the provision of healthcare* as part of the research itself." *Id.*; *see also* National Library of Medicine, *Learn About Studies*, https://clinicaltrials .gov/study-basics/learn-about-studies#ClinicalTrials (last accessed March 13, 2025) (NIH's

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

definition of "intervention study" emphasizes participants "receive one or more intervention/treatment" to evaluate "health-related outcomes").

To avoid this Court's injunction, Defendants argue that "gender-affirming care" as used in the injunction against the Gender-Ideology Order means only the services defined as "chemical and surgical mutilation" in the Denial-of-Care Order. Dkt.#253 pp.10-11. But this ignores the record. Therapists, counselors and others gave testimony to the Court about the gender-affirming care they provide. *See*, *e.g.*, Dkt.#109 ¶6; Dkt.#77 ¶7; Dkt.#73 ¶11; Dkt.#99 ¶¶6-10; Dkt.#108 ¶¶4-7; Dkt.#83 ¶3-9; Dkt.#98 ¶7; Dkt.#106 ¶¶5-12; Dkt.#203 ¶¶5-6. According to Physician Plaintiff 3, "gender-affirming care" "includes mental health support and treatment." Dkt.#15 ¶11. Dr. Shumer, the Plaintiffs' expert, agrees. Dkt.#19 ¶40. This Court has already acknowledged the multifaceted, multidisciplinary approach used by providers of gender-affirming care. Dkt.#233 p.51 (holding that an injunction protecting all providers in the Plaintiff States was necessary because "a multidisciplinary approach is frequently necessary to address patients' medical needs" and "anything less than a statewide injunction would risk impacting some members of patients' care teams, but not others"). The Court's order nowhere is limited to the listed services, and Defendants' effort to so limit it ignores the Court's explicit holding that this *entire* group of providers is being targeted by the federal government, and the entire group therefore needs the Court's protection. *Id.*

Defendants next contend that even though they wrongly construed the scope of this Court's order, their misinterpretation was in good faith. Dkt.#253 pp.11-12. But this Court has rightly noted that the Orders blatantly discriminate against transgender people (Dkt.#233 p.29) and there is no good-faith way to say that "Transgender issues" have no "return on investment," Dkt.#244-2 p.6. Moreover, as detailed above, Defendants' *ex post* interpretation of their obligations would allow them to cancel grants based on *ipse dixit* (and, given their position on discovery, un-examinable) claims that the agency *actually* acted on its own initiative. *See* Dkt.##245-2, 245-5, 245-6, 245-8, 245-9 (tweets, media reporting, and further threats to

PLS.' REPLY ISO MOT. FOR CONTEMPT, SHORTENED TIME, AND ATTORNEYS' FEES
NO. 2:25-cv-00244-LK

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

cancel funding based on the Orders). The United States government should know better. *United States v. Sumitomo Marine & Fire Ins. Co. Ltd.*, 617 F.2d 1365, 1370 (9th Cir. 1980) (chiding the government to "set the example of compliance with Court orders") (cleaned up).

Moreover, even the slightest prodding reveals Defendants' claimed basis for termination is a sham. The termination letter says that the grant is "terminated pursuant to the 2022 [NIH] Grants Policy Statement," but that statement explicitly *prohibits* discrimination on the basis of gender identity. National Institutes of Health, *NIH Grants Policy Statement* at IIA-14 (2022), https://grants.nih.gov/grants/policy/nihgps/nihgps_2022.pdf. There is no policy of denying grant funding to research on "Transgender issues." *Compare id. with* Dkt.#244-2 p.6. And of course, Defendants have no explanation for why this research project was consistent with NIH's priorities when it was first granted, but is suddenly so antithetical to them as to warrant termination and claw-back. Defendants are left with a federal regulation that permits termination "to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340(a)(4). But, as this Court held, stigmatizing gender-affirming care and trying to erase it via funding cuts *is not authorized by law*. *See* Dkt.#233 pp.29-46.

Finally, even leaving all that aside, Defendants unambiguously violated this Court's PI by issuing a notice threatening to terminate funding for, among other things, *children's hospitals* in the Plaintiff States in reliance on the Denial-of-Care Order. Dkt.#243 pp.3-6. Like a bad dog trying to avoid eye contact, Defendants consign their response to a footnote. Dkt.#253 p.12 n.3. They contend the notices "merely inform interested parties of HHS's concerns" about providing gender-affirming care. *Id.* Nonsense. They explicitly threaten institutions with loss of funding if they do not abide by the Orders this Court has enjoined. Dkt.##245-8, 245-9. If this doesn't count as "implementing" the Denial-of-Care Order, it's hard to imagine what does.

