To:     Agencies, Employees, Contractors, and Grantees
            U.S. Department of Justice
            U.S. Department of Health & Human Services
            U.S. Department of Agriculture
            U.S. Department of Commerce
            U.S. Department of Defense
            U.S. Department of Education
            U.S. Department of Energy
            U.S. Department of Veterans Affairs
            National Aeronautics and Space Administration
            National Science Foundation
            Office of the Director of National Intelligence
            U.S. Agency for International Development
            U.S. Department of Treasury
            U.S. Department of Transportation
            Small Business Administration

From:  Vinita B. Andrapalliyal, Christian S. Daniel, Michelle R. Bennett

Date:   March 20, 2025

Re:     Notice of Court Order, *Washington v. Trump*, 2:25-cv-244-LK (W.D. Wash.)

---

## **NOTICE OF COURT ORDER**

You are hereby advised that the Court has clarified the scope of the preliminary injunction it previously entered in the case of *Washington v. Trump*, No. 2:25-cv-244-LK (W.D. Wash.), ECF No. 258 (March 17, 2025). You are receiving this Notice pursuant to the Court's directive that notice of the order be provided "to all Defendants and agencies and their employees, contractors, and grantees by March 20, 2025." A copy of the Court's Order is attached for reference.

Plaintiffs, in relevant part, challenged Sections 3(e) and 3(g) of Executive Order 14,168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*. Those sections directed agency heads to "take all necessary steps, as permitted by law, to end the Federal funding of gender ideology" (Section 3(e)) and "assess grant conditions and grantee preferences and ensure grant funds do not promote gender ideology" (Section 3(g)). Plaintiffs also challenged Section 4 of Executive Order (EO) 14,187, *Protecting Children from Chemical and Surgical Mutilation* (Jan. 28, 2025), which directs the heads of departments and agencies "that provide[] research or educational grants to medical institutions" to, "consistent with applicable law and in coordination with the Director of the Office of Management and Budget, immediately take appropriate steps to ensure that institutions receiving Federal research or education grants end the chemical and surgical mutilation of children." EO 14,187 § 4.

In response, the Court entered a preliminary injunction prohibiting certain actions by the Defendants in the case within the Plaintiff states of Washington, Oregon, Minnesota, and Colorado, which went into effect the evening of February 28, 2025. On March 17, 2025, the Court issued an order that clarified the scope of the preliminary injunction of Sections 3(e) and

3(g) of EO 14,168. Page 3 of this notice provides a summary of the key terms of the preliminary injunction as clarified by the Court's Order.

The Court's Order requires Defendants to notify all Defendants and their agencies, employees, contractors, and grantees of the following:

1. This Court's February 28, 2025 preliminary injunction enjoined all Defendants (except President Trump) and all their respective officers, agents, servants, employees, and attorneys, and any person in active concert or participation with them who received actual notice of the order "from enforcing Sections 3(e) or 3(g) of Executive Order 14,168 to condition or withhold federal funding based on the fact that a health care entity or health professional provides gender-affirming care within the Plaintiff States" of Washington, Oregon, Minnesota, and Colorado. Dkt. No. 233 at 53.

2. Defendants unreasonably interpreted "gender-affirming care" in paragraph 2 of the preliminary injunction to include only the four medical treatments listed in Executive Order 14,187, i.e., (1) "the use of puberty blockers, including GnRH agonists and other interventions, to delay the onset or progression of normally timed puberty in an individual who does not identify as his or her sex"; (2) "the use of sex hormones, such as androgen blockers, estrogen, progesterone, or testosterone, to align an individual's physical appearance with an identity that differs from his or her sex"; (3) "surgical procedures that attempt to transform an individual's physical appearance to align with an identity that differs from his or her sex"; and (4) "surgical procedures . . . that attempt to alter or remove an individual's sexual organs to minimize or destroy their natural biological functions." Executive Order 14,187 § 2(c); *see also* Dkt. No. 253 at 10–11.

3. Contrary to Defendants' unreasonable interpretation, "gender-affirming care" as used in paragraph 2 of the Court's preliminary injunction includes all gender-affirming services for individuals with gender dysphoria. Dkt. No. 233 at 30. In other words, consistent with the HHS Office of Population Affairs' definition of the term—i.e., "an array of services that may include medical, surgical, mental health, and non-medical services for transgender and nonbinary people," HHS Office of Population Affairs, *Gender-Affirming Care and Young People*, https://web.archive.org/web/20250227041634/https://opa.hhs.gov/sites/default/files/2025-02/gender-affirming-care-young-people.pdf—"gender-affirming care" as set forth in paragraph 2 of the preliminary injunction includes, but is not limited to, therapy; mental health care; assistance with elements of a social transition (e.g., new name and pronouns, modification of clothing, voice training); evaluation of persistency of gender dysphoria, emotional and cognitive maturity, and coexisting psychological, medical, or social problems; puberty-suppressing medications; hormone therapy; and surgery. Dkt. No. 233 at 27–28, 51 & n.27.

4. Defendants also unreasonably interpreted "care" to exclude patient care provided during research studies. Dkt. No. 253 at 2, 8–10. By way of clarification and not limitation, "gender-affirming care" as used in paragraph 2 of the Court's preliminary injunction includes patient care provided as part of research or education grants, including but not limited to routine services, ancillary services, outpatient services, inpatient services, and

usual patient care received during the study. *See* NIH Grants Policy Statement, Chapter 19 (April 2024), available at https://grants.nih.gov/grants/policy/nihgps/HTML5/section_19/19_research_patient_care_costs.htm.

To assist in your compliance with the Court's preliminary injunction, here is a summary of the key terms as clarified by the Court's Order:

1. **Defendants and all their respective officers, agents, servants, employees, and attorneys, and any person in active concert or participation with them who receives actual notice of this Order, are hereby enjoined from enforcing Sections 3(e) or 3(g) of EO 14,168 to condition or withhold federal funding based on the fact that a health care entity or health professional provides gender-affirming care within Washington, Oregon, Minnesota, and Colorado.**

    a. **For the purposes of the Court's preliminary injunction of Sections 3(e) and 3(g) of EO 14,168, "gender-affirming care" includes all gender-affirming services for individuals with gender dysphoria. "Gender-affirming care" includes, but is not limited to, therapy; mental health care; assistance with elements of a social transition (e.g., new name and pronouns, modification of clothing, voice training); evaluation of persistency of gender dysphoria, emotional and cognitive maturity, and coexisting psychological, medical, or social problems; puberty-suppressing medications; hormone therapy; and surgery**

    b. **For the purposes of the Court's preliminary injunction of Sections 3(e) and 3(g) of EO 14,168, "care" includes patient care provided as part of research or education grants, including but not limited to routine services, ancillary services, outpatient services, inpatient services, and usual patient care received during the study.**

2. **Per the terms of the preliminary injunction as originally issued, Defendants and all their respective officers, agents, servants, employees, and attorneys, and any person in active concert or participation with them who receives actual notice of this Order, are also fully enjoined from enforcing or implementing Section 4 of EO 14,187 within Washington, Oregon, Minnesota, and Colorado.**

If you have any questions about the scope or effect of the Court's Order, please contact your agency's Office of General Counsel or your grant officer, as appropriate. Thank you for your attention to this matter.