UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP et al., <br><br> Defendants. | CASE NO. 2:25-cv-00244-LK <br><br> ORDER GRANTING DEFENDANTS' MOTION TO STAY |

In this litigation challenging certain parts of two of President Trump's executive orders, Defendants have appealed this Court's order granting in part and denying in part Plaintiffs' motion for a preliminary injunction, as well as a later order granting Plaintiffs' motion for expedited discovery. Dkt. No. 262. They now move for a limited stay of proceedings in this Court pending the appeal. Dkt. No. 263.

In determining whether a stay is appropriate, the Court considers (1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the

ORDER GRANTING DEFENDANTS' MOTION TO STAY - 1

simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Here, Defendants ask for only a limited stay that would not prevent Plaintiffs from enforcing the Court's preliminary injunction, amending their complaint, or seeking to have the stay lifted. Dkt. No. 263-1; Dkt. No. 271 at 6. Because the relevant factors weigh in favor of a stay, and especially considering that parallel litigation in the District of Maryland is stayed pending appeal on the same limited terms, *PFLAG, Inc. v. Trump*, No. CV 25-337-BAH, Dkt. No. 137 (D. Md. April 9, 2025), and that resolution of the legal issues on appeal may simplify the issues in this case, the Court grants Defendants' motion.

## I. BACKGROUND

On February 7, 2025, Physicians 1, 2, and 3 and the States of Washington, Oregon, and Minnesota filed a lawsuit challenging certain sections of President Trump's Executive Order 14,187 (the "Medical Services EO"). Dkt. No. 1. They alleged that Sections 4 and 8(a) of that EO unconstitutionally defund and criminalize gender-affirming care, and moved for a temporary restraining order ("TRO"). *See generally* Dkt. Nos. 1, 11. Section 4 of the Medical Services EO directs "[t]he head of each executive department or agency (agency) that provides research or education grants to medical institutions, including medical schools and hospitals" to "immediately take appropriate steps to ensure that institutions receiving Federal research or education grants end" four kinds of medical treatments (the "Listed Services"):

- "[T]he use of puberty blockers, including GnRH agonists and other interventions, to delay the onset or progression of normally timed puberty in an individual who does not identify as his or her sex";
- "[T]he use of sex hormones, such as androgen blockers, estrogen, progesterone, or testosterone, to align an individual's physical appearance with an identity that differs from his or her sex";

ORDER GRANTING DEFENDANTS' MOTION TO STAY - 2

- "[S]urgical procedures that attempt to transform an individual's physical appearance to align with an identity that differs from his or her sex"; and

- "[S]urgical procedures . . . that attempt to alter or remove an individual's sexual organs to minimize or destroy their natural biological functions."

Dkt. No. 17-1 at 2–3. Section 8(a) of the Medical Services EO directs the Attorney General to "prioritize enforcement of protections against female genital mutilation" under 18 U.S.C. § 116. *Id.* at 3. On February 14, 2025, this Court granted Plaintiffs' motion for a TRO, enjoining all Defendants other than President Trump from enforcing or implementing Section 4 of the Medical Services EO within the Plaintiff States. Dkt. No. 158 at 1. The TRO also enjoined these Defendants from enforcing Section 8(a) "to the extent that [it] purports to redefine 'female genital mutilation' under 18 U.S.C. § 116[.]" *Id.* at 2.

Plaintiffs filed an amended complaint on February 19, 2025, adding another plaintiff (the State of Colorado) and adding constitutional claims against Sections 3(e) and 3(g) of Executive Order 14,168 (the "Gender Ideology EO"). *See generally* Dkt. No. 164. Section 3(e) of the Gender Ideology EO directs federal agencies to "take all necessary steps, as permitted by law, to end the Federal funding of gender ideology," while Section 3(g) directs that "[f]ederal funds shall not be used to promote gender ideology" and that each agency "assess grant conditions and grantee preferences and ensure grant funds do not promote gender ideology." Dkt. No. 17-2 at 3.[1] Plaintiffs moved for a preliminary injunction that same day, Dkt. No. 169, which this Court granted on February 28, 2025, Dkt. No. 233. The preliminary injunction enjoins all Defendants except President Trump from "enforcing or implementing Section 4 of Executive Order 14,187 [(the Medical Services EO)] within the Plaintiff States," and "from enforcing Sections 3(e) or 3(g) of Executive Order 14,168 [(the Gender Ideology EO)] to condition or withhold federal funding

---

[1] "Gender ideology" is defined as "replac[ing] the biological category of sex with an ever-shifting concept of self-assessed gender identity, permitting the false claim that males can identify as and thus become women and vice versa[.]" *Id.* at 2.

