The Honorable Lauren King

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al., <br><br>  Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br>  Defendants. | NO. 2:25-cv-00244-LK <br><br> PLAINTIFFS' MOTION TO COMPEL DISCOVERY <br><br> NOTE ON MOTION CALENDAR: <br> Wednesday, May 21, 2025 |

PLS.' MOT. TO COMPEL DISC.
NO. 2:25-cv-00244-LK

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND .............................................................................................................. 2

    A. Plaintiffs Issue Discovery Requests Pursuant to This Court's Order ....................... 2

    B. Defendants' Contemptuous Conduct Comes into Sharper Focus ............................. 2

        1. New documents ................................................................................................ 3

        2. Depositions of NIH witnesses .......................................................................... 3

        3. Additional grant terminations .......................................................................... 4

    C. Defendants Refuse to Answer Plaintiffs' Court-Ordered Discovery ........................ 5

III. ARGUMENT .................................................................................................................... 5

    A. Plaintiffs' Discovery Requests Are Not Moot ........................................................... 5

    B. None of Defendants' Remaining Objections Justify Their Failure to Respond ........ 7

        1. Defendants' objections are so deficient they constitute waiver ....................... 7

        2. Defendants' privilege objections are waived where they failed to provide a privilege log or disclose whether documents were withheld ........................... 9

        3. Defendants' claimed privileges are unsupportable, given the documents already known to exist ................................................................................... 10

    C. Plaintiff States Are Entitled to Their Fees for Bringing this Motion ...................... 12

IV. CONCLUSION ............................................................................................................... 13

PLS.' MOT. TO COMPEL DISC.  
NO. 2:25-cv-00244-LK

i

ATTORNEY GENERAL OF WASHINGTON  
Complex Litigation Division  
800 Fifth Avenue, Suite 2000  
Seattle, WA 98104  
206-464-7744

## I.     INTRODUCTION

Immediately after this Court enjoined Defendants from conditioning or withholding funding under the challenged executive orders, Defendants appear to have done just that. To investigate Defendants' seeming non-compliance with the preliminary injunction, and determine whether contempt sanctions are appropriate, this Court ordered expedited discovery into Defendants' termination of a grant to a physician at Seattle Children's Hospital. Plaintiffs promptly served written discovery pursuant to that order. But Defendants have now categorically refused to respond.

Instead, Defendants have unilaterally declared that Plaintiffs' requests—and this Court's two separate orders allowing them—are moot because, after Plaintiffs moved for contempt and this Court ordered discovery, Defendants re-instated the terminated grant. They maintain this refusal even after this Court's order just last week reiterating that Plaintiffs remain entitled to take "discovery this Court has already ordered in connection with Plaintiffs' motion for contempt." Dkt. #273 p.8.

Defendants are wrong. Their refusal blatantly contradicts this Court's orders, and their mootness objection is frivolous because Defendants' voluntary cessation of contemptuous conduct does not moot Plaintiffs' discovery requests, particularly as this Court can still provide relief via monetary sanctions. Nor do their other objections support their total refusal to engage in discovery. Their boilerplate relevance and privilege objections are so flimsy they amount to waiver. Defendants have made zero effort to substantiate any of their objections, nor have they complied with rules requiring them to identify what they are withholding and to log all privilege withholdings.

Defendants' disregard for this Court's orders is part of an emerging pattern in which Defendants treat court orders as little more than annoyances they are free to disregard. This has to stop. Accordingly, Plaintiffs request that this Court enforce its order granting expedited discovery, order Defendants to fully respond to Plaintiffs' discovery requests, and order Defendants to pay Plaintiffs' attorneys' fees incurred in bringing this Motion.

