# Exhibit M



**Nick Brown**
# ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue • Seattle, WA 98104 • 206-464-7744

April 24, 2025

*Sent via email only*

Vinita B. Andrapalliyal
Senior Counsel
Christian S. Daniel
Robert C. Bombard
Trial Attorney
United State Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
Vinita.B.Andrapalliyal@usdoj.gov
Christian.S.Daniel@usdoj.gov
Robert.Bombard2@usdoj.gov

RE:   ***State of Washington et al., v. Donald J. Trump, et al.***
        United States District Court for the Western District No. 2:25-00244-LK

Counsel:

We are in receipt of your responses to Plaintiffs' First Set of Interrogatories and Requests for Production as well as your responses to the Subpoena Duces Tecum to Michelle Bulls. Those responses are wholly deficient. This letter sets out the deficiencies in your responses prior to our scheduled meet and confer regarding these issues on Friday, April 25. We demand that Defendants provide supplemental responses fully compliant with the rules and to include a full privilege log no later than Friday, May 2. We expect that supplemental response to provide substantive information and documents that answer, and do not merely evade, our discovery requests.

**The requested information is obviously relevant within the meaning of Rule 26.**

Defendants' primary relevance objection appears to be that the discovery requests are moot because the NIH reinstated Dr. Ahrens' grant after Plaintiffs moved for contempt. And on that basis, your responses suggest the view that you are therefore entitled to disregard Plaintiffs' discovery requests entirely. This is wrong for at least four reasons.

ATTORNEY GENERAL OF WASHINGTON

April 24, 2025
Page 2

*First*, the Court just yesterday confirmed that Plaintiffs may continue to take the discovery the "Court has already ordered in connection with Plaintiffs' motion for contempt." Dkt. #273 p. 8. This is despite the notice Defendants placed on the docket indicating that Dr. Ahrens' grant has been reinstated and that "Defendants' position is that Plaintiffs' expedited discovery requests are now moot." *See* Dkt. #267 p. 2. Each of the requests at issue are designed to elicit facts about that grant termination and why it was done, fitting comfortably within the discovery ordered by the Court. Defendants have no basis to contravene the clear orders of the Court permitting this discovery to continue and overruling Defendants' mootness objection.

*Second*, the issue of Defendants' contempt is not moot. An issue is only moot when "there is no longer a possibility that [a party] can obtain relief for [their] claim." *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 521 (9th Cir. 1999). Here, despite Defendants' efforts to avoid a contempt finding by rescinding the termination of Dr. Ahrens' grant, there is still at least one form of relief this Court can afford Plaintiffs: monetary sanctions. It is well-settled that a claim is not moot if a party may still be entitled to monetary relief. *See, e.g.*, *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 872 (9th Cir. 2002) ("A live claim for nominal damages will prevent dismissal for mootness."). Thus, if the requested discovery confirms the obvious—that Defendants terminated Dr. Ahrens' grant pursuant to the Gender Ideology Order and in violation of the Court's preliminary injunction order—Plaintiffs may still be entitled to monetary sanctions. *See, e.g.*, *Bolbol v. HP Pavilion Mgmt.*, C 04-00082 JW, 2006 WL 8443064, at *4 (N.D. Cal. Aug. 30, 2006) (denying preclusion sanctions as moot post-trial, but nonetheless awarding monetary sanctions).

The case for monetary sanctions would be especially strong if, as we suspect, Defendants made material misrepresentations to the Court in opposing our contempt motion. In that opposition, in the very first sentence of your argument section, Defendants wrote: "NIH terminated this grant using its preexisting authority, *without reference to either EO*." Dkt. #253 p. 6 (emphasis added). Respectfully, we believe this is false. Exhibit 21 to Ms. Bulls' deposition certainly suggests as much. And we are confident that further document discovery will only buttress the obvious conclusion that Dr. Ahrens' grant—and the others about which we have separately written you—were terminated by way of implementing the Gender Ideology Order. We are entitled to take this discovery to evaluate whether Defendants have made false statements to the Court. *See, e.g.*, *United States. v. McCabe*, 323 Fed.Appx. 580 (9th Cir. 2009) (upholding monetary sanction where attorney violated duty of candor to the court); *Williams v. P.I. Properties No. 42, L.P.*, 2:22-cv-05023-ODW, 2022 WL 17252573 at *5 (finding material misrepresentations supported monetary sanctions under Rule 11).

