# Exhibit 1

The Honorable Lauren J. King

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, et al., | No. 2:25-cv-00244-LJK |
| Plaintiffs, | |
| v. | **DECLARATION OF JON LORSCH, Ph.D.** |
| DONALD TRUMP, in his official capacity as President of the United States, et al., | |
| Defendants. | |

Declaration in Support of Opposition to Motion to Compel
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**1100 L St. NW**
**Washington, DC 20530**
**Tel: 202-305-0845**

## DECLARATION OF JON LORSCH, Ph.D.

I, Jon Lorsch, Ph.D., hereby declare that my testimony below is true and correct to the best of my knowledge and belief and is given under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I am the Acting Deputy Director for Extramural Research at the National Institutes of Health (NIH), an operating division of the U.S. Department of Health and Human Services (HHS). I have held this position since April 7, 2025.

2. In addition to my current role, I am the Director of the National Institute of General Medical Sciences (NIGMS), a position I have held since 2013, where I oversee NIGMS's mission-related activities, supporting basic research that increases understanding of biological processes and lays the foundation for advances in disease diagnosis, treatment, and prevention. I am also a Senior Investigator in the Eunice Kennedy Shriver National Institute of Child Health and Human Development (NICHD), a position I have held since 2014.

3. As Acting Deputy Director for Extramural Research, I am the principal scientific advisor to the NIH Director on all matters relating to the substance, quality, and effectiveness of the NIH extramural research program. I am responsible for overseeing the Office of Extramural Research under the Office of the NIH Director. The Office of Extramural Research "provides the corporate framework for the NIH research administration and works to ensure the scientific integrity, public accountability, and effective stewardship of the NIH research grant portfolio." Office of the Director, NIH, https://www.nih.gov/about-nih/what-we-do/nih-almanac/office-director-nih (last visited May 15, 2025).

4. I make this declaration based on personal knowledge acquired by me in the course of performing my official duties, information contained in NIH records, and information collected through reasonable diligence from those involved in the challenged grant termination initiated in late February and the creation of Exhibits D and E to the Hughes declaration in support of Plaintiffs' Motion to Compel, ECF Nos. 276-4, 276-5.

Declaration in Support of Opposition to Motion to Compel
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

I. **NIH Develops New Priorities**

5. NIH is the largest public funder of biomedical and behavioral research in the world. Its mission is "to seek fundamental knowledge about the nature and behavior of living systems and the application of that knowledge to enhance health, lengthen life, and reduce illness and disability." *See* https://www.nih.gov/about-nih/what-we-do/mission-goals (last accessed May 15, 2025). As one of eight agencies of the U.S. Public Health Service, 42 U.S.C. 281(b), NIH is an operating division of the U.S. Department of Health and Human Services. NIH's authority to conduct and sponsor research and set research priorities arises from the Public Health Services Act (PHSA), 42 U.S.C. section 241, et seq.

6. Section 301 of the PHSA, 42 U.S.C. § 241, sets forth the general authority of the Secretary of Health and Human Services to conduct and support "research, investigations, experiments, demonstrations, and studies relating to the causes, diagnosis, treatment, control, and prevention of physical and mental diseases and impairments of man…" This authority has been delegated to the Director of NIH, and further delegated to the Directors of each institute within NIH.

7. Section 402 of the PHSA, 42 U.S.C. § 282, is the foundational authority of NIH Director which includes authority to conduct "priority-setting reviews," "assess research priorities," and "ensure that the resources of the [NIH] are sufficiently allocated . . . ." *See, e.g.,* Section 402(b)(4),(5), and (6). This is consistent with NIH's inherent authority to determine funding priorities in awarding discretionary grants within a finite amount of appropriations.

