UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP et al., <br><br> Defendants. | CASE NO. 2:25-cv-00244-LK <br><br> ORDER DENYING PLAINTIFFS' MOTION TO COMPEL DISCOVERY |

In a prior order, this Court granted Plaintiffs' request for expedited discovery "as to the narrow issue" of whether a March 4, 2025 grant funding revocation "was carried out on the basis of . . . enjoined provisions in [Executive Order 14,168] based on the fact that either Seattle Children's Hospital or the study at issue provides gender-affirming care." Dkt. No. 258 at 15 (citation modified). Plaintiffs now move to compel Defendants to answer their subsequent discovery requests. Dkt. No. 275. Because Defendants reinstated the grant and are immune from the type of monetary sanctions Plaintiffs sought in their underlying motion for contempt, Plaintiffs' discovery requests are moot, and the Court denies the motion to compel.

ORDER DENYING PLAINTIFFS' MOTION TO COMPEL DISCOVERY - 1

## I. BACKGROUND

On February 7, 2025, three physicians and the States of Washington, Oregon, and Minnesota filed a lawsuit challenging certain sections of President Trump's Executive Order 14,187 (the "Medical Services EO"). Dkt. No. 1. They alleged that Sections 4 and 8(a) of that EO unconstitutionally defund and criminalize gender-affirming care, and moved for a temporary restraining order ("TRO"). *See generally* Dkt. Nos. 1, 11.[1] On February 14, 2025, the Court granted the TRO. Dkt. No. 158.

Plaintiffs filed an amended complaint on February 19, 2025, adding another plaintiff (the State of Colorado) and adding constitutional claims against Sections 3(e) and 3(g) of Executive Order 14,168 (the "Gender Ideology EO"). *See* Dkt. No. 164. Section 3(e) of that EO directs federal agencies to "take all necessary steps, as permitted by law, to end the Federal funding of gender ideology," while Section 3(g) directs that "[f]ederal funds shall not be used to promote gender ideology" and that each agency "assess grant conditions and grantee preferences and ensure grant funds do not promote gender ideology." Dkt. No. 17-2 at 3.[2] Plaintiffs moved for a preliminary injunction that same day, Dkt. No. 169, which this Court granted in part on February 28, 2025, Dkt. No. 233. As relevant here, the preliminary injunction enjoins all Defendants except President Trump from "enforcing Sections 3(e) or 3(g) of [the Gender Ideology EO] to condition or withhold federal funding based on the fact that a health care entity or health professional provides gender-affirming care within the Plaintiff States." Dkt. No. 233 at 53.

---

[1] Section 4 of the Medical Services EO directs "[t]he head of each executive department or agency (agency) that provides research or education grants to medical institutions, including medical schools and hospitals," to "immediately take appropriate steps to ensure that institutions receiving Federal research or education grants end" four types of medical treatments. Dkt. No. 17-1 at 2–3. Section 8(a) directs the Attorney General to "prioritize enforcement of protections against female genital mutilation" under 18 U.S.C. § 116. *Id.* at 3.

[2] The Gender Ideology EO defines "Gender ideology" as "replac[ing] the biological category of sex with an ever-shifting concept of self-assessed gender identity, permitting the false claim that males can identify as . . . women and vice versa[.]" *Id.* at 2.

ORDER DENYING PLAINTIFFS' MOTION TO COMPEL DISCOVERY - 2

On March 6, 2025, less than a week after the preliminary injunction was issued, Plaintiffs filed a motion for contempt, arguing that Defendants violated the TRO and preliminary injunction by terminating a grant that had been awarded to Seattle Children's Hospital after the Court's orders were in place. Dkt. No. 243. The Court did not grant Plaintiffs' motion for contempt, but it did grant Plaintiffs' alternative request for expedited discovery into whether the March 4, 2025 revocation of funding for the grant violated the preliminary injunction. Dkt. No. 258 at 3, 13, 15.

Between March 19 and March 25, 2025, Plaintiffs served their First Set of Interrogatories and Requests for Production on Defendants as well as a Subpoena Duces Tecum on Michelle Bulls, the signatory of the grant termination letter. Dkt. No. 276 at 1. On March 27, 2025, NIH reinstated the grant in full. Dkt. No. 267 at 2. In their subsequent Notice of Reinstatement, Defendants stated that their "position is that Plaintiffs' expedited discovery requests are now moot." *Id.*

On March 28, 2025, the parties held a Rule 26(f) conference. Dkt. No. 270 at 2. On April 18, 2025, Defendants served their objections and responses to Plaintiffs' written discovery. Dkt. Nos. 276-10, 276-11. Defendants did not provide substantive answers to Plaintiffs' interrogatories, nor did they produce any documents. *See generally* Dkt. Nos. 276-10, 276-11; Dkt. No. 275 at 7. Instead, they generally objected that because the grant was reinstated, any "expedited discovery, and any discovery relating to the contempt issues Plaintiffs previously raised, is moot." Dkt. No. 276-10 at 2–3; Dkt. No. 276-11 at 3. Additionally, they lodged objections on the basis of relevance, privilege, overbreadth, and attorney-client privilege. *See* Dkt. No. 276-10 at 4–10; Dkt. No. 276-11 at 4–9.

