The Honorable Lauren King

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, *et al.*,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>　　　　　　　　　Defendants. | No. 2:25-cv-00244-LK<br><br>**DEFENDANTS' REPLY TO MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL**<br><br>Noted For Consideration:<br>August 25, 2025 |

DEFENDANTS' REPLY TO MOTION TO STAY
PRELIMINARY INJUNCTION PENDING APPEAL
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

**INTRODUCTION**

Three Supreme Court decisions issued since this Court entered the preliminary injunction demonstrate that Defendants are likely to prevail on the merits of their appeal. Plaintiffs' opposition does not show otherwise. The Court, therefore, should stay its injunction pending appeal.

**ARGUMENT**

I. **DEFENDANTS ARE LIKELY TO PREVAIL ON THE MERITS OF THEIR APPEAL.**

   A. *The Executive Orders comport with separation of powers principles.*

In *Trump v. American Federation of Government Employees*, No. 24A1174, 606 U.S. __ , 2025 WL 1873449 (U.S. July 8, 2025) ("*AFGE*"), the Supreme Court stayed a preliminary injunction against enforcement of an executive order directing agencies to undertake actions "consistent with applicable law," where the district court's decision was not based on "any assessment" of specific agency action taken in response to the executive order. This Court made the same error in adjudicating Plaintiffs' separation of powers claim. Plaintiffs contend *AFGE* is distinguishable, but their arguments lack merit.

*First*, Plaintiffs claim that, unlike in *AFGE*, "where Congress had explicitly authorized federal agencies to conduct reductions in force," this Court determined there is no "congressionally authorized condition requiring [medical institutions] to refrain from the provision of gender-affirming care." Opp. at 3. But that argument rests on mistakes regarding both the scope of agencies' statutory authority and Plaintiffs' burden on a facial, *ultra vires* challenge. Plaintiffs must show that *no* agency could take *any* hypothetical action to carry out the policies of the challenged EOs that is even plausibly within its statutory and constitutional authority. *See Nuclear Regul. Comm'n v. Texas*, 145 S. Ct. 1762, 1775–76 (2025); *Reno v.*

DEFENDANTS' REPLY TO MOTION TO STAY
PRELIMINARY INJUNCTION PENDING APPEAL
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

*Flores*, 507 U.S. 292, 301 (1993). The mere absence of a statute that *affirmatively* requires medical institutions to refrain from providing gender-affirming care does not speak to the relevant question, which is whether agencies have discretion to implement the EOs within the limits Congress *has* established. They do.

In choosing between multiple applicants for a limited pool of funds, when Congress makes a lump-sum appropriation to an agency, or when Congress authorizes agencies to impose conditions on grants, agencies may act consistent with the EOs and the relevant statutes. *See, e.g.*, 42 U.S.C. § 241 *et seq*. (conferring broad authority on the Secretary of HHS to fund research and to award research grants for various purposes); 45 C.F.R. § 75.210(b)(1)(ii) (HHS grant terms may "include statutory, *executive order*, other Presidential directive, or regulatory requirements") (emphasis added); *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) ( "[T]he very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way."); *South Dakota v. Dole*, 483 U.S. 203, 206 (1987) (noting Congress may delegate power to the Executive Branch to condition receipt of funds "upon compliance by the recipient with federal . . . administrative directives.").

*Second*, Plaintiffs assert that the executive order in *AFGE* only required preparation for future agency action, whereas the EOs here "direct immediate action." Opp. at 4. But that is not what the EOs say. They do not direct agencies to immediately cut off funds. Rather, what agencies must do "immediately" is to "take *appropriate steps* to ensure" that funds do not go to certain activities, Protecting Children EO § 4 (emphasis added)—with "appropriate" defined in reference to the "applicable law" emphasized earlier in the same sentence, *id*. *Accord* Defending Women EO § 3(e). The EOs are not self-executing and do not themselves terminate

DEFENDANTS' REPLY TO MOTION TO STAY
PRELIMINARY INJUNCTION PENDING APPEAL
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

or condition any grant, but rather task agencies with determining in the first instance the extent to which their statutory grant authorities allow the imposition of conditions or prioritization of funded activities consistent with the policies in the EOs.

