UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON et al., | CASE NO. 2:25-cv-00244-LK |
| Plaintiffs, | ORDER DENYING MOTION TO STAY |
| v. | |
| DONALD J. TRUMP et al., | |
| Defendants. | |

This matter comes before the Court on Defendants' Motion to Stay Preliminary Injunction Pending Appeal. Dkt. No. 288. Defendants request that the Court stay its preliminary injunction pending appeal or, in the alternative, narrow the preliminary injunction "to apply only to grant recipients owned or operated by one of the Plaintiff States and grant recipients where the Plaintiff physicians provide services." *Id.* at 3. For the reasons set forth below, the Court denies the motion.

## I.    BACKGROUND

On February 7, 2025, three physicians and the States of Washington, Oregon, and Minnesota filed a lawsuit challenging certain sections of President Trump's Executive Order 14,187 (the "Medical Services EO"). Dkt. No. 1. They alleged that Sections 4 and 8(a) of that EO

unconstitutionally defund and criminalize gender-affirming care, and moved for a temporary restraining order ("TRO"). *See generally* Dkt. Nos. 1, 11.[1] On February 14, 2025, the Court granted the TRO. Dkt. No. 158.

Plaintiffs filed an amended complaint on February 19, 2025, adding another plaintiff (the State of Colorado) and adding constitutional claims against Sections 3(e) and 3(g) of Executive Order 14,168 (the "Gender Ideology EO"). *See* Dkt. No. 164.[2] Plaintiffs moved for a preliminary injunction that same day, Dkt. No. 169, which this Court granted in part on February 28, 2025, Dkt. No. 233. The preliminary injunction enjoins all Defendants except President Trump from "enforcing or implementing Section 4 of [the Medical Services EO] within the Plaintiff States" or "enforcing Sections 3(e) or 3(g) of [the Gender Ideology EO] to condition or withhold federal funding based on the fact that a health care entity or health professional provides gender-affirming care within the Plaintiff States." *Id.* at 53. The Court denied Defendants' request for a stay pending appeal. *Id.* at 52.

On March 21, 2025, Defendants appealed the Court's preliminary injunction, Dkt. No. 233, and subsequent order granting expedited discovery, Dkt. No. 258, to the Ninth Circuit. Dkt. No. 262. That same day, Defendants filed a motion in this Court for a limited stay of district court proceedings pending the appeal. Dkt. No. 263. On April 23, 2025, the Court granted Defendants' motion. Dkt. No. 273. It excepted from the stay

---

[1] Section 4 of the Medical Services EO directs "[t]he head of each executive department or agency (agency) that provides research or education grants to medical institutions, including medical schools and hospitals," to "immediately take appropriate steps to ensure that institutions receiving Federal research or education grants end" four types of medical treatments. Dkt. No. 17-1 at 2–3. Section 8(a) directs the Attorney General to "prioritize enforcement of protections against female genital mutilation" under 18 U.S.C. § 116. *Id.* at 3.

[2] Section 3(e) of that EO directs federal agencies to "take all necessary steps, as permitted by law, to end the Federal funding of gender ideology," while Section 3(g) directs that "[f]ederal funds shall not be used to promote gender ideology" and that each agency "assess grant conditions and grantee preferences and ensure grant funds do not promote gender ideology." Dkt. No. 17-2 at 3. The Gender Ideology EO defines "Gender ideology" as "replac[ing] the biological category of sex with an ever-shifting concept of self-assessed gender identity, permitting the false claim that males can identify as . . . women and vice versa[.]" *Id.* at 2.

(1) necessary and jurisdictionally proper proceedings regarding the scope or enforcement of the preliminary injunction . . . ; (2) amendments to the operative complaint and associated motions for leave and for preliminary relief; and (3) motions for relief from the stay.

*Id.* at 8.

Several months later, on July 28, 2025, Defendants filed the pending motion to stay the preliminary injunction. Dkt. No. 288.