**B. Defendants' Response Shows, at Minimum, Plaintiffs Must Have Discovery**

Defendants do not deny that NIH is systematically defunding grants related to gender-affirming care. *See* Dkt.#253 p.14; *see also* Dkt.##245-2, 245-6, 245-7. And they

PLS.' REPLY ISO MOT. FOR CONTEMPT, SHORTENED TIME, AND ATTORNEYS' FEES
NO. 2:25-cv-00244-LK

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

simultaneously argue that discovery to uncover the extent of their law-breaking behavior is not necessary because civil contempt is an objective standard, citing *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019). Dkt.#253 pp.13-14. But *Taggart* held that "a party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable." 587 U.S. at 561. Here, Plaintiffs are not asking for discovery to uncover whether Defendants *believe* they are complying with the Court's orders. Plaintiffs agree Defendants' belief is irrelevant. Plaintiffs are asking for discovery about what steps Defendants are taking to terminate grants that fund research and health care for transgender people, and why they are taking those steps. Because if, as Plaintiffs suspect and as supported by Defendants' recent round of threatening letters, Defendants are embarking on a wholesale defunding of all gender-affirming care in the United States, that would violate this Court's orders, and Plaintiffs need discovery about what they're doing and why.

### C. The Court Should Award Attorneys' Fees

Defendants argue that an award of attorneys' fees are barred by sovereign immunity and cite *Barry v. Bowen*, 884 F.2d 442 (9th Cir. 1989). Dkt.#253 pp.14-15. But *Barry* was limited to coercive contempt sanctions under the Equal Access to Justice Act, not the compensatory award authorized by this Court's inherent powers that Plaintiffs request. *See* 884 F.2d at 443-444. And, Defendants themselves acknowledge that in the Ninth Circuit "[s]overeign immunity does not bar a court from imposing monetary sanctions under an exercise of its supervisory powers." *United States v. Woodley*, 9 F.3d 774, 782 (9th Cir. 1993). They argue that *Woodley*'s holding is limited to sanctions for the violation of constitutional rights, but that isn't so. *Woodley* recognized that exercise of the Court's inherent supervisory power "can be justified only when a *recognized right* has been violated." *Id.* (cleaned up, emphasis added). Here, the recognized rights are those in the Court's TRO and PI, which themselves were grounded in Defendants' violations of the Fifth Amendment and constitutional separation of powers. The Court has ample authority to award Plaintiffs' their attorneys' fees necessary to bring this motion.

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Defendants also complain that timesheets were not provided with Plaintiffs' motion. Comprehensive timesheets were not available prior to this reply and they are provided now. Supp. Decl. Bowers Ex. A. Plaintiffs do not object to a short sur-reply to permit Defendants to respond to Plaintiffs' evidence of attorneys' fees.

## III. CONCLUSION

The Court should grant Plaintiffs' motion.

DATED this 14th day of March 2025.

I certify that this memorandum contains 2,097 words, in compliance with the Local Civil Rules.

NICHOLAS W. BROWN
Washington State Attorney General

*/s/ William McGinty*
WILLIAM MCGINTY, WSBA #41868
CYNTHIA ALEXANDER, WSBA #46019
TERA HEINTZ, WSBA #54921
ANDREW R.W. HUGHES, WSBA #49515
NEAL LUNA, WSBA #34085
CRISTINA SEPE, WSBA #53609
LUCY WOLF, WSBA #59028
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
William.McGinty@atg.wa.gov
Cynthia.Alexander@atg.wa.gov
Tera.Heintz@atg.wa.gov
Andrew.Hughes@atg.wa.gov
Neal.Luna@atg.wa.gov
Cristina.Sepe@atg.wa.gov
Lucy.Wolf@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

PLS.' REPLY ISO MOT. FOR CONTEMPT, SHORTENED TIME, AND ATTORNEYS' FEES
NO. 2:25-cv-00244-LK

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

*/s/ Lauryn K. Fraas*
LAURYN K. FRAAS, WSBA #53238
COLLEEN MELODY, WSBA #42275
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
Lauryn.Fraas@atg.wa.gov
Colleen.Melody@atg.wa.gov
*Attorneys for Physician Plaintiffs 1-3*

KEITH ELLISON
State of Minnesota Attorney General

*/s/ James W. Canaday*
JAMES W. CANADAY (admitted pro hac vice)
Deputy Attorney General
445 Minnesota St., Ste. 600
St. Paul, Minnesota 55101-2130
(651) 757-1421
james.canaday@ag.state.mn.us
*Attorney for Plaintiff State of Minnesota*

DAN RAYFIELD
State of Oregon Attorney General

*/s/ Allie M. Boyd*
ALLIE M. BOYD, WSBA #56444
Senior Assistant Attorney General
Trial Attorney
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700
allie.m.boyd@doj.oregon.gov
*Attorney for Plaintiff State of Oregon*

PHIL WEISER
Attorney General of Colorado

*/s/ Shannon Stevenson*
SHANNON STEVENSON (admitted pro hac vice)
Solicitor General
Office of the Colorado Attorney General
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
shannon.stevenson@coag.gov
*Attorney for Plaintiff State of Colorado*

PLS.' REPLY ISO MOT. FOR CONTEMPT, SHORTENED TIME, AND ATTORNEYS' FEES
NO. 2:25-cv-00244-LK

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744