ORDER GRANTING DEFENDANTS' MOTION TO STAY - 3

based on the fact that a health care entity or health professional provides gender-affirming care within the Plaintiff States." Dkt. No. 233 at 53. The Court did not, however, grant Plaintiffs' request for a preliminary injunction with respect to Section 8(a) of the Medical Services Order, and instead held that Plaintiffs lacked standing to pursue the claim because there was not yet a credible threat of prosecution. *Id.* at 16–19.

On March 6, 2025, less than a week after the preliminary injunction was issued, Plaintiffs filed a motion for contempt, arguing that Defendants violated the TRO and preliminary injunction. Dkt. No. 243. Specifically, Plaintiffs asserted that Defendants were implementing the enjoined sections of the executive orders while claiming to be following newly enacted, independent policies. *See generally id.* The Court did not grant Plaintiffs' motion for contempt, Dkt. No. 258 at 13, but it did grant Plaintiffs' alternative request for expedited discovery, *id.* at 15. Plaintiffs have since propounded discovery, and the parties have held their Rule 26(f) conference. Dkt. No. 270 at 1–2; Dkt. Nos. 270-1, 270-2, 270-3.

## II.   DISCUSSION

### A.   Legal Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In determining whether to grant a stay, courts consider several factors, including:

> the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*CMAX*, 300 F.2d at 268. The burden is on the moving party to show that a stay is appropriate. *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

**B.    A Stay is Warranted**

Plaintiffs argue that they will be harmed in two respects if the Court stays proceedings pending appeal: first, a stay "will delay Plaintiffs' ability to prove their claims with respect to Section 8(a) of the [Medical Services EO]"; and second, it "will impair their ability to protect their rights should Defendants continue to adopt policies with the intent to end gender-affirming care and unlawfully effectuate other aspects" of the executive orders. Dkt. No. 269 at 5. Defendants disagree, contending that Plaintiffs will not suffer any hardship from a stay, and that instead it is Defendants who will bear the burden of potentially unnecessary and intrusive discovery if a stay is not granted. Dkt. No. 263 at 2, 6–7.

Balancing the relevant factors, the Court concludes that a stay is warranted.

First, Plaintiffs are unlikely to suffer additional harm if this Court stays these proceedings because (1) this Court has enjoined enforcement of Section 4 of the Medical Services EO and Sections 3(e) and (g) of the Gender Ideology EO as described above, Dkt. No. 233 at 53; (2) the District of Maryland has issued a nationwide injunction preventing enforcement of Section 4 of the Medical Services EO and Section 3(g) of the Gender Ideology EO, *PFLAG*, No. CV 25-337-BAH, Dkt. No. 116 (D. Md. March 4, 2025); and (3) this Court has found that Plaintiffs lack standing to challenge Section 8(a) of the Medical Services EO, Dkt. No. 233 at 3 n.1, 16–19. While a delay in the ability to "seek[] injunctive relief against ongoing and future harm" militates against a stay, *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005), the availability of that relief will not be a relevant factor during the requested stay. As for Plaintiffs' concern that they will be harmed by potential future efforts by the Defendants to implement the enjoined sections, the limited stay that Defendants request will "not cover any necessary and jurisdictionally proper proceedings regarding the scope or enforcement of the Court's preliminary injunction, including the limited discovery this Court has ordered in connection with Plaintiffs' motion for contempt or

any other discovery the Court may order in connection with any future compliance proceedings." Dkt. No. 263 at 8. To the extent Plaintiffs identify new causes of action or a credible threat of prosecution pursuant to Section 8(a) of the Medical Services EO, the proposed stay would not prevent them from moving for leave to amend their complaint.[2] The Court will further exempt from the stay any motion for preliminary relief, including but not limited to expedited discovery, on any new claims. The Court finds that Defendants' conduct during this litigation merits this additional protection for Plaintiffs. Specifically, Defendants seriously misrepresented to the Court the scope of agency action pursuant to the Medical Services EO, Dkt. No. 272 at 1–2,[3] and adopted a "manifestly unreasonable" interpretation of the Court's injunction relating to the Gender Ideology EO, Dkt. No. at 258 at 8. These actions suggest that Defendants may attempt to "skirt[] this Court's injunction," as Plaintiffs fear. Dkt. No. 269 at 6. As already noted, the stay in *PFLAG* similarly permits Plaintiffs to "seek additional preliminary injunctive relief on the basis of further actions by the Government[.]" No. CV 25-337-BAH, Dkt. No. 137 at 1 (D. Md. April 9, 2025). Given the protections afforded to Plaintiffs by the exceptions to the stay, this factor weighs in favor of granting the stay.[4]

The second factor (hardship or inequity to the proponent of the stay) also weighs in favor of a stay. True enough, "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112 (cleaned

---

[2] The Court notes that Defendants' proposed stay is substantially similar to that entered by the District of Maryland in *PFLAG*, which permits plaintiffs to "(1) seek leave to amend their Amended Complaint or seek additional preliminary injunctive relief on the basis of further actions by the Government or (2) move to enforce the preliminary injunction during the pendency of the appeal." No. CV 25-337-BAH, Dkt. No. 137 at 1 (D. Md. April 9, 2025).