PLS.' MOT. TO COMPEL DISC.
NO. 2:25-cv-00244-LK

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

## II. BACKGROUND

### A. Plaintiffs Issue Discovery Requests Pursuant to This Court's Order

Immediately after this Court "enjoined [Defendants] from enforcing Sections 3(e) or 3(g) of Executive Order 14,168 to condition or withhold federal funding based on the fact that a health care entity or health professional provides gender-affirming care within the Plaintiffs States," Dkt. #233 p.53, Defendant HHS (through its subagency NIH) cancelled a grant to Dr. Kym Ahrens at Seattle Children's Hospital to provide gender-affirming care, Dkt. #243 p.2. This termination looked like a straightforward implementation of the Gender Ideology EO and thus a violation of this Court's PI. *See* Dkt. ##244-1, 244-2, 245-2, 245-5, 245-6, 245-8, 245-9 (evidence and media reporting linking grant terminations to the enjoined EOs). Plaintiff States moved for contempt, and this Court preliminarily denied that motion, concluding that while the "evidence raises the possibility that the [challenged] revocation of grant funding was effected pursuant to Sections 3(e) or (g) of the Gender Ideology EO for an enjoined purpose," additional evidence was necessary "to establish contempt" by "clear and convincing evidence." Dkt. #258 p.13. Thus, the Court ordered "expedited discovery" into "whether the [challenged] funding revocation was carried out on the basis of the enjoined provisions in the Gender Ideology EO [.]" *Id.* p.15 (internal quotation omitted).

Plaintiffs promptly served their First Set of Interrogatories and Requests for Production to Defendants and a Subpoena Duces Tecum to Michelle Bulls, the signatory of the grant termination letter. *See* Decl. Andrew Hughes ISO Pls.' Mot. Compel Disc. (Huges Decl.) Exs. A, B. Those written discovery requests—and Defendants' refusal to respond—form the basis for this Motion.

### B. Defendants' Contemptuous Conduct Comes into Sharper Focus

Plaintiffs' service of discovery requests started Defendants' 30-day clock to respond.[1] In those 30 days, several things happened that further illuminated Defendants' non-compliance with this Court's PI.

---

[1] Plaintiff States requested a response to the Bulls SDT by April 3, the day Ms. Bulls was deposed, but Defendants declined to comply by that date. Hughes Decl. Ex. C.

PLS.' MOT. TO COMPEL DISC.  
NO. 2:25-cv-00244-LK

2

ATTORNEY GENERAL OF WASHINGTON  
Complex Litigation Division  
800 Fifth Avenue, Suite 2000  
Seattle, WA 98104  
206-464-7744

### 1. New documents

In March, whistleblowers made Plaintiffs aware of numerous documents clearly pegging grant terminations to the Gender Ideology Order. One document, an internal NIH spreadsheet titled "Terminations - NICHD_Master," listed several terminated grants along with a "Termination Reason." In the row for Dr. Ahrens' grant, the Termination Reason was given as "gender ideology (EA14168)." Hughes Decl. Ex. D.[2]

Another document, a March 11 memo from then-NIH Acting Director Dr. Matthew Memoli to a "Senior Advisor" at HHS, detailed the steps NIH took to "align[]" its activities with "President Trump's Executive Orders." Under the section devoted to the Gender Ideology Order, Dr. Memoli wrote that NIH was in the process of "terminat[ing] active grants that promote or inculcate gender ideology." Hughes Decl. Ex. E p.5 (capitalization omitted).

And on April 28, the White House released its "Report to the President on Protecting Children from Surgical and Chemical Mutilation Executive Summary."[3] That report crowed that HHS had implemented Section 4 of the Denial-of-Care Order's directive to defund grants into trans healthcare by "eliminat[ing] 215 such grants." On April 30, Defendants wrote to Plaintiffs that they "are investigating" whether "HHS has violated the [*PFLAG*] preliminary injunction at least 215 times." Hughes Decl. Ex. N. Each of these documents casts further, serious doubt on Defendants' assertions that the termination of Dr. Ahrens' grant had nothing to do with the EOs this Court enjoined.

### 2. Depositions of NIH witnesses

In early April, Plaintiffs took depositions of the Director of the NIH Office of Policy for Extramural Research Administration (Michelle Bulls) and the recently departed Deputy Director

---

[2] The Gender Ideology Order is Executive Order 14,168. Plaintiffs believe "EA" may stand for "Executive Action." Mid-way down the spreadsheet, the reason for the terminations stops being filled in. As discussed *infra*, Ms. Bulls testified there are other spreadsheets where the reasons are provided.