*Third*, even if it were moot, it presents a textbook example of voluntary cessation. A party's "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all

April 24, 2025
Page 3

his unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Thus, to avoid voluntary cessation, Defendants would need to show that their wrongful termination of funding could not "reasonably be expected to recur*." Id*. at 91. They have come nowhere near making this showing. Not only did Defendants comply with the Court's PI order only *after* Plaintiffs moved for contempt, but Defendants have continued to deny any violation of the PI order and, worse, have continued to violate the PI via multiple grant terminations that fly in the face of Judge King's order. Under these circumstances, Defendants cannot overcome voluntary cessation.

*Finally*, if Defendants genuinely believe Plaintiffs' discovery responses are irrelevant in their entirety, their remedy was to seek a protective order from the Court. Fed. R. Civ. Proc. 26(c)(1). But they cannot simply refuse to answer each and every one of Plaintiffs' requests, based on their own unilateral, unexplained determination of irrelevance—particularly since this discovery was Court ordered.

**Defendants' objections are so deficient as to constitute waiver.**

In refusing to answer each and every one of Plaintiffs' requests, Defendants make the same boilerplate objections over and over again, including: "Defendants … object to this request because it seeks information not relevant to the claims and defenses in this case." But as former E.D. Washington—and now Ninth Circuit—Judge Mendoza explained, rote assertions of impropriety do not justify categorical refusals to respond:

> "[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections." *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006). "The burden lies on the objecting party to show that a discovery request is improper. Where a party's objections are themselves vague and impermissibly overbroad, and no specifics are given, the objecting party fails to carry its burden." *Nei v. Travelers Home & Marine Ins. Co.*, 326 F.R.D. 652, 656–57 (D. Mont. 2018) (quoting *Russell v. Daiichi-Sankyo, Inc.*, No. CV 11-34-BLG-CSO, 2012 WL 1161435, *2 (D. Mont. Apr. 6, 2012)). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. Proc. 37(a)(4).

*Kuykendall v. Les Schwab Tire Ctrs. of Wash., Inc.*, 2:20-CV-00154-SMJ, 2021 WL 6275066, at *2 (E.D. Wash. June 30, 2021); *see also, e.g.*, *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 297, 301 (D. Nev. 2019) ("The party resisting discovery must specifically detail the reasons why each request is irrelevant or otherwise objectionable, and may not rely on boilerplate, generalized, conclusory, or speculative arguments.").

And while only mentioned in passing in the responses themselves, in counsel's email of April 22 (after the response deadline) Defendants claim that the objections are based on "proportionality,"

with no further explanation. Proportionality depends on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1).

As discussed above, all of the information requested is relevant to live issues in this case. And there can be no doubt that the stakes of this litigation are of the utmost importance. Plaintiff States allege that the federal government is violating their constitutional rights and the rights of transgender and gender-diverse patients. These are serious allegations for which the Court has issued both a Temporary Restraining Order and a Preliminary Injunction. While claiming that the proposed discovery is not proportional, Defendants simultaneously provide no explanation for why the vast resources of the federal government are insufficient to gather and produce the requested information and documents. And, in fact, Ms. Bulls testified during her deposition that she already gathered responsive materials and gave them to counsel for Defendants. Bulls Tr. 17:7–18, 25:3, 33:11–17. The objections based on "proportionality" are frivolous.

Defendants have made no effort at all to show that the discovery Plaintiffs seek is outside Rule 26's broad scope of relevance or not "proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). And at this point, given Defendants' failure to meaningfully raise objections by the deadline, these objections are waived. *See, e.g.*, *Nelson Design Group LLC v. Obrock Cox PLLC*, 2:23-cv-00275-BAT, 2024 WL 4438112 at *2 (W.D. Wash., August 19, 2024); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection."); *see also Abraham v. Cnty. of Greenville, S.C.*, 237 F.3d 386, 392 (4th Cir. 2001) ("[T]he district court acted within the bounds of its discretion when it concluded that the [defendant's] responses were so inadequate as to constitute no responses under Rule 37.").