8. NIH exercises broad discretion in awarding and administering grants. The Secretary awards grants "to those applicants whose approved projects will in the Secretary's judgment best promote the purposes of the statute authorizing the grant and the regulations of this part." 42 CFR § 52.6(a). Due to finite resources, NIH is only able to fund approximately 20% of grant applications. *See* https://report.nih.gov/nihdatabook/category/10 (last accessed May 15, 2025). Accordingly, one of NIH's core functions is to serve as an effective steward of the extramural research portfolio by ensuring that the limited available funding is directed to

Declaration in Support of Opposition to Motion to Compel
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

only the most promising science consistent with agency priorities.

9. Through the NIH grant award, NIH agrees to support the recipient with a specified level of funding for a specific period. The award document, in turn requires recipients of NIH grant funds to comply with all Federal statutes, regulations, policies, and terms and conditions stated in the Notice of Award (NOA).

10. The NIH Grants Policy Statement (GPS) is a term and condition applicable to all NIH grant awards. Since 2021, the NIH GPS has stated that its grant terms and conditions, including terms and conditions in 2 CFR Part 200, are incorporated into NIH NOAs. *See* 2021 Grants Policy Statement, Sections 3 and 8.5.2, *available at* https://grants.nih.gov/grants/policy/nihgps/nihgps_2021.pdf#page102 (last accessed May 15, 2025). Recipients accept the terms of the NOAs when they draw down funds from the Payment Management System. One term and condition of the NOA is therefore 2 C.F.R. § 200.340, which allows the Government to terminate a grant "pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." 2 CFR § 200.340; *see also* GPS 8.5.2 (stating "NIH may also terminate the grant in whole or in part as outlined in 2 CFR Part 200.340").

11. In accordance with these priority-setting authorities, and, in an effort to exercise sufficient oversight over federal policy, HHS and NIH began issuing policy guidance to NIH personnel in February 2025 that reflects the new funding priorities of agency leadership.

12. As part of that guidance, on February 21, 2025, the Acting Director for NIH issued a Directive on NIH Priorities, Restoring Scientific Integrity and Protecting the Public Investment in NIH Awards ("Directive"). *See* Exhibit A. This Directive expresses that NIH is "committed to promoting only the highest level of scientific integrity, public accountability, and social responsibility in the programs it funds." *Id.* The Directive lists various categories of research that the Acting Director for NIH determined no longer aligns with current agency priorities, including research programs that are based on diversity equity and inclusion (DEI) or

Declaration in Support of Opposition to Motion to Compel
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

gender identity. It instructed that "[g]rants, contracts, cooperative agreements, and other transactions deemed inconsistent with NIH's mission may, where permitted by applicable law, be subject to funding restrictions, terminated or partially terminated, paused, and/or not continued or renewed, in compliance with all procedural requirements." *Id*.

13. The Directive further states that "[w]hile this description of NIH's mission is consistent with recent Executive Orders issued by the President, [the Acting Director] issued this [D]irective based on [his] expertise and experience; consistent with NIH's own obligation to pursue effective, fiscally prudent research; and pursuant to NIH authorities that exist independently of, and precede, those Executive Orders." *Id*.

## II. Grant Terminations

14. In late February, in accordance with the Directive discussed above, NIH began terminating certain grants through termination letters that explained why the grant no longer met the agency's funding priorities.

15. One such grant, entitled "An intervention to promote healthy relationships, among transgender and gender-expansive youth," with the project number 5R21HD107311-02, had been awarded to Seattle Children's Hospital (SCH). On February 28, 2025, NIH terminated the grant through a letter notifying SCH that the grant had been terminated as it was inconsistent with NIH policy and requirements, as outlined in the NIH GPS and 2 CFR § 200.340(a)(4), which provides for termination "if any award no longer effectuates the program goals or agency priorities." ECF 244-1. It is my understanding that NIH terminated the SCH grant in accordance with the Directive, and not pursuant to Section 4 of Executive Order 14187, "Protecting Children from Chemical and Surgical Mutilation" or Sections 3(e) or 3(g) of Executive Order 14168, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government."