On April 23, 2025, the Court granted Defendants' motion for a limited stay of district court proceedings pending appeal, with an exception for "any (1) necessary and jurisdictionally proper proceedings regarding the scope or enforcement of the preliminary injunction, including the limited discovery this Court has already ordered in connection with Plaintiffs' motion for contempt

and any other discovery ordered in connection with future compliance proceedings; (2) amendments to the operative complaint and associated motions for leave and for preliminary relief; and (3) motions for relief from the stay." Dkt. No. 273 at 8.

On April 25, 2025, the parties met and conferred in an attempt to resolve their dispute over the discovery sought by Plaintiffs, Dkt. No. 276 at 3; Dkt. No. 282-1 at 9, and on April 30, 2025, Plaintiffs filed their motion to compel, Dkt. No. 275.

## II. DISCUSSION

Under Federal Rule of Civil Procedure 37(a)(1), "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." The party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of explaining and supporting its objections. *Doe v. Trump*, 329 F.R.D. 262, 270 (W.D. Wash. 2018).

Here, the parties' disagreement centers on whether Plaintiffs' discovery requests have been mooted by Defendants' reinstatement of the grant in question. Mootness occurs "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

As discussed above, the Court permitted Plaintiffs to conduct expedited discovery into the "narrow issue" of "whether the March 4 funding revocation was carried out on the basis of the enjoined provisions in the Gender Ideology EO 'based on the fact that' either Seattle Children's Hospital or the study at issue 'provides gender-affirming care[.]'" Dkt. No. 258 at 15 (quoting Dkt. No. 233 at 53). If discovery revealed that Defendants contemptuously disobeyed the Court's order, Plaintiffs sought (1) reinstatement of the terminated grant and (2) attorneys' fees pursuant to the Court's inherent "civil contempt authority." Dkt. No. 243 at 6–7, 9, 14. Ten days after the Court ordered expedited discovery, Defendants reinstated the grant. Dkt. No. 267 at 2.

While Defendants' reinstatement of the grant provides Plaintiffs with some of the relief they sought for Defendants' alleged contempt, Plaintiffs argue that "the issue of Defendants' contempt is not moot" because they "may still be entitled to monetary sanctions" if discovery reveals that the grant was terminated in violation of the Court's order. Dkt. No. 275 at 8. Furthermore, in Plaintiffs' view, the Court "confirm[ed] . . . that Plaintiffs remain entitled to the [expedited] discovery" in its order granting Defendants' motion to stay the case pending appeal, which was issued after the grant was reinstated. *Id.* at 7.

Defendants respond that they are immune from the monetary contempt sanctions sought by Plaintiffs in their underlying contempt motion, so the contempt discovery is moot. Dkt. No. 282-1 at 12–13. They also contend that "[n]othing about the Court's stay order . . . addressed the separate, unbriefed question of whether the compliance proceedings were moot." *Id.* at 15.

Sovereign immunity is the familiar principle that the government cannot be sued except by the consent of Congress. *United States v. Testan*, 424 U.S. 392, 399 (1976). Thus, "sovereign immunity bars an award of attorneys' fees against the United States unless a statute expressly authorizes such an award." *Anderson v. United States*, 127 F.3d 1190, 1191 (9th Cir. 1997); *see also United States v. Mitchell,* 463 U.S. 206, 212 (1983). That is not to say sovereign immunity is absolute. Congress can waive it, but only by an unequivocal expression in statutory text. *Lane v. Pena,* 518 U.S. 187, 192 (1996); *but see Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 388–90 (2023) (provision of Bankruptcy Code waiving immunity of "governmental units" encompasses tribes although definition of "governmental units" does not list tribes); *Mattingly v. United States*, 939 F.2d 816, 818 (9th Cir. 1991) (suggesting that the Federal Rules of Civil Procedure waive the United States' immunity). In other words, "Congress, not the courts, is the government's authorized representative for purposes of waiving sovereign immunity." *United States v. Horn*, 29 F.3d 754, 764 (1st Cir. 1994).