*Finally*, Plaintiffs' error in relying on *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1238 (9th Cir. 2018), to discount the EOs' instruction that agencies comply with applicable law is reinforced by *AFGE*. Both the district court in entering the injunction in *AFGE* and the Ninth Circuit in denying a stay relied on *San Francisco* to ignore an executive order's instruction that it be implemented "consistent with law". *See AFGE v. Trump*, 139 F.4th 1020, 1038 (9th Cir. 2025); *AFGE v. Trump*, No. 25-cv-03698, 2025 WL 1482511, at *23 (N.D. Cal. May 22, 2025). But the Supreme Court disagreed. The government was likely to succeed on the merits where the district court's injunction was premised on "its view about the illegality of the Executive Order and Memorandum, not on any assessment of the [agency] plans themselves," *AFGE*, 2025 WL 1873449, at *1; *see id*. (Sotomayor, J., concurring in the grant of stay). *AFGE* thus makes clear that the EOs' direction that agencies follow the law cannot be treated as merely "theoretical." Rather, "if an executive agency … may lawfully implement the Executive Order, then it must do so; if the agency is prohibited, by statute or other law, from implementing the Executive Order, then the Executive Order itself instructs the agency to follow the law." *Building & Constr. Trades Dep't v. Allbaugh,* 295 F.3d 28, 33 (D.C. Cir. 2002). Agencies should be afforded the presumption that they will act consistent with applicable law. And, of course, nothing precludes Plaintiffs from suing over concrete, allegedly illegal actions.

DEFENDANTS' REPLY TO MOTION TO STAY
PRELIMINARY INJUNCTION PENDING APPEAL
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

### B. Plaintiffs' equal protection arguments fail under *Skrmetti*.

In *United States v. Skrmetti*, 605 U.S. __, 145 S. Ct. 1816 (2025), the Supreme Court held that a Tennessee law addressing the same sex transition interventions on minors as the challenged EOs did not classify based on sex or transgender status and satisfied rational basis review. Plaintiffs do not dispute that the EOs would satisfy rational basis review under *Skrmetti*. They instead claim the EOs are subject to heightened scrutiny because they classify based on sex and transgender status notwithstanding their similarity to the Tennessee law. These arguments fail.

Plaintiffs contend the Protecting Children EO "prohibits medical services for proscribed *people*, not just for proscribed purposes" and lacks "carveouts" for treatments addressing medical conditions besides gender dysphoria. Opp. at 7. But that reading of the EO is incompatible with "its text, which must be construed consistently with the Order's object and policy." *San Francisco*, 897 F.3d at 1238. Like the Tennessee law in *Skrmetti*, the Protecting Children EO addresses only sex transition interventions for children, which are sometimes referred to as "gender affirming care." The EO expressly describes the interventions in its ambit as "gender affirming care." § 2. And the purpose of the EO is to prevent medical professionals from "maiming and sterilizing a growing number of impressionable children under the radical and false claim that adults can change a child's sex through a series of irreversible medical interventions." § 1. The EO thus articulates a policy that the United States "will not fund … the so-called 'transition' of a child from one sex to another." *Id*. The EO does not address, and has no application to, unrelated treatments for cancer or other diseases, irrespective of whether the child in need of such treatments identifies as transgender.

DEFENDANTS' REPLY TO MOTION TO STAY
PRELIMINARY INJUNCTION PENDING APPEAL
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

As to the Defending Women EO, Plaintiffs curiously (but correctly) assert that the EO "does not deny funding for institutions that treat or study gender-dysphoria or any other *medical condition*." Opp. at 6. That concession alone warrants a stay of the portion of the Court's injunction prohibiting Defendants from "enforcing Sections 3(e) or 3(g) of Executive Order 14,168 to condition or withhold federal funding based on the fact that a health care entity or health professional provides gender-affirming care within the Plaintiff States." ECF. No. 233 ("PI Order") at 53. Plaintiffs now agree the EO doesn't do that.

Instead, Plaintiffs claim the EO "denies funding to any person or institution that accepts 'gender ideology,' or the idea that people may have gender identities incongruent with the sex they were assigned at birth." Opp. at 6. But this Court's order did not adopt that reading of the EO. In any event, the relevant question is whether the EO makes classifications of persons based on sex or transgender status. It does not. Indeed, Sections 3(e) and 3(g) of the Defending Women EO do not draw lines based on anyone's status. And to the extent this Court based its decision on a determination that the Defending Women EO, like the Protecting Children EO, "conditions grant funding based on whether grant recipients offer—among other things—gender-affirming services for individuals with gender dysphoria," (PI Order at 30) (a theory Plaintiffs now disclaim), there is no basis for subjecting the Defending Women EO to a different level of scrutiny than the Protecting Children EO or reaching a different result.

Nor do the EOs rest on discriminatory animus. *See* Opp. at 7-8. *Skrmetti* recognized the substantial "medical and scientific uncertainty" surrounding these interventions and acknowledged that "open questions regarding basic factual issues" remain. 145 S. Ct. at 1836-37. The Protecting Children EO is motivated by the same concerns with sex transition interventions for children that supported the Tennessee law banning them outright, including

DEFENDANTS' REPLY TO MOTION TO STAY
PRELIMINARY INJUNCTION PENDING APPEAL
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

protecting vulnerable children from interventions that "are experimental, can lead to later regret, and are associated with harmful – and sometimes irreversible – risks. *Id.* at 1832. *Compare id.*, with Protecting Children EO § 1 ("Policy and Purpose"). Their purpose is to protect the health and welfare of all children, regardless of sex or transgender status, which the Court in *Skrmetti* held does not evince sex stereotyping and was a legitimate government interest. *Id.* at 1832.