## II.    DISCUSSION

Defendants premise their motion on three Supreme Court cases that were decided several months after the preliminary injunction order. Dkt. No. 288 at 2. On June 18, 2025, the Supreme Court upheld a Tennessee law prohibiting certain medical treatments for transgender youth. *United States v. Skrmetti*, 605 U.S. 495 (2025). The Court determined that the law did not classify based on sex or transgender status, and that it survived rational basis scrutiny. *Id.* at 510–25. On June 27, 2025, the Court stayed various universal injunctions, holding that because a federal court's power is limited to "provid[ing] complete relief to each plaintiff with standing to sue," the injunctions at issue exceeded the judiciary's power. *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025). Finally, on July 8, 2025, the Supreme Court stayed a preliminary injunction of an executive order because, among other things, the Government was "likely to succeed on its argument that the Executive Order and Memorandum are lawful[.]" *Trump v. Am. Fed'n of Gov't Emps.* ("*AFGE*"), 145 S. Ct. 2635, 2635 (2025). The Court did not explain why the Government was likely to succeed, but Defendants point out that Justice Sotomayor stated in her concurrence that "the relevant Executive Order directs agencies to plan reorganizations and reductions in force 'consistent with applicable law,'" and because the "plans themselves" were not before the Court, it had "no occasion to consider whether they can and will be carried out consistent with the constraints of law." Dkt. No. 288 at 4 (quoting *AFGE*, 145 S. Ct. at 2635 (Sotomayor, J., concurring)). Defendants argue that

these Supreme Court decisions "undermine this Court's determination that Plaintiffs are likely to prevail on the merits of their claims and that a multi-statewide preliminary injunction was appropriate." Dkt. No. 288 at 2.

Defendants' motion fails on numerous independent grounds. First, it is procedurally improper. Because this case is stayed and the Court has already ruled on Defendants' earlier request to stay its preliminary injunction order, Defendants' motion should have been styled as a motion to lift the stay to file a motion for leave to seek reconsideration of the Court's denial of that prior request. Dkt. No. 233 at 52. Defendants do not address the current stay except in a three-sentence footnote arguing that the stay "does not prevent [them] from filing, or the Court from resolving, the instant motion." Dkt. No. 288 at 2 n.1. Although Defendants suggest in conclusory fashion that their motion falls within one exception from the stay—namely, "necessary and jurisdictionally proper proceedings regarding the scope or enforcement of the Court's preliminary injunction," *id.* (citing Dkt. No. 273 at 5), Defendants themselves characterized this exception as "protect[ing] *Plaintiffs'* interests" in enforcing the injunction during the pendency of a stay. Dkt. No. 263 at 8 (emphasis added); *see also id.* at 2 (Defendants clarifying that they "do not propose to stay any ancillary proceedings regarding *compliance with the preliminary injunction*" (emphasis added)).

Furthermore, even assuming that Defendants' motion were properly characterized as "regarding the scope or enforcement of the Court's preliminary injunction," they make no attempt to explain why it would be "necessary and jurisdictionally proper" to entertain the motion at this juncture. Given that (1) Defendants failed to file a motion for reconsideration; (2) their arguments regarding the above-described Supreme Court cases were never presented to this Court and are currently pending before the Ninth Circuit, where Defendants did not seek a stay of the preliminary injunction despite this Court's denial of that relief prior to their appeal, *see State of Washington,*

1   *et al. v. Trump, et al.*, No. 25-1922 (9th Cir.);[3] and (3) Defendants waited until July 28, 2025—40

2   days, 31 days, and 20 days, respectively, after the above decisions were issued—to seek a stay,[4]

3   and have significantly delayed the Ninth Circuit's consideration of their appeal by seeking multiple

4   extensions of their reply brief deadline, *State of Washington, et al. v. Trump, et al.*, No. 25-1922,

5   Dkt. No. 57 (asking for a seven-day extension); *id.*, Dkt. No. 58 at 2 (proposing that after a stay

6   during the government shutdown, "the reply brief deadline be extended for the number of days

7   commensurate with the duration of the lapse in appropriations, plus an additional 14 days"; i.e.,

8   55 days as of the date of this Order),[5] the Court finds that it is not "necessary and jurisdictionally

9   proper" for it to entertain Defendants' procedurally improper motion.