[3] In their February 25, 2025 opposition to Plaintiffs' motion for a preliminary injunction, Defendants represented that "no agency defendant has revoked or withheld any particular grants as a result of the EOs." Dkt. No. 223 at 10; *see also id.* at 4. In reality, the Centers for Disease Control and Prevention had terminated 17 grants on January 31, 2025 "in accordance with [the Gender Ideology EO]"—something Defendants did not disclose to the Court until April 21, 2025. Dkt. No. 272 at 2; Dkt. Nos. 272-3–272-19.

[4] Until the appeal is resolved, the Court expects all parties to abide by their obligation to preserve information in their possession, custody, or control that may be relevant to Plaintiffs' claims and Defendants' defenses.

ORDER GRANTING DEFENDANTS' MOTION TO STAY - 6

up). But "neither this lawsuit, nor the discovery Plaintiffs seek is typical." *Washington v. Trump*, No. C17-0141JLR, 2017 WL 2172020, at *4 (W.D. Wash. May 17, 2017); *see also* Dkt. No. 257 at 1 (Joint Status Report describing Plaintiffs' planned discovery); Dkt. No. 270-1 (Plaintiffs' interrogatories and requests for admission directed to President Trump and his cabinet members). Plaintiffs' anticipated discovery will likely lead to multiple discovery disputes. *See* Dkt. No. 257 at 1, 4. In the unique circumstances of this case, the "judicial deference and restraint" owed to the Executive Branch warrants a stay to protect Defendants from the burden of resource-intensive discovery while the Ninth Circuit addresses issues that may inform the appropriateness, scope, and necessity of that discovery. *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 385 (2004); *see also Landis*, 299 U.S. at 256 ("Especially in cases of extraordinary public moment, [a plaintiff] may be required to submit to delay not immoderate in extent and not oppressive in its consequences if . . . convenience will thereby be promoted.").

"[T]he orderly course of justice" also weighs in favor of a stay. *CMAX*, 300 F.2d at 268. The Court is mindful that the Ninth Circuit has "repeatedly admonished district courts not to delay trial preparation to await an interim ruling on a preliminary injunction." *California v. Azar*, 911 F.3d 558, 583 (9th Cir. 2018). In so doing, the Ninth Circuit has explained that "[b]ecause of our limited scope of review and the paucity of the factual record on a preliminary injunction application, our disposition 'may provide little guidance as to the appropriate disposition on the merits' and will often 'result in unnecessary delay to the parties and inefficient use of judicial resources.'" *Glob. Horizons, Inc. v. U.S. Dep't of Labor*, 510 F.3d 1054, 1058–59 (9th Cir. 2007) (quoting *Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 753 (9th Cir. 1982)). However, these concerns carry less force in this particular case because the majority of the issues on appeal— including ripeness, the limits of the President's Article II authority, and the appropriate scrutiny under the Equal Protection Clause—are predominantly legal issues. Thus, unlike appeals from

most preliminary injunctions, the Ninth Circuit's resolution of the pending appeal will provide significant "guidance as to the appropriate disposition on the merits." *Sports Form*, 686 F.2d at 753; *see also Hooper v. City of Seattle*, No. C17-77 RSM, 2017 WL 11437103, at *1 (W.D. Wash. Dec. 20, 2017) (finding that a stay would promote the orderly course of justice and judicial efficiency "as the parties will not have to engage in discovery efforts which may later have to be recalibrated" or "duplicate their efforts" if the Ninth Circuit disagreed with the district court). Furthermore, as the parties acknowledge, the Supreme Court is expected to issue its decision in *United States v. Skrmetti*, Case No. 23-477, before the parties' briefing is complete at the Ninth Circuit. Dkt. No. 269 at 9–10; Dkt. No. 271 at 3. That decision will also inform the appropriate disposition on the merits in this case.

In sum, all three factors counsel in favor of a stay of proceedings pending appeal.

### III.  CONCLUSION

For the reasons laid out above, the Court GRANTS Defendants' motion for a limited stay of proceedings pending appeal, and STAYS proceedings in this Court pending resolution of Defendants' appeal. This stay shall not apply to any (1) necessary and jurisdictionally proper proceedings regarding the scope or enforcement of the preliminary injunction, including the limited discovery this Court has already ordered in connection with Plaintiffs' motion for contempt and any other discovery ordered in connection with future compliance proceedings; (2) amendments to the operative complaint and associated motions for leave and for preliminary relief; and (3) motions for relief from the stay.

Dated this 23rd day of April, 2025.

Lauren King
United States District Judge