[3] Available at https://www.whitehouse.gov/fact-sheets/2025/04/report-to-the-president-on-protecting-children-from-surgical-and-chemical-mutilation-executive-summary/.

of the NIH Office of Extramural Research (Liza Bundesen).[4] These depositions further undermined Defendants' claim that the grant terminations were the result of any independent NIH action. Rather, Ms. Bulls and Dr. Bundesen testified that NIH's Office of Extramural Research does not know how the terminated grants were chosen and made clear they did not have any part in identifying grants for termination or drafting the termination letters. Hughes Decl. Ex. G 136:3-4 ("Q: You didn't write one word in this letter? A: No, just signed it."), Ex. H. Instead, both witnesses testified that NIH was provided a list of grants to terminate along with template termination letters by a DOGE employee named Rachel Riley. Hughes Decl. Ex. G 31:1-5, 66:13-71:1, 73:24-74:10, 95:8-98:23; Ex. H 36:3-37:24. Moreover, the list of grants to terminate were provided in a series of spreadsheets that identified by category for which they were being terminated (e.g., "gender ideology," "vaccine hesitancy," "DEI"). Hughes Decl. Ex. G 95:8-24. Ms. Bulls provided those spreadsheets to DOJ counsel in advance of her deposition, but DOJ did not produce them. *Id.* 14:19-15:17, 17:7-18, 23:12-24, 24:8-25:18, 25:21-26:14, 27:2-18, 28:2-8, 28:13-29:10, 29:15-30:10.

### 3. Additional grant terminations

Since this Court granted expedited discovery, Plaintiffs became aware of additional grants that Defendants terminated in apparent violation of this Court's orders. This Court is aware of many of these because Defendants filed a mea culpa on the docket. *See* Dkt. #272 (identifying 17 CDC grants Defendants terminated in violation of this Court's TRO and contrary to representations made by government counsel). In addition, Plaintiffs became aware of at least eight additional NIH grants to researchers in the Plaintiff States that were terminated or had funding withheld because the projects involved gender-affirming care. Hughes Decl. Ex. I. When Plaintiffs brought these terminations to Defendants' attention, counsel half-heartedly insisted

---

[4] Defendants sought to quash these depositions, arguing they became moot once Dr. Ahrens' grant was reinstated. This Court denied their emergency-hearing request. Hughes Decl. Ex. F.

1  that the terminations "did not enforce the challenged sections of the EOs" but nevertheless
2  proceeded to reinstate them. *Id.*

### C. Defendants Refuse to Answer Plaintiffs' Court-Ordered Discovery

On April 18, Defendants served objections and responses to Plaintiffs' written discovery. Hughes Decl. Exs. J, K. They did not answer a single interrogatory or agree to produce a single document. Instead, they objected that the discovery "was served pursuant to the Court's prior grant of expedited discovery relating to Plaintiffs' motion for contempt, which was based on NIH's termination of [Dr. Ahrens' grant]. That grant has been reinstated, and therefore any such expedited discovery, and any discovery relating to the contempt issues Plaintiffs previously raised, is moot." Hughes Decl Ex. J p.2., Ex. K p.2 (citation omitted). Additionally, Defendants raised almost identical boilerplate relevance and privilege objection to nearly every request, to wit: "Defendants object to this interrogatory[/request] insofar as it seeks information[/documents] covered by the deliberative process, attorney-client, work product, or any other privilege" and ""Defendants further object to this request because it seeks information not relevant to the claims and defenses in this case." Hughes Decl. Exs. J, K. Despite objecting to every request but one on privilege grounds, Defendants did not produce a privilege log.

Plaintiffs requested a meet-and-confer and followed up with a letter detailing their concerns. Hughes Decl. Ex. L pp.3-4, Ex. M. At the meet-and-confer on April 25, Defendants' counsel could not say whether they were going to stand on their objections. Hughes Decl. Ex. L pp.1-2. On Monday, April 28, Defendants confirmed via email they would not respond to Plaintiffs' requests on the ground that they are supposedly moot. *Id.* p.1.

## III.   ARGUMENT

### A. Plaintiffs' Discovery Requests Are Not Moot

Defendants continue to insist Plaintiffs' discovery requests are moot despite this Court confirming, just last week, that Plaintiffs remain entitled to the discovery the "Court has already ordered in connection with Plaintiffs' motion for contempt." Dkt. #273 p.8. This was not

carelessness on the Court's part; the Court made this ruling despite Defendants' notice indicating Dr. Ahrens' grant had been reinstated and asserting "Defendants' position … that Plaintiffs' expedited discovery requests are now moot." *See* Dkt. #267 p.2. In light of this Court's rulings granting expedited discovery and confirming that discovery remains live, Defendants' unilateral decision to refuse to engage in discovery is flatly wrong.[5]