**Defendants failed to comply with the rules by providing a privilege log and disclosing whether documents were being withheld.**

Defendants' specific privilege objections are addressed below, but in general they do not provide a privilege log or state whether they are withholding information on the basis of any of their objections as required by rules. Fed. R. Civ. Proc. 26(b)(5), 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection.").

Assertions of privilege must be accompanied by a privilege log that "describe[s] the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. Proc. 26(b)(5). Failing to do so waives the privilege. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) ("We hold that boilerplate objections or blanket refusals inserted into a response to a Rule 34

April 24, 2025
Page 5

request for production of documents are insufficient to assert a privilege."); *Bess v. Cate*, 422 Fed.Appx. 569, 572 (9th Cir. 2011) (It is "well-established law that parties seeking to invoke privileges are not permitted to provide mere blanket objections to discovery requests").

Here, Defendants merely rattled off a list of privileges, including "any other privilege", and object "insofar" as any of them would be implicated. Defendants then state they "will not furnish information in response" to our interrogatories and "Defendants will not produce documents in response" to our requests for production. From these responses, Plaintiffs have no means to evaluate any claims of privilege, do not know whether any of them are actually invoked, and do not even know the full list of privileges being claimed. Defendants' privilege objections are insufficient to invoke the privileges at all and are grossly deficient under the rules.

And, similarly, Defendants' do not state whether they are withholding anything on the basis of repeated relevance objections. Of course, we know Defendants are withholding documents because Ms. Bulls described many of them, and they were not produced. *See* Bulls Tr. 17:7–18, 25:3, 33:11–17. "Rule 34(b)(2)(C) is clear: if a party withholds responsive matter on the basis of an objection, it must so state." *RG Abrams Ins. v. Law Offices of C.R. Abrams*, 2:21-cv-00194-FLA-MAAx, 2021 WL 4805315 at *8 (C.D. Cal. Aug. 10, 2021).

**Defendants' claimed privileges are unsupportable.**

The invocations of the deliberative process privilege, the attorney-client privilege, and the work-product doctrine are overly broad and unsupportable. Plaintiffs address each in turn.

Staring with deliberative process, "[f]or the deliberative process privilege to apply, the material must be 'predicisional' and 'deliberative.'" *Karnoski v. Trump*, 926 F.3d 1180, 1204 (9th Cir. 2019) (quoting *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997)). "The deliberative process privilege shields documents that reflect an agency's preliminary thinking about a problem, as opposed to its final decision about it." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 266 (2021). In the funding context, the privilege distinguishes between "a funding decision already made or, instead, a predecisional memorandum" reflecting "predecisional communication." *Casad v. U.S. Dep't of Health & Human Servs.*, 301 F.3d 1247, 1252 (2002) (evaluating claims of privilege in NIH funding case). Even when applicable, the deliberative process privilege "does not protect documents in their entirety; if the government can segregate and disclose non-privileged factual information within a document, it must." *Karnoski*, 926 F.3d at 1204.

Defendants' broad invocation of the deliberative process privilege is hopelessly inconsistent with this controlling caselaw. They repeatedly invoke the privilege over documents related to final decisions to terminate grants. *See* Pls.' Interrog. No. 3 (invoking privilege in response to request for identities of individuals who authored DOGE social media post announcing list of grants "canceled" by NIH "[t]oday"); Pls.' Req. for Produc. No. 2 (same, for requested communications

related to announced decision to terminate grant and deobligate funds); Pls. Req. for Produc. Nos. 4–7 (same, for requested documents related to publicly announced policies that served as the bases for hundreds of grant terminations). These documents to not reflect decisions that any agency was *in the process* of making: these were decisions HHS, DOGE, and other agencies *had already made and communicated externally*. *See, e.g.*, *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 183 (1975) (deliberative process privilege does not apply to "actual decisions communicated outside the agency").