16. On March 27, 2025, NIH reinstated the SCH grant. NIH has no plans to terminate the grant again. Funding on the grant is scheduled to end on August 31, 2025.

Declaration in Support of Opposition to Motion to Compel
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

17. NIH has also reinstated several other grants. They include all the grants that Plaintiffs have brought to NIH's attention through counsel.

18. At the same time, NIH continues to award funding for many kinds of research, regardless of whether the grantee institution is providing what is known as "gender-affirming care" as defined by this Court's March 17, 2025 order. *See, e.g.*, NIH RePort – RePorter, Project Details, *Mechanisms of T Cell Quiescence and Exhaustion* (award of $645,962 for a research project at Seattle Children's Hospital noticed on April 17, 2025). *See* https://reporter.nih.gov/search/CN8YMk0bWkKMnsGYFp5nUw/project-details/10995348 (last access May 15, 2015).

### III. NIH Spreadsheet and Tracker Report

19. I have reviewed the spreadsheet Plaintiffs have attached as Exhibit D to the Hughes declaration in support of Plaintiffs' Motion to Compel, ECF No. 276-4, which counsel states was obtained from a current NIH employee.

20. NIH's Office of Extramural Research was not involved in the development of this document. I became aware of the spreadsheet through this litigation.

21. It is my understanding that this spreadsheet was developed and maintained by employees at the Eunice Kennedy Shriver National Institute of Child Health and Human Development (NICHD), including NICHD's Office of the Director, Division of Extramural Research, and Division of Extramural Activities, for NICHD's internal use to track NIH grants administered by NICHD that had been terminated and, until March 14, 2025, the bases for termination set forth in the corresponding termination letters. No one who entered information under the "Termination Reason" column was involved in the decisions to terminate the grants in the spreadsheet, including the SCH grant, nor do they have any personal knowledge concerning the bases for termination apart from the statements in the termination letters. NICHD staff was not directed to add information concerning the Executive Orders to the spreadsheet, nor did they verify the accuracy of those entries with anyone who was involved in the decisions to terminate the relevant grants. To prevent any further confusion, NICHD has been directed to correct the

Declaration in Support of Opposition to Motion to Compel
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

spreadsheets to reflect that the grants were terminated in accordance with agency priorities.

22. I have reviewed the document Plaintiffs have attached as Exhibit E to the Hughes declaration in support of Plaintiffs' Motion to Compel, ECF No. 276-5, which counsel states was obtained from the same current NIH employee who provided Exhibit D. Exhibit E appears to be an autogenerated draft dated March 11, 2025, of a weekly report that NIH submits to HHS, which is intended to describe actions taken by NIH to align with Executive Orders.

23. I had not seen this specific draft report dated March 11, 2025, outside this litigation; however, on or about March 13, 2025, I was asked to review a draft dated March 7, 2025, which is nearly identical in substance. This request for review on March 13, 2025, was the first time I became aware of the report. I have since learned that on or about February 14, 2025, NIH began providing weekly reports intended to describe actions taken by NIH to align with Executive Orders to HHS. In early March, NIH began using NIH's Strategic Tracking and Report Tool (START) to streamline entry of information from various points of contact across NIH to generate the report. The March 11 draft appears to be an early example of such a draft.

24. On March 13, 2025, after reviewing the March 7 draft report, I realized that it incorrectly reported that a number of the Office of Extramural Research activities were being taken pursuant to Executive Orders, rather than in accordance with the Directive. Accordingly, I directed OER staff to develop a separate report addressing OER activities taken in accordance with the Directive, including grant terminations. OER no longer reports such activities in the EO report.

Declaration in Support of Opposition to Motion to Compel
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of May, 2025.

_____

JON LORSCH

*(Digitally signed by Jon R. Lorsch -S, Date: 2025.05.15 14:33:59 -04'00')*

Declaration in Support of Opposition to Motion to Compel
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902