1   Plaintiffs do not respond to Defendants' immunity argument, instead misconstruing the
2   argument as one asserting that they "did not raise monetary sanctions in their motion for
3   contempt[.]" Dkt. No. 280 at 4 (citation modified). What Defendants actually argued, however,
4   was that Plaintiffs did not raise monetary sanctions *under "Rule 37 or Rule 11"* in their motion
5   for contempt, Dkt. No. 282-1 at 11–12 (emphasis added)—rules that permit an award of fees
6   against the United States, *Barry v. Bowen*, 884 F.2d 442, 443–44 (9th Cir. 1989) ("[T]his court has
7   upheld the imposition of sanctions against the government" under Rules 11, 37(b), and 60.).
8   According to Defendants, because the basis for Plaintiffs' requested contempt sanctions was the
9   Court's inherent civil contempt authority (as opposed to a Federal Rule), and "the Ninth Circuit
10  has not 'found[] anything which suggests that the United States expressly has waived its sovereign
11  immunity with respect to contempt sanctions,'" the possibility of monetary sanctions cannot keep
12  the contempt motion live. Dkt. No. 282-1 at 12–13 (quoting *Barry*, 884 F.2d at 443). The Court
13  agrees.

14  The Ninth Circuit has held that the United States may be monetarily sanctioned under
15  various laws for disobeying a court order and other misconduct. *See, e.g.*, *Rodriguez v. United
16  States*, 542 F.3d 704, 709 (9th Cir. 2008) (fees are available under the Equal Access to Justice Act
17  when the United States has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons"
18  (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46 (1991)); *United States v. Woodley*, 9 F.3d
19  774, 782 (9th Cir. 1993) (inherent contempt sanctions permit the court to award fees for violation
20  of a statute, constitutional or other recognized right)[3]; *Mattingly*, 939 F.2d at 818 ("The
21  government is not immune from Rule 11 sanctions."); *United States v. Sumitomo Marine & Fire*

---

[3] *See also United States v. Cloud*, 102 F.4th 968, 982 (9th Cir. 2024) (reiterating that sanctions imposed pursuant to a Court's supervisory powers are "justified only when a recognized right has been violated" (quoting *Woodley*, 9 F.3d at 781).

ORDER DENYING PLAINTIFFS' MOTION TO COMPEL DISCOVERY - 6

*Ins. Co.*, 617 F.2d 1365, 1371 (9th Cir. 1980) ($500 sanction imposed personally on government counsel under Rule 37 in response to "flagrant disobedience of court orders by government counsel"); *Schanen v. United States Department of Justice,* 798 F.2d 348, 350 (9th Cir. 1985) (Rule 60 fees and costs imposed on the government for lack of diligence). However, the Ninth Circuit has also held that the government is immune from sanctions imposed under a federal court's inherent civil contempt authority for the government's failure to obey a court order. *Barry*, 884 F.2d. In *Barry*, the district court imposed sanctions of $100 per day on the Department of Health and Human Services for each day it failed to abide by the court's prior order requiring it to pay the plaintiff's fees and costs. *Id.* at 442–43. On appeal, the government argued that "the district court's award of monetary sanctions for contempt violated the sovereign immunity of the United States." *Id.* at 443. The Ninth Circuit agreed, stating that it could not find "anything which suggests that the United States expressly has waived its sovereign immunity with respect to contempt sanctions." *Id.*

      Again, Plaintiffs did not respond to Defendants' immunity argument here. "Under the principle of party presentation, courts must presume that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *Todd R. v. Premera Blue Cross Blue Shield of Alaska*, 825 F. App'x 440, 442 (9th Cir. 2020) (citation modified). This principle prevents the Court from manufacturing arguments for Plaintiffs or importing their prior arguments, *see, e.g.*, Dkt. No. 254 at 8, into the briefing currently before it. In the latter briefing, Plaintiffs do not point to any express waiver of sovereign immunity that would permit the Court to impose contempt sanctions under its inherent authority under these circumstances. Although sanctions may be available via other paths as detailed above, the particular path Plaintiffs pursued is foreclosed by sovereign immunity.

ORDER DENYING PLAINTIFFS' MOTION TO COMPEL DISCOVERY - 7

The Court also agrees with Defendants that its order granting their motion to stay did not reject their mootness argument. *See* Dkt. No. 282-1 at 15. Defendants' March 28, 2025 Notice of Reinstatement, in which they stated their position that "Plaintiffs' expedited discovery requests are now moot," Dkt. No. 267 at 2, did not require the Court to determine the issue because such notice was not a request for relief from the Court. Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."). The Court's stay order mentioned the expedited discovery to exempt it from the stay (as Defendants had expressly requested), Dkt. No. 273 at 5–6, 8, but did not address the separate, unbriefed question of whether that discovery was moot.

### III.  CONCLUSION

Because Plaintiffs' discovery requests are moot, the Court DENIES their motion to compel. Dkt. No. 275.

Dated this 16th day of June, 2025.

Lauren King
United States District Judge