### C.   *CASA* forecloses sweeping statewide relief.

The Court's multi-statewide injunction cannot stand under *CASA*, which confirmed that equitable relief is limited to providing at most complete relief between the parties. *CASA*, 2025 WL 1773631, at *11 (quotation omitted). Plaintiffs admit the injunction grants relief to nonparties but argue administrative convenience or "workability" justifies it. That argument fails. Statewide relief is not necessary to provide complete relief to Plaintiffs.

Workability concerns do not expand Article III jurisdiction, nor does Plaintiffs' unwillingness to identify affected parties with standing. Even if lingering effects remained, they would not justify a sweeping injunction covering nonparties in four states. *Id.* at *12 (complete relief is a "maximum" and not a "guarantee"). Nor are Plaintiffs' amorphous concerns that the EOs "thwart the development of provider networks in the Plaintiff States" or that "future patients may lawfully seek gender-affirming health care anywhere within the Plaintiff States" (Opp. at 13) sufficient reasons to provide sweeping statewide relief. As explained in *CASA*, "the question is not whether an injunction offers complete relief to *everyone* potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*." *Id.* at *11. Providing relief to nonparty healthcare providers throughout the plaintiff states and unidentified future patients who may

DEFENDANTS' REPLY TO MOTION TO STAY
PRELIMINARY INJUNCTION PENDING APPEAL
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

seek care from unspecified providers "would not render [Plaintiffs'] relief any more complete." *Id.*

## II. THE REMAINING STAY FACTORS FAVOR DEFENDANTS.

Plaintiffs overstate their alleged harms while ignoring the substantial and irreparable harms imposed on Defendants. Plaintiffs cannot rely on actions not challenged in this case, that they don't claim violate the preliminary injunction, to support their claim of harm absent an injunction. *See* Opp. at 1-2, 11-12. If Plaintiffs believe the various actions they identify are unlawful and harming them, they can bring suit to challenge those actions (as other parties have). But Plaintiffs cannot rely on alleged harm from those actions to justify an injunction against the EOs.

On the other side of ledger, blocking the Executive Branch from pursuing policy objectives, consistent with applicable law, especially in areas implicating child welfare, intrudes on the President's constitutional authority and inflicts institutional harm. *INS v. Legalization Assistance Project of the L.A. Cnty. Fed'n of Lab.*, 510 U.S. 1301, 1306 (1993) (O'Connor, J., in chambers). Defendants, moreover, have never "consent[ed]" to the preliminary injunction. Opp. at 12. They appealed the order shortly after it was issued. And they timely filed this stay motion after three intervening Supreme Court decisions clearly established that this Court's injunction was entered in error.[1]

## **CONCLUSION**

The Court should grant Defendants' Motion to Stay the Preliminary Injunction Pending Appeal.

---

[1] Plaintiffs' alternative request to dissolve the stay of proceedings is procedurally improper. Fed. R. Civ. P. 7(b)(1) requires a motion to seek such relief.

DEFENDANTS' REPLY TO MOTION TO STAY
PRELIMINARY INJUNCTION PENDING APPEAL
*State of Washington, et al. v. Trump, et al.*, No. 2:25-cv-00244-LK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

DATED: August 25, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE BENNETT
Assistant Branch Director
Federal Programs Branch

*/s/ Robert C. Bombard*
ROBERT C. BOMBARD
Trial Attorney (CO Bar No. 45388)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel: (202) 616-0773
Fax: (202) 616-8460
robert.bombard2@usdoj.gov

*Attorneys for Defendants*

*I certify that this memorandum contains 2,041 words, in compliance with the Local Civil Rules.*

DEFENDANTS' REPLY TO MOTION TO STAY
PRELIMINARY INJUNCTION PENDING APPEAL
State of Washington, et al. v. Trump, et al., No. 2:25-cv-00244-LK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel: 202-305-0845

# CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2025, I electronically filed the foregoing Reply to Motion to Stay Preliminary Injunction Pending Appeal using this Court's CM/ECF system, causing a notice of filing to be served upon all counsel of record.

Dated: August 25, 2025

/s/ Robert C. Bombard
ROBERT C. BOMBARD

DEFENDANTS' REPLY TO MOTION TO STAY
PRELIMINARY INJUNCTION PENDING APPEAL
State of Washington, et al. v. Trump, et al., No. 2:25-cv-00244 -LK

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902