10          Second, even if Defendants' motion could be characterized as a motion for reconsideration

11  that is permissible under the current stay, Defendants fail to address the standards for considering

12  a late motion for reconsideration of the Court's prior order. *See generally* Dkt. No. 288. Under

13  these standards, diligence is key: Local Civil Rule 7(h)(1) requires a movant to show why new

14  legal authority "could not have been brought to [the Court's] attention earlier with reasonable

15  diligence." LCR 7(h)(1). And to convince a court to consider a *late* motion for reconsideration, a

16  movant is also required to demonstrate good cause and excusable neglect. Fed. R. Civ. P. 6(b)(1).

17  The good cause inquiry "primarily considers the diligence of the party seeking the [extension],"

18  and "[i]f th[e moving] party was not diligent, the inquiry should end." *Johnson v. Mammoth*

19  *Recreations*, Inc., 975 F.2d 604, 609 (9th Cir. 1992); *accord Zivkovic v. S. Cal. Edison Co.*, 302

20

---

21  [3] *See also McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982)
(Federal Rule of Civil Procedure 62(d) "does not restore jurisdiction to the district court to adjudicate anew the merits

22  of the case").

    [4] *See Skrmetti*, 605 U.S. 495 (decided June 18, 2025); *CASA, Inc.*, 606 U.S. 831 (decided June 27, 2025); *AFGE*, 145
23  S. Ct. 2635 (decided July 8, 2025).

    [5] But for these delays, briefing before the Ninth Circuit would have been completed on October 3, 2025. *State of*
24  *Washington, et al. v. Trump, et al.*, No. 25-1922, Dkt. No. 26.

F.3d 1080, 1087 (9th Cir. 2002). The excusable neglect inquiry considers, among other things, the reason for the delay, including whether it was within the reasonable control of the movant. *See, e.g.*, *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004) (en banc). As discussed above, Defendants were not diligent in bringing their motion, especially considering that the relief they seek requires them to show that they will be irreparably injured absent a stay. All the relevant legal authority could have been brought to the Court's attention earlier with reasonable diligence. *See, e.g.*, *E.S. by & through R.S. v. Regence BlueShield*, No. 2:17-CV-01609-RAJ, 2024 WL 2250249, at *1 (W.D. Wash. May 17, 2024) (denying motion for reconsideration where movants' arguments regarding caselaw and legislative authority "could have been raised earlier" with reasonable diligence); *York v. Bank of America*, No. 14-CV-02471-RS, 2016 WL 7033956, at *1 (N.D. Cal. Dec. 2, 2016) (motion brought 35 days after order issued was "stale filing" submitted after "lengthy delay"); *Largan Precision Co., Ltd. v. Genius Electronic Optical Co., Ltd.*, No. 13-CV-02502-JD, 2015 WL 2063988, at *2 (N.D. Cal. May 4, 2015) ("waiting more than four weeks to file a motion for reconsideration" did not constitute reasonable diligence). Thus, Defendants have not justified their delay to warrant deviation from the general principle that a motion for reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