*First*, the issue of Defendants' contempt is not moot. An issue is only moot when "there is no longer a possibility that [a party] can obtain relief for [their] claim." *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 521 (9th Cir. 1999). Here, there is still at least one form of relief this Court can order: monetary sanctions. A claim is not moot if a party may still be entitled to monetary relief. *See, e.g.*, *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 872 (9th Cir. 2002). Thus, if the requested discovery confirms the seemingly obvious—that Defendants terminated Dr. Ahrens' grant pursuant to one or both of the challenged executive orders and in violation of the Court's preliminary injunction order—Plaintiffs may still be entitled to monetary sanctions. *See, e.g.*, *Bolbol v. HP Pavilion Mgmt.*, 2006 WL 8443064, at *4 (N.D. Cal. Aug. 30, 2006) (denying preclusion sanctions as moot post-trial but awarding monetary sanctions).

The case for monetary sanctions would be especially strong if, as Plaintiffs suspect, Defendants made misrepresentations to the Court in opposing the contempt motion. Defendants claimed that "NIH terminated this grant using its preexisting authority, without reference to either EO." Dkt. #253 p.6. This appears to be false. The "Terminations" spreadsheet and Memoli memorandum discussed above certainly suggest as much, to say nothing of the White House report bragging about grant terminations under the Denial-of-Care Order. Further discovery will likely confirm that Dr. Ahrens' grant—and the others about which Plaintiffs have separately written Defendants, *see* Hughes Decl. Ex. I—were terminated to implement the Denial-of-Care

---

[5] As this Court also made clear, its stay exempts "any . . . necessary and jurisdictionally proper proceedings regarding the scope or enforcement of the preliminary injunction," including additional discovery associated therewith. Dkt. #273 p.8. Plaintiffs thus understand they may continue to take additional compliance-related discovery beyond the limited discovery subject to this Motion.

PLS.' MOT. TO COMPEL DISC.
NO. 2:25-cv-00244-LK

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

and/or Gender Ideology Orders. Plaintiffs are entitled to this discovery to evaluate whether Defendants made false statements to the Court that warrant sanctions. *See, e.g.*, *United States. v. McCabe*, 323 Fed. App'x 580 (9th Cir. 2009) (upholding monetary sanction where attorney violated duty of candor to the court); *Williams v. P.I. Properties No. 42, L.P.*, 2022 WL 17252573, at *5 (N.D. Cal. Nov. 28, 2022) (finding material misrepresentations supported monetary sanctions under Rule 11).

*Second*, even if the contempt issue were technically moot, it presents a textbook example of voluntary cessation. A party's "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). To avoid voluntary cessation, Defendants must show that their wrongful termination of funding could not "reasonably be expected to recur." *Id*. But Defendants only rescinded Dr. Ahrens' termination *after* Plaintiffs moved for contempt, they have continued to deny any violation of the PI order, and, worse, they apparently continue to violate the PI via multiple new grant terminations. Defendants cannot overcome voluntary cessation.

**B.    None of Defendants' Remaining Objections Justify Their Failure to Respond**

    **1.    Defendants' objections are so deficient they constitute waiver**

Nor do any of Defendants' other objections justify their stonewalling. In refusing to answer Plaintiffs' requests, Defendants make the same boilerplate objections, including: "Defendants … object to this request because it seeks information not relevant to the claims and defenses in this case." But as Judge Mendoza explained, "[g]eneral or boilerplate objections … are improper—especially when a party fails to submit any evidentiary declarations supporting such objections." *Kuykendall v. Les Schwab Tire Ctrs. of Wash., Inc.*, 2:20-CV-00154-SMJ, 2021 WL 6275066, at *2 (E.D. Wash. June 30, 2021) (quotation omitted). Instead, "[t]he burden

PLS.' MOT. TO COMPEL DISC.
NO. 2:25-cv-00244-LK

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

lies on the objecting party to show that a discovery request is improper" and "[w]here a party's objections are themselves vague and impermissibly overbroad, and no specifics are given, the objecting party fails to carry its burden." *Id.* (quotation omitted).

And while only mentioned in passing in the responses themselves, in counsel's email of April 22 (after the response deadline), Defendants suggest the objections are based on "proportionality," with no further explanation. Hughes Decl. Ex. L p.6. Proportionality depends on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1).