Ms. Bulls' sworn testimony only confirms this. She testified that she personally terminated "somewhere between five hundred and a thousand" grants in the eleven weeks between January 20, 2025, and April 3, 2025, despite having terminated "less than five" grants in the prior thirteen years in her position. Bulls Tr. 46:16–22; 98:11–24. The documents reflecting those terminations reflect the agency's decision to terminate grants—not its thinking about whether it should. As Ms. Bulls repeatedly confirmed, each grant termination decision came in the form of an email to her attaching a spreadsheet showing which grants she must terminate and why. *Id.* 95:8–97:7, 120:4–14, 121:24–122:14, 124:2–17; 125:20–126:16, 126:25–127:19, 128:7–9, 129:24–131:7, 132:11–133:5, 134:5–136:9, 136:13–137:25, 139:21–140:24. And each of these terminations was reflected in a "master spreadsheet" that Ms. Bulls keeps to track the agency's decisions. *Id.* 93:9–95:7. None of these documents reflecting Defendants' *completed* decision to terminate grants, and the reasons therefore, is possibly deliberative.

Turning to attorney-client privilege, the privilege "is limited to communications made in the course of seeking legal advice from a professional legal adviser in his capacity as such." *Olender v. United States*, 210 F.2d 795, 806 (9th Cir. 1954). The privilege is "narrowly and strictly construed." *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989). Advice on how best to implement policy—such as presidential Executive Orders—is not privileged even when provided by an attorney. *See, e.g.*, *In re County of Erie*, 473 F.3d 413, 421 (2d Cir. 2007) ("When an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor . . . that consultation is not privileged.") (citing *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998)) ("[A]dvice on political, strategic, or policy issues, valuable as it may have been, would not be shielded from disclosure by the attorney-client privilege."). And, where a portion of a document "is subject to attorney-client privilege," that portion of the document may be redacted and "the rest of the document [which is] unprivileged . . . should be produced to Plaintiffs." *AU New Haven, LLC v. YKK Corp.*, No. 15-CV-03411 (GHW)(SN), 2016 WL 6820383, at *7 (S.D.N.Y. Nov. 18, 2016).

Ms. Bulls' deposition establishes the existence of a wide swath of documents not covered by attorney-client privilege. She received instructions to terminate grants from Rachel Riley with the HHS Office of the Secretary, as transmitted through Dr. Matthew Memoli, Dr. Liza Bundesen, and Dr. Jon Lorsch. Bulls Tr. 30:11–33:24, 122:22–123:24. Other emails included individuals from "the Department of Government Efficiency." *Id.* 31:1–14. There is no indication that any of these people are lawyers, or that any of them was transmitting legal advice.

ATTORNEY GENERAL OF WASHINGTON

April 24, 2025
Page 7

The attorney-client privilege cannot support Defendants' blanket refusal to produce discoverable information and documents.

Finally, the work product doctrine protects from discovery in litigation "mental impressions, conclusions, opinions, or legal theories of a party's attorney" that were "prepared in anticipation of litigation or for trial." Fed. R. Civ. Proc. 26(b)(3). "To qualify for work-product protection, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.'" *Am. C.L. Union of N. Cal. v. U.S. Dep't of Just.*, 880 F.3d 473, 484 (9th Cir. 2018) (quoting *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011)).

As discussed above, many of the documents responsive to Plaintiffs' discovery were not prepared by attorneys at all. Nor is there any evidence that they were produced for attorneys in anticipation of litigation—they were produced to notify grantees that their grants had suddenly been terminated because they related to "China," "DEI," "transgender issues," or "vaccine hesitancy." Bulls Tr. 94:8–95:7. There is no credible argument that the grant terminations—including the many documents that direct and document them—were prepared for purposes of litigation, and Defendants' blanket withholding of such documents will not survive a motion to compel.

We look forward to discussing these issues with you tomorrow.

Sincerely,


WILLIAM MCGINTY
Deputy Solicitor General
206-464-7744
William.McGinty@atg.wa.gov

WDM:VJ