Third, even if the motion were not defective in all the ways listed above, the Court would still deny it. Although the Court has discretion to grant a stay pending appeal, "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). Four factors are relevant: (1) "whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits" of the appeal; (2) "whether the applicant will be irreparably injured absent a stay"; (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding"; and (4) "where

the public interest lies." *Id.* at 434 (citation modified). "[I]f the petitioner has not made a certain threshold showing regarding irreparable harm . . . then *a stay may not issue*, regardless of the [movant's] proof regarding the other stay factors." *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (emphasis added). Despite the allegedly irreparable harm inflicted upon them by this Court's preliminary injunction, Defendants waited roughly six weeks, four weeks, and three weeks, respectively, from the date of the relevant Supreme Court opinions to seek a stay. And they are apparently in no rush for the Ninth Circuit to address the pending appeal, either, as they did not seek expedited briefing and instead have sought an extension of over eight weeks to file their reply brief (and this figure does not include the duration of the government shutdown), thereby preventing the appeal from being ripe for the Ninth Circuit's consideration. *State of Washington, et al. v. Trump, et al.*, No. 25-1922, Dkt. Nos. 57, 58. Defendants' long delays in taking action here suggest that they have been unbothered by whatever repercussions have been caused by the preliminary injunction and will not suffer irreparable harm if the injunction is not stayed. *See, e.g.*, *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (holding that plaintiff's delay in seeking a preliminary injunction "implie[d] a lack of urgency and irreparable harm"); *Plaza Health Lab'ies, Inc. v. Perales*, 878 F.2d 577, 583–84 (2d Cir. 1989) (a party seeking to undo a district court's preliminary injunction decision is "well advised to seek expeditious treatment of the proceedings both at the appellate level and the district court level"; a "leisurely pace" suggests that the "relief it seeks . . . is not warranted").[6] And although Defendants

---

[6] *See also, e.g.*, *Grundmann v. Trump*, 786 F. Supp. 3d 188, 193 (D.D.C. 2025) (finding that "the Government's actions in this case"—including waiting almost three weeks to file a motion for a stay of the court's order pending appeal— "reflect a lack of urgency inconsistent with irreparable harm," and observing that "[t]his is not the sort of reaction one expects from a party claiming irreparable injury"); *Usherson v. Bandshell Artist Mgmt.*, No. 19-CV-6368 (JMF), 2020 WL 4228754, at *3 (S.D.N.Y. July 22, 2020) (movants' delay of 24 days in filing their motion to stay, "in itself, belies their conclusory assertions of irreparable harm and is enough to defeat their claim" (citation modified)); *Mays v. Dart*, No. 20-C-2134, 2020 WL 2796082, at *5 (N.D. Ill. May 29, 2020) (three-week delay in moving for a stay "cut[] against the contention that the [movant] has experienced, or will experience, much harm at all, let alone harm

complain that the preliminary injunction intrudes on the implementation of the administration's policy objectives and has "hampered [their] ability to respond to the reasonable concerns about sex transition interventions for minors that the Supreme Court recognized in *Skrmetti*," Dkt. No. 288 at 10–11, Defendants admit that unlike the law at issue in *Skrmetti*, the executive orders at issue "do not purport to ban the identified interventions," *id.* at 7. Furthermore, it does not seem that the administration believes that its policy objectives have been impeded: on July 25, 2025, the White House announced that President Trump "delivered" on his promise "to end the irreversible chemical and surgical mutilation of our children[.]" Dkt. No. 290-10 at 2.

### III.    CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion. Dkt. No. 288.

Dated this 10th day of November, 2025.

Lauren King
United States District Judge

---

appropriately considered to be irreparable"); *Lightfoot v. District of Columbia*, No. 01-cv-1484, 2006 WL 175222, at *8 (D.D.C. Jan. 24, 2006) (government defendants' "relative inaction . . . indicate[d] that they themselves do not perceive the possible injury as 'irreparable'" where they did not appeal to the D.C. Circuit until almost a month after the district court denied their motion for reconsideration, did not ask for an expedited appeal, and did not file a motion for stay pending appeal until about three weeks after appealing); *accord Kobell v. Suburban Lines, Inc.,* 731 F.2d 1076, 1092 n.27 (3rd Cir. 1984) ("[T]he district court may legitimately think it suspicious that the party who asks to preserve the status quo through interim injunctive relief has allowed the status quo to change through unexplained delay.").