The discovery requests had the Court's explicit permission and relate to Defendants' compliance with this Court's TRO and PI. They are plainly relevant. And the stakes are doubtlessly important: Plaintiffs allege the federal government is violating their constitutional rights and the rights of transgender and gender-diverse patients—and a court order on top of that. By contrast, Defendants provide no explanation why the vast resources of the federal government are insufficient to gather and produce the limited information and documents related to their potential contempt. In fact, Ms. Bulls testified that she *already gathered* responsive materials and gave them to counsel for Defendants. Hughes Decl. Ex G 17:7-18, 25:1-3, 33:11-17. Any "proportionality" objection falls flat. And in any event, Defendants' failure to meaningfully raise objections by the deadline means these objections are waived. *See* Fed. R. Civ. Proc. 37(a)(4) ("[I]ncomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection.").

### 2. Defendants' privilege objections are waived where they failed to provide a privilege log or disclose whether documents were withheld

This same defect applies equally to Defendants' threadbare privilege objections. Making matters worse, Defendants also failed to provide a privilege log or state whether they are withholding information on the basis of any of their objections as required by rules.

Assertions of privilege must be accompanied by a privilege log that "describe[s] the nature of the documents . . . not produced or disclosed-and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. Proc. 26(b)(5). Failing to do so waives the privilege. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) ("[B]oilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege."). None was provided here.

Additionally, the rules plainly state that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. Proc. 34(b)(2)(C). Here, Defendants' do not state whether they are withholding anything on the basis of any objections. It is obvious that Defendants are withholding at least some relevant documents as Plaintiffs have now filed several of them and Ms. Bulls described many others she collected, yet none were produced. *See* Hughes Decl. Ex. G 17:7-18, 25:1-3, 33:11-17. But "Rule 34(b)(2)(C) is clear: if a party withholds responsive matter on the basis of an objection, it must so state." *RG Abrams Ins. v. Law Offices of C.R. Abrams*, 2021 WL 4805315 at *8 (C.D. Cal. Aug. 10, 2021).

Further, Defendants merely rattled off a list of privileges, including "any other privilege," and object "insofar" as any of them might apply. Hughes Decl. Exs. J, K. Defendants then state they "will not furnish information in response" to Plaintiffs interrogatories and "will not produce documents in response" to Plaintiffs requests for production. *Id.* From these responses, Plaintiffs have no means to evaluate any claims of privilege, do not know whether any of them are actually

PLS.' MOT. TO COMPEL DISC.
NO. 2:25-cv-00244-LK

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

invoked, and do not even know the full list of privileges being claimed. Defendants' privilege objections are deficient to a degree that should also be held to constitute waiver. *See Burlington N. & Santa Fe Ry. Co.*, 408 F.3d at 1149.

**3. Defendants' claimed privileges are unsupportable, given the documents already known to exist**

Even based on the limited records uncovered to date, Defendants' invocations of the deliberative process privilege, the attorney-client privilege, and the work-product doctrine are overly broad and unsupportable. Plaintiffs address each in turn.

"For the deliberative process privilege to apply, the material must be predicisional and deliberative." *Karnoski v. Trump*, 926 F.3d 1180, 1204 (9th Cir. 2019) (quotation omitted). "The deliberative process privilege shields documents that reflect an agency's preliminary thinking about a problem, as opposed to its final decision about it." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 266 (2021). In the funding context, the privilege distinguishes between "a funding decision already made or, instead, a predecisional memorandum" reflecting "predecisional communication." *Casad v. U.S. Dep't of Health & Human Servs.*, 301 F.3d 1247, 1252 (2002) (evaluating claims of privilege in NIH funding case). Even when applicable, the deliberative process privilege "does not protect documents in their entirety; if the government can segregate and disclose non-privileged factual information within a document, it must." *Karnoski*, 926 F.3d at 1204.

Defendants' broad invocation of the deliberative process privilege is inconsistent with controlling caselaw. They repeatedly invoke the privilege over documents related to final decisions to terminate grants. *See* Hughes Decl. Ex. J pp.3-5 (invoking privilege in response to request for identities of individuals who authored social media post announcing list of grants "canceled" by NIH "[t]oday"); *id.* p.5 (same, for communications related to announced decision to terminate grant and deobligate funds); *id.* pp.5-8 (same, for documents related to publicly announced policies that served as the bases for hundreds of grant terminations). These

PLS.' MOT. TO COMPEL DISC.
NO. 2:25-cv-00244-LK

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

documents do not reflect decisions that any agency was *in the process* of making: these were decisions HHS, DOGE, and other agencies *had already made and communicated externally*. *See, e.g.*, *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 183 (1975) (deliberative process privilege does not apply to "actual decisions communicated outside the agency").

Ms. Bulls' sworn testimony confirms this. She testified that she personally terminated "somewhere between five hundred and a thousand" grants in the eleven weeks between January 20, 2025, and April 3, 2025, despite having terminated "less than five" grants in the prior thirteen years in her position. Hughes Decl. Ex. G 46:16-22; 98:11-24. Documents she received directing her to terminate grants reflect final decision-making—not predecisional deliberations. As Ms. Bulls repeatedly confirmed, each grant termination decision came in the form of an email to her attaching a spreadsheet showing which grants she must terminate and why. *Id.* 95:8-97:7, 120:4-14, 121:24-122:14, 124:2-17; 125:20-126:16, 126:25-127:19, 128:7-9, 129:24-131:7, 132:11-133:5, 134:5-136:9, 136:13-137:25, 139:21-140:24. None of these documents reflecting Defendants' *completed* decision to terminate grants, and the reasons therefor, is deliberative.

Turning to attorney-client privilege, the privilege "is limited to communications made in the course of seeking legal advice from a professional legal adviser in his capacity as such." *Olender v. United States*, 210 F.2d 795, 806 (9th Cir. 1954). The privilege is "narrowly and strictly construed." *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989). Advice on how best to implement policy—such as Executive Orders—is not privileged even when provided by an attorney. *See, e.g.*, *In re Cnty. of Erie*, 473 F.3d 413, 421 (2d Cir. 2007); *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998). And where a portion of a document "is subject to attorney-client privilege," that portion may be redacted and "the rest of the document [which is] unprivileged . . . should be produced to Plaintiffs." *AU New Haven, LLC v. YKK Corp.*, No. 15-CV-03411 (GHW)(SN), 2016 WL 6820383, at *7 (S.D.N.Y. Nov. 18, 2016).

PLS.' MOT. TO COMPEL DISC.
NO. 2:25-cv-00244-LK

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

Ms. Bulls' deposition establishes the existence of a wide swath of documents not covered by attorney-client privilege. She received instructions to terminate grants from Rachel Riley with DOGE, as transmitted through Dr. Matthew Memoli, Dr. Liza Bundesen, and Dr. Jon Lorsch in leadership at NIH. Hughes Decl. Ex. G 30:11-33:24, 122:22-123:24. Other emails included additional individuals from "the Department of Government Efficiency." *Id.* 31:1-14. There is no indication that any of these people are lawyers, or that any of them was offering legal advice. The attorney-client privilege cannot support Defendants' blanket refusal to produce discoverable information and documents.

Finally, the work-product doctrine protects "mental impressions, conclusions, opinions, or legal theories of a party's attorney" that were "prepared in anticipation of litigation or for trial." Fed. R. Civ. Proc. 26(b)(3). "To qualify for work-product protection, documents must: (1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative." *Am. C.L. Union of N. Cal. v. U.S. Dep't of Just.*, 880 F.3d 473, 484 (9th Cir. 2018) (quotation omitted).

Many documents responsive to Plaintiffs' discovery were not prepared by attorneys at all. Nor is there any evidence they were produced in anticipation of litigation—to the contrary, they were produced to terminate grants and notify grantees that their grants had been terminated. Hughes Decl. Ex. G 94:8-95:7. Defendants' blanket withholding of such documents is improper.

### C.    Plaintiff States Are Entitled to Their Fees for Bringing this Motion

Where, as here, a party violates a court order regarding discovery and/or refuses to respond to discovery, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. Proc. 37(b)(2)(C); *see also* Fed. R. Civ. Proc. 37(d)(3). Defendants cannot possibly justify their blatant refusal to comply with this Court's order or respond to Plaintiffs' discovery. Their mootness argument makes a mockery of this Court's authority and lacks any

PLS.' MOT. TO COMPEL DISC.
NO. 2:25-cv-00244-LK

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

basis in the law. Their threadbare objections are entirely unexplained in violation of basic discovery rules and cannot possibly serve as a basis for their wholesale refusal to answer. And they flatly ignored court rules requiring a privilege log and requiring them to state whether documents are being withheld.

They did all this because they think they can get away with it. And unless and until a court shows them otherwise, they're going to be right. Accordingly, this Court should order Defendants and their counsel to reimburse Plaintiffs for their fees in bringing this motion.

To date, Washington has incurred $11,540.20 in preparing this Motion, not counting time spent preparing for and attending the meet-and-confer. Decl. Todd R. Bowers ISO Pls.' Mot. Compel Disc. ¶10. Washington will supplement these figures on reply, including timesheets complying with this Court's standing order. Because its fees are reasonable, the Court should require Defendants and their counsel to pay them.

## IV. CONCLUSION

The Court should grant Plaintiffs' motion to compel discovery.

DATED this 30th day of April 2025.

I certify that this memorandum contains 4,197 words, in compliance with the Local Civil Rules.

I certify that on April 25, 2025 at 10:00 a.m. PST, my colleague Will McGinty and I in good faith conferred with Defendants' counsel Christian Daniel, Vinita Andrapalliyal, and Robert Bombard via Zoom in an effort to obtain the requested discovery without court action.

NICHOLAS W. BROWN
Attorney General of Washington

*/s/ Andrew Hughes*
WILLIAM MCGINTY, WSBA #41868
CYNTHIA ALEXANDER, WSBA #46019
TERA HEINTZ, WSBA #54921
ANDREW R.W. HUGHES, WSBA #49515
NEAL LUNA, WSBA #34085
CRISTINA SEPE, WSBA #53609
LUCY WOLF, WSBA #59028

PLS.' MOT. TO COMPEL DISC.
NO. 2:25-cv-00244-LK

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

| | |
|---|---|
| 1 | Assistant Attorneys General |
| | 800 Fifth Avenue, Suite 2000 |
| 2 | Seattle, WA 98104-3188 |
| | 360-709-6470 |
| 3 | William.McGinty@atg.wa.gov |
| | Cynthia.Alexander@atg.wa.gov |
| 4 | Tera.Heintz@atg.wa.gov |
| | Andrew.Hughes@atg.wa.gov |
| 5 | Neal.Luna@atg.wa.gov |
| | Cristina.Sepe@atg.wa.gov |
| 6 | Lucy.Wolf@atg.wa.gov |
| | *Attorneys for Plaintiff State of Washington* |
| 7 | |
| | */s/ Colleen Melody* |
| 8 | LAURYN K. FRAAS, WSBA #53238 |
| | COLLEEN MELODY, WSBA #42275 |
| 9 | Assistant Attorneys General |
| | 800 Fifth Avenue, Suite 2000 |
| 10 | Seattle, WA 98104-3188 |
| | 360-709-6470 |
| 11 | Lauryn.Fraas@atg.wa.gov |
| | Colleen.Melody@atg.wa.gov |
| 12 | *Attorneys for Physician Plaintiffs 1-3* |

13

14  KEITH ELLISON
    Attorney General of Minnesota

15  */s/ James W. Canaday*
    JAMES W. CANADAY (admitted pro hac vice)
16  Deputy Attorney General
    445 Minnesota St., Ste. 600
17  St. Paul, Minnesota 55101-2130
    651-757-1421
18  james.canaday@ag.state.mn.us
    *Attorneys for Plaintiff State of Minnesota*

19

20  DAN RAYFIELD
    Attorney General of Oregon

21

    */s/ Allie M. Boyd*
22  ALLIE M. BOYD, WSBA #56444
    Senior Assistant Attorney General
23  Trial Attorney
    1162 Court Street NE
24  Salem, OR 97301-4096
    503-947-4700
25  allie.m.boyd@doj.oregon.gov
    *Attorneys for Plaintiff State of Oregon*

26

PHIL WEISER
Attorney General of Colorado

*/s/ Shannon Stevenson*
SHANNON STEVENSON (admitted pro hac vice)
Solicitor General
LAUREN PEACH (admitted pro hac vice)
First Assistant Attorney General
Office of the Colorado Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
720-508-6000
shannon.stevenson@coag.gov
lauren.peach@coag.gov
*Attorneys for Plaintiff State of Colorado*

PLS.' MOT. TO COMPEL DISC.
NO. 2:25-cv-00